IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN DALE, FRANK HOVAR, JAMIE LAWSON, MICHAEL LEOPARDO, BRAD LONG, FORTUNATO SALAMONE, JOEL SJOSTROM, GLEN TURPOFF, CHRIS WOOD, AND JOSE ZAMARRIPA, as members of the Board of Trustees of the NORTHERN ILLINOIS ANNUITY FUND AND PLAN, on behalf of the Participants of the Northern Illinois Annuity Fund and Plan, <br><br> Plaintiffs, <br> vs. <br><br> NFP CORP., et al, <br><br> Defendants. | Case No. 1:20-cv-2942 <br><br> Judge John F. Kness |

## JOINT INITIAL STATUS REPORT UNDER RULE 26(f)

The parties have conferred as required by Rule 26(f), and jointly submit the following discovery plan. *See* Fed. R. Civ. P. 26(f)(2); Fed. R. Civ. P. 26(f)(3); Fed. R. Civ. P. 16(b). The parties understand that the Court will enter a scheduling order under Rule 16(b)(1), and that the Court will modify any such schedule "only for good cause." *See* Fed. R. Civ. P. 16(b)(4).

**I.** **Nature of the Case**

    **A.** **Identify the attorneys of record for each party. Note the lead trial attorney and any local counsel.**

*Attorneys for Plaintiffs*

**Karen L. Tidwall**
**Joshua B. Levy**
Husch Blackwell LLP
55 East Wells Street, Suite 1900
Milwaukee, WI 53202-3819
414-978-5527

*Attorneys for Defendants*

**Kimberly M. Hare**
Kutak Rock LLP
One South Wacker Drive #3910
Chicago, IL 60606
312-602-4100

**Melissa A. Bozeman**
Kutak Rock LLP
1760 Market Street, Suite 1100
Philadelphia, PA 19103
215-299-4384

**Oliver Griffin**
Kutak Rock LLP
1801 California Street, Suite 3000
Denver, Colorado 80202
303-297-2400

B.     **State the basis for federal jurisdiction. If based on diversity, state the domicile of all parties.**

This Court has subject matter jurisdiction over this action based on federal question jurisdiction, as the claims herein arise under the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. § 1001 *et seq*.

C.     **Provide a short overview of the case (five sentences or fewer).**

Plaintiffs are the members of the Board of Trustees ("Plaintiffs") of a defined contribution, multiemployer pension plan that provides retirement benefits to its participants (the "Plan"), and bring this action on behalf of the Plan and its participants. Defendants and/or their representatives provide various client services, including investment advisory services, investment management services, brokerage services, or administrative services.[1] Plaintiffs allege that, between September 2004 through 2017, Defendants functioned as ERISA fiduciaries of the Plan and as parties in interest and, through their various acts and omissions relating to Plan assets, breached their ERISA fiduciary duties and caused the Plan to engage in prohibited transactions under ERISA Section 406, resulting in damage and loss to the Plan and its participants. Plaintiffs seek, among other ERISA remedies, disgorgement of any fees and profits made by Defendants through the use of

---

[1] To clarify: Defendants allege that named Defendants NFP Corp. and Kestra Financial, Inc. do not provide any client services whatsoever.

Plan assets, reimbursement of losses to the Plan, and an accounting.

Defendants deny Plaintiffs' allegations and intend to assert several affirmative defenses to Plaintiffs' allegations as well as counterclaims against Plaintiffs for their alleged failures as ERISA fiduciaries, in the event Plaintiffs prove certain aspects of their case.

**D. Describe the claims asserted in the complaint and the counterclaims and/or third-party claims and/or affirmative defenses.**

There are three claims for relief asserted in the Complaint. The first is for Defendants' breach of fiduciary duty pursuant to ERISA Section 502(a)(2) relating to (a) failure to disclose any and all fees and other compensation received in connection with Plan assets; (b) investment of Plan assets in PIMCO Class A shares; (c) investment of Plan assets in certain "alternative investments;" (d) management of the Plan's bond portfolio; (e) investment of Plan assets in a MetLife guaranteed investment contract; (f) investment of Plan assets in Unit Investment Trusts; (g) engagement of other money managers for the Plan, including First Trust Advisors, and failures to disclose fees paid; (h) failure to provide ERISA Section 408(b)(2) disclosures; (i) failure to implement or follow prudent processes consistent with industry standards with respect to the Plan including administration, recordkeeping, and investment of Plan assets; (j) failure to supervise and monitor Defendant BPS and the individual Defendants; (k) charging unreasonable and excessive fees; and (l) the Plan's transition to new service providers.

The second claim is based on Defendants' alleged violation of Section 406 of ERISA, which prohibits plan fiduciaries from causing a plan to engage in certain types of transactions and from engaging in conflicted and self-interested acts and omissions involving plan assets. Plaintiffs allege that Defendants caused the Plan to engage in prohibited, non-exempt transactions including (a) furnishing services or facilities with a "party in interest," ERISA § 406(a); (b) dealing with Plan assets in their own interest and for their own account, ERISA § 406(b)(1); and (c) receiving

3

consideration for their own personal account from a party dealing with the Plan in connection with a transaction involving Plan assets, ERISA § 406(b)(3).

The third claim for relief is for an accounting pursuant to ERISA § 502(a)(3).

In response to the Complaint, on July 17, 2020, Defendants filed a Motion to Dismiss and Motion for a More Definite Statement (the "Pending Motions"), seeking an order (1) dismissing Defendants NFP Corp. and Kestra Financial, Inc. from the action, and (2) requiring Plaintiffs to revise the Complaint to provide more definite statements. Pursuant to the Court's July 21, 2020, Briefing Schedule, Plaintiff's response brief is due on August 18, 2020, and Defendants' reply brief is due on September 1, 2020.

Following the Court's adjudication of the Pending Motions, Defendants intend to assert a variety of affirmative defenses in their answer, including but not limited to defenses based on ratification, waiver, the equitable doctrine of laches, the doctrine of unclean hands, estoppel, failure to state a claim, and the statute of limitations. Defendants also intend to assert various contractual and other defenses, including, without limitation, that Defendants were acting in a purely non-discretionary and/or ministerial capacity, undertaking such actions at the direction and discretion of Plaintiffs. Defendants also intend to assert several counterclaims against Plaintiffs, alleging that Plaintiffs are the Named Fiduciary of the Plan and are liable to the Defendants under the federal common law of contribution and indemnity, and liable to the Plan and its participants for breach of their fiduciary duties under ERISA. As Defendants have not yet filed their answer, the defenses and counterclaims set forth in this Paragraph cannot be comprehensive, and Defendants reserve the right to assert defenses and counterclaims not specifically identified herein.

> E. **What are the principal factual issues?**

The principal factual issues include:

1. The nature and extent of Defendants' relationship with related parties.

2. The nature and extent of the Defendants' relationship with the Plan.

3. The terms and conditions of the agreements between and among Defendants.

4. The nature and extent of Plaintiffs' responsibilities relative to Plan assets and its participants.

5. The nature and amount of any and all fees and other compensation received by each Defendant relating to Plan assets, whether direct or indirect.

6. The nature, extent, and timing of Plaintiffs' knowledge of the actions, if any, alleged as part of its Complaint.

7. Whether the Plan suffered damages related to any party's allegations.

8. If the Plan has suffered a loss, the amount of loss attributable to any party's breach of any fiduciary duty or other violation of ERISA.

**F.  What are the principal legal issues?**

The principal legal issues include:

1. Whether Defendants or Plaintiffs breached any fiduciary duties owed to the Plan and its participants.

2. Whether Defendants or Plaintiffs violated, or caused the Plan to violate, ERISA Section 406.

3. Whether Plaintiffs' conduct and/or the Plan's organizational documents/structure, respectively and/or in conjunction, adhere to applicable law.

**G.  What relief is the plaintiff(s) seeking? Quantify the damages, if any. (An estimate is acceptable; the purpose is simply to give the Court a feel for the case. This estimate will not be admissible.).**

Plaintiffs seek the following relief: (1) An order declaring that Defendants' practices violate ERISA, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); (2) monetary damages, in an amount to be determined at trial, pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2); (3) equitable relief, including imposition of a constructive trust pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), disgorgement or restitution in the estimated amount of approximately $7,000,000, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and an accounting for profits,

pursuant to ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3); (4) Plaintiffs' reasonable fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and (5) pre- and post-judgment interest.

As Counterclaim Plaintiffs, Defendants intend to seek contribution and indemnification from Defendants relative to their alleged fault, as well as appropriate equitable relief; a declaratory judgment that Plaintiffs are, and have been, operating in violation of Section 302 of the Taft-Hartley Act (29 U.S.C. § 186), recovery of their reasonable attorney's fees, court costs, and other litigation expenses under ERISA 29 U.S.C. § 1132(g) or otherwise; and such other and further relief/damages as may be just and proper. Insomuch as Defendants have yet to file their answer and anticipated counterclaims, Defendants reserve the right to seek other relief and/or damages not specifically identified herein.

**H. Have all the defendants been served, or waived service of process? If not, identify the defendants that have not received service.**

Each Defendant has waived service of process.

## II. Mandatory Initial Discovery (Pilot Program)

**A. Acknowledge that all counsel of record have read the Mandatory Initial Discovery Standing Order.**

All counsel of record have read the Mandatory Initial Discovery Standing Order.

**B. Confirm compliance with the mandatory initial discovery responses or state the deadline for responses (30 days after filing the answer). The parties must file a separate notice of service of their initial responses (but not the responses themselves).**

On July 17, 2020, Defendants filed the Pending Motions, seeking a dismissal, in part, and more definite statement of Plaintiffs' Complaint. The matters presented in Defendants' Pending Motions will be ripe for adjudication by the Court no later than September 1, 2020. To date, no answer or other pleading has been filed in response to Plaintiffs' Complaint. The parties have conferred and expect to exchange mandatory initial discovery responses as follows:

1. At the parties' Rule 26(f) conference, Plaintiffs proposed that the parties exchange mandatory initial discovery responses by September 7, 2020, which is thirty (30) days after the Court's August 6, 2020, Status Conference. Under the 12/1/2018 Amended Standing Order Regarding Mandatory Initial Discovery Pilot Project (MIDPP), ¶ A.4, it is unclear whether the parties' mandatory disclosure obligations are stayed pending a decision on the Pending Motions and the filing of an Answer, or whether they may proceed before such date. Accordingly, Plaintiffs will seek guidance from the Court at the August 6 status conference.

2. Defendants object to Plaintiffs' proposal above to the extent that it seeks to require service of Defendants' mandatory initial discovery responses by the arbitrary deadline of September 7, 2020, or, stated more generally, seeks to accelerate the deadline by which Defendants' mandatory initial discovery responses would otherwise need to be timely served under Paragraph A.4 of the Amended Standing Order Regarding Mandatory Initial Discovery Pilot Project or as otherwise ordered by this Court. Paragraph A.4 of the Amended Standing Order Regarding Mandatory Initial Discovery Pilot Project provides for the exchange of the parties' mandatory initial discovery responses to occur no later than thirty (30) days after the filing of the first pleading responding to Plaintiffs' Complaint, stating, in pertinent part:

> A party seeking affirmative relief must serve its responses to the mandatory initial discovery no later than 30 days after the **first pleading filed**[2] under Rule 12(a) in response to its complaint, counterclaim, crossclaim, or third-party complaint.

---

[2] Although undefined, the referenced "first pleading filed" here presumably is limited to the filing of one of the only seven types of permissible "pleadings" enumerated in Fed. R. Civ. P. 7(a) (*i.e.*, a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and, if the court orders one, a reply to an answer) as distinguishable from the "Motions and Other Papers" described at subsection (b) of Rule 7. Fed. R. Civ. P. 7.

*See* Amended Standing Order Regarding Mandatory Initial Discovery Pilot Project, ¶A.4 (emphasis added).

Here, Defendants expect that the parties' deadline for exchanging mandatory initial discovery responses will be triggered by the filing of their anticipated answer, affirmative defenses, and counterclaims to Plaintiffs' Complaint and, pursuant to paragraph A.4 of the Amended Standing Order Regarding Mandatory Initial Discovery Pilot Project, calculated to expire thirty (30) days thereafter. Based on the current briefing schedule set by the Court for Defendants' Pending Motions, among other things, Defendants believe that the parties' deadline for serving their respective mandatory initial discovery responses will be no sooner than November, 2020.

Finally, given that most, if not all, of the initial mandatory disclosures required under paragraph B of the Amended Standing Order Regarding Mandatory Initial Discovery Pilot Project are driven by that party's asserted claims and defenses, Defendants further object to Plaintiffs' proposal here, seeking to accelerate Defendants' deadline to serve their mandatory initial discovery responses from a date to be calculated in accordance with paragraph A.4 of the Amended Standing Order Regarding Mandatory Initial Discovery Pilot Project to the proposed arbitrary September 7, 2020, deadline (which, again, is well *before* the date by which Defendants' anticipated Answer, Affirmative Defenses, and Counterclaims – all of which are subject to further investigation, refinement, and final client approval – are due in this matter for filing), insomuch as it is inherently premature, unduly burdensome, and/or likely to result in prejudice to Defendants.

**C.    Briefly describe any disputes concerning the mandatory initial discovery responses, if any.**

There are no disputes at this time.

### III. Discovery

A. **Propose a discovery schedule. Include the following deadlines: (1) the mandatory initial discovery responses; (2) any amendment to the pleadings to add new claims, or new parties; (3) service of process on any "John Doe" defendants; (4) the completion of fact discovery; (5) the disclosure of plaintiff's expert report(s); (6) the deposition of plaintiff's expert; (7) the disclosure of defendant's expert(s); (8) the deposition of defendant's expert; and (9) dispositive motions. Fill in the blanks, below.**

A WORD version of the proposed scheduling order has been submitted to: Proposed_Order_Kness@ilnd.uscourts.gov.

| Event | Deadline |
|---|---|
| Mandatory Initial Discovery Responses | Plaintiffs' proposal (subject to guidance from the Court) – 9/7/2020<br>Defendants' proposal – Within 30 days of answer date |
| Amendment to the pleadings | Through the close of discovery |
| Service of process on any "John Does" | N/A |
| Completion of Fact Discovery | Nine (9) months from answer date |
| Disclosure of Plaintiffs' Expert Report(s) | One (1) month from close of discovery |
| Deposition of Plaintiffs' Expert | One (1) month from Plaintiff Expert Report date |
| Disclosure of Defendants' Expert Report(s) | 14 days from Deposition of Plaintiffs' Expert |
| Deposition of Defendants' Expert | One (1) month from Defendants' Expert Report date |
| Dispositive Motions | One (1) month following Defendant Expert deposition date |

B. **How many depositions do the parties expect to take?**

10 for each party, or 20 in total.

C. **Do the parties foresee any special issues during discovery?**

COVID-19, and the local, state, and national response thereto, may result in unforeseen limitations or delays, including travel restrictions, quarantine obligations, limitations on meeting

9

sizes and frequency, or other restrictions.

    **D.**    **Rule 26(f)(2) requires the parties to propose a discovery plan.** *See* **Fed. R. Civ. P. 26(f)(2). Rule 26(f)(3), in turn, provides that a "discovery plan must state the parties' views and proposals" on six different topics.** *See* **Fed. R. Civ. P. 26(f)(3). Have the parties discussed a discovery plan, including all of the topics required by Rule 26(f)(3)? If so, do the parties propose anything?**

The parties have discussed a discovery plan including all topics set forth in Rule 26(f)(3).

The parties propose an ESI and/or paper document production protocol, as set forth in a separate document that will be submitted to the Court, as necessary.

## IV. Trial

    **A.**    **Have any of the parties demanded a jury trial?**

No party has made a jury demand. As a general matter, there is no right to a jury trial in an ERISA action.

    **B.**    **Estimate the length of trial.**

At this time, the parties estimate a seven- to ten-day trial to the Court.

## V. Settlement, Referrals, and Consent

    **A.**    **Have any settlement discussions taken place? If so, what is the status? Has the plaintiff made a written settlement demand? And if so, did the defendant respond in writing? (Do not provide any particulars of any demands or offers that have been made.)**

Plaintiffs made a written settlement demand before filing the instant action. Defendants did not accept Plaintiffs' demand and have not yet made a settlement offer.

    **B.**    **Do the parties request a settlement conference at this time before this Court or the Magistrate Judge?**

Not at this time.

    **C.**    **Have counsel informed their respective clients about the possibility of proceeding before the assigned Magistrate Judge for all purposes, including trial and entry of final judgment? Do all parties <u>unanimously consent</u> to that procedure? The Court strongly encourages parties to consent to the**

**jurisdiction of the Magistrate Judge.**

The parties have discussed the possibility with their clients. The parties do not unanimously consent to the jurisdiction of the Magistrate Judge.

VI. **Other**

A. **Is there anything else that the plaintiff(s) wants the Court to know?**

Not at this time.

B. **Is there anything else that the defendant(s) wants the Court to know?**

Not at this time.

Respectfully submitted this 3rd day of August, 2020.

| | |
|---|---|
| *s/Karen L. Tidwall* | *s/Melissa A. Bozeman* |
| Karen L. Tidwall (IL Bar No. 6216945) | Kimberly M. Hare (IL Bar No. 6323326) |
| Joshua B. Levy (WI Bar No. 1017759) | KUTAK ROCK LLP |
| HUSCH BLACKWELL LLP | One South Wacker Drive, Suite 3910 |
| 555 East Wells Street, Suite 1900 | Chicago, IL 60606 |
| Milwaukee, WI 53202-3819 | Ph. (312) 602-4100 |
| Ph. (414) 978-5527 | Fx. (312) 602-4101 |
| Fx. (414) 223-5000 | Kimberly.Hare@KutakRock.com |
| joshua.levy@huschblackwell.com | |
| karen.tidwall@huschblackwell.com | Melissa A. Bozeman (*Pro Hac Vice*) |
| | KUTAK ROCK LLP |
| ***Attorneys for Plaintiffs*** | 1760 Market Street, Suite 1100 |
| | Philadelphia, PA 19103 |
| | Ph. (215) 299-4384 |
| | Fx. (215) 981-0719 |
| | Melissa.Bozeman@KutakRock.com |
| | |
| | Oliver Griffin (*Pro Hac Vice*) |
| | KUTAK ROCK LLP |
| | 1801 California Street, Suite 3000 |
| | Denver, CO 80202 |
| | Ph. (303) 297-2400 |
| | Fx. (303) 292-7799 |
| | Oliver.Griffin@KutakRock.com |
| | |
| | ***Attorneys for Defendants*** |