**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **DALE, et al.,** | |
| **Plaintiff,** | No. 1:20-cv-02942 |
| **v.** | The Honorable John F. Kness |
| **BPS, INC., et al.,** | |
| **Defendants.** | |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT AND DEFENDANTS' COUNTERCLAIMS AGAINST PLAINTIFF

Defendants Benefit Planning Services, Inc. ("BPS"), NFP Corporate Services (IL), Inc. ("NFP-IL"), Kestra Advisory Services, LLC ("KAS"), Kestra Investment Services, LLC ("KIS"), Jerry G. Korchak ("Korchak"), and Stephen F. Curry ("Curry") (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 8(b) and (c), and by and through undersigned counsel, respond to the allegations contained in the Complaint filed by the Board of Trustees of the Northern Illinois Annuity Fund and Plan, by and through its Board members Kevin Dale, Frank Hovar, Jamie Lawson, Michael Leopardo, Brad Long, Fortunato Salamone, Joel Sjostrom, Glen Turpoff, Chris Wood, Jose Zamarripa (collectively, "Plaintiff") as follows:

### I.       ANSWER TO COMPLAINT

Defendants generally deny each and every material or relevant claim alleged in Plaintiff's Complaint unless specifically admitted herein.

1

## SUMMARY OF THE ACTION[1]

1. *This action is filed under the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1001, et seq., against various fiduciaries and parties in interest of a multiemployer defined contribution employee pension benefit plan as defined under 29 U.S.C. § 1002(2) (34), and (37) known as the Northern Illinois Annuity Fund and Plan (hereinafter, the "Plan").*

**Answer to Paragraph 1:** Paragraph 1 generally references a statutory citation (ERISA), itself, asserts legal conclusions, and contains Plaintiff's description of its claims, to which no response is required. To the extent a response is deemed required, Defendants deny such allegations, but admit that Plaintiff purports to bring its case under ERISA.

2. *The Board of Trustees of the Plan (the "Board" or the "Trustees") bring this action as Plan fiduciaries directly on behalf of the Plan and the participants of the Plan ("Participants") in order to enforce the provisions of ERISA and to restore losses to the Plan, disgorge any profits, to ensure that the Plan and its assets have been properly administered, and to obtain other remedies arising out of Defendants' breaches of fiduciary duties and other violations of ERISA.*

**Answer to Paragraph 2:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 2.

3. *The Trustees and their predecessor trustees placed their trust and confidence in defendant Benefit Planning Services, Inc. and defendant, Stephen Curry, and defendant Jerry Korchak, as their primary investment professionals, relying on them and paying them (1) to act solely in the interests of the participants, (2) to render correct advice as to the value of the Plan's investments, (3) to exercise discretion in the management of the Plan's fixed income investments, (4) to recommend appropriate investment policies and investment managers, (5) to report accurately on the performance of the Plan's investments, and (6), in general, to guide the Trustees in the management of the Plan so they could meet their legal duties as informed fiduciaries.*

**Answer to Paragraph 3:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 related to the state of mind or expectations of Plaintiff's Trustees and therefore deny such allegations on that basis. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 3, but admit that the Plan's Trustees were fiduciaries to the Plan and, as named fiduciary

---

[1] Headings and paragraphs are set forth verbatim as alleged by Plaintiff.

for the Plan, had the ultimate responsibility for the Plan's management.

4.    *At all relevant times, acting as ERISA fiduciaries of the Plan, BPS, Curry, and Korchak determined how, when, and where to invest certain Plan assets; selected, recommended, purchased, and held certain investments for the Plan; drafted and changed the Plan's Investment Policy Statement; selected and designated additional investment managers for certain illiquid investment options and negotiated agreements with them; selected and designated Kestra Investment Services as the directing broker for certain investments which they also recommended or purchased; and allocated Plan assets among other investment managers some of whom shared their fees with all Defendants.*

**Answer to Paragraph 4:** Defendants generally deny Plaintiff's legal conclusions, factual

characterizations, and all other allegations contained in Paragraph 4.

5.    *Defendants' ERISA fiduciary duties are the highest duties known to the law. They included the duty of loyalty, which required them to act for the exclusive purpose of providing benefits to the Participants, and to charge the Plan expenses that are reasonable and relate only to Plan activities. The duty of loyalty required Defendants' complete and undivided loyalty to Participants.*

**Answer to Paragraph 5:** Paragraph 5 states a legal conclusion and argument for which no

response is required.

6.    *Defendants' ERISA fiduciary duties included the duty of prudence, which required them to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.*

**Answer to Paragraph 6:** Paragraph 6 states a legal conclusion and argument for which no

response is required.

7.    *Defendants' ERISA fiduciary duties required them to disclose certain information to the Trustees relating to, among other things, the investment of Plan assets and the indirect and direct compensation relating to such investments.*

**Answer to Paragraph 7:** Paragraph 7 states a legal conclusion and argument for which no

response is required.

8.    *Defendants' ERISA fiduciary duties required them to follow the terms of the Plan documents.*

**Answer to Paragraph 8:** Paragraph 8 states a legal conclusion and argument for which no

response is required.

9. *Defendants also were required to refrain from causing the Plan to engage in ERISA Section 406 prohibited transactions, from using Plan assets for their own benefit and for the benefit of parties in interest, and from engaging in self-dealing and in conflict-of-interest transactions unless the conflict was disclosed and waived.*

**Answer to Paragraph 9:** Paragraph 9 states a legal conclusion and argument for which no

response is required.

10. *Defendants failed to carry out their responsibilities to the Plaintiff with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the management and representation of a pension plan.*

**Answer to Paragraph 10:** Defendants generally deny Plaintiff's legal conclusions, factual

characterizations, and all other allegations contained in Paragraph 10.

11. *In general, Defendants failed to commit their responsibilities to the terms of written contracts, structured numerous investments to generate excessive direct and unlawful indirect compensation to themselves, regularly provided false or inadequate reports on the Plan's investment performance, provided inadequate or misleading advice concerning appropriate investment policies, invested the Plan's assets in inappropriate and illiquid investments causing the Plan to lose money on those investments and to lose the opportunity to generate substantial investment returns for the benefit of the participants, and regularly failed to disclose all the direct and indirect compensation they were obtaining through the use of the Plan's assets.*

**Answer to Paragraph 11:** Defendants generally deny Plaintiff's legal conclusions, factual

characterizations, and all other allegations contained in Paragraph 11.

12. *Defendants turned a blind eye to their fiduciary duties. Their actions reveal they were driven by one goal – to make as much money as they could for themselves – regardless of the impact on the Plan and its Participants. Defendants had a pattern and practice of giving investment advice and making investment decisions for the Plan that would maximize the Defendants' compensation without regard to the best interests of the Plan and its Participants. In order to financially benefit themselves, Defendants administered, advised, and managed the Plan and assets of the Plan as if the Plan was a high net worth investor instead of what it is, an ERISA-governed retirement plan and institutional investor.*

**Answer to Paragraph 12:** Defendants generally deny Plaintiff's legal conclusions, factual

characterizations, and all other allegations contained in Paragraph 12.

13. *Defendants were at all times with respect to all Plan investments in a conflict of interest position, which they failed to disclose to the Trustees. They were incentivized to ignore what was best for the Plan and focused only on generating revenue for themselves.*

**Answer to Paragraph 13:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 13.

14. *Defendants financially benefits from commissions, mark-ups on bonds, finder's fees, and kickbacks from parties in interest and other fiduciaries, for the same investments that they selected for the Plan's account, using assets of the Plan to generate compensation in excess of the fees agreed to and paid by Plaintiff.*

**Answer to Paragraph 14:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 14.

15. *To the extent that Defendants disclosed some of the commissions they earned on fixed income and equity investments, Defendants failed to disclose that the fixed income commission arrangement implemented an unlawful conflict of interest providing Defendants with the incentive to make investment decisions that would increase the compensation of Defendants rather than be made primarily to benefit Participants.*

**Answer to Paragraph 15:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 15.

16. *Defendants' violations of ERISA have caused damage to the Plan and its Participants, and the Plan is entitled to the full extent of the remedies available under ERISA including, but not limited to, reimbursement to the Plan for the losses resulting from the fiduciary breaches, an accounting and disgorgement of assets and profits obtained through prohibited transactions, a surcharge, and an award of attorneys' fees and costs.*

**Answer to Paragraph 16:** Paragraph 16 contains Plaintiff's recital of its claims, damages, and requested remedies, and no answer is required.

17. *The relevant time period applicable to the Amended Complaint, unless otherwise specifically noted, is June 1, 2013 through December 31, 2019.*

**Answer to Paragraph 17:** Paragraph 17 contains information related to the time period of Plaintiff's allegations to which no response is required; however, this Court's order in ECF No. 134 noted that the relevant time period of the Amended Complaint begins June 6, 2013.

## PARTIES AND FIDUCIARY STATUS

### The Plan

18.     *The Plan is a defined contribution, multiemployer employee pension benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(2), (34), and (37).*

**Answer to Paragraph 18:** Paragraph 18 generally purports to incorporate a statutory citation which speaks for itself. Defendants admit that the Northern Illinois Annuity Fund and Plan is a defined contribution, multiemployer pension plan subject to ERISA, 29 U.S.C. § 1001 et seq.

19.     *The members of the Board of Trustees of the Plan are appointed by sponsoring labor unions and an employer association to a jointly administered Board of Trustees established under the federal Labor Management Relations Act, § 301.*

**Answer to Paragraph 19:** Defendants lack knowledge sufficient to form a belief as to the allegations in Paragraph 19 and on that basis deny all such remaining allegations in Paragraph 19.

20.     *The Plan is required to be administered under the terms of ERISA, the Internal Revenue Code, other federal laws, and pursuant to governing Plan documents.*

**Answer to Paragraph 20:** Paragraph 20 generally references federal statutes and written plan documents which speak for themselves.

21.     *The Board of Trustees is the Plan Sponsor and fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(16)(B) and 1002(21).*

**Answer to Paragraph 21:** Defendants admit Paragraph 21.

22.     *The Participants are past and present union members who, at the relevant time, were or are eligible to receive retirement benefits pursuant to the governing Plan documents and ERISA.*

**Answer to Paragraph 22:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations, so Defendants deny such allegations.

23.     *The registered agent for service of process is the Plan's law firm, Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich, LLP 8 South Michigan Avenue, 19th Floor, Chicago, Illinois 60603.*

**Answer to Paragraph 23:** Paragraph 23 identifies Plaintiff's registered agent; Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth

in Paragraph 23 and therefore deny the allegations.

### Defendants Benefit Planning Services, Inc. and NFP Corporate Services (IL), Inc.

24.     *Defendant Benefit Planning Services, Inc. (a/k/a NFP Benefit Planning Services, Inc.)("BPS") was an Illinois corporation with its principal place of business located at 6833 Stalter Drive, Suite 200, Rockford, Illinois 61108. Its registered agent for service of process is CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.*

**Answer to Paragraph 24:** Defendant BPS admits the allegations in Paragraph 24. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 and therefore deny such allegations.

25.     *Defendant NFP Corporate Services (IL), Inc. was a wholly-owned subsidiary of NFP Corp. f/k/a National Financial Partners Corporation. NFP Corporate Services (IL), Inc. had its principal place of business at 6833 Stalter Drive, #200, Rockford, Illinois 61108. Its registered agent for service of process is 500 West Madison Street, Suite 2760 Chicago, IL 60661*

**Answer to Paragraph 25:** Defendant NFP-IL admits that it was a wholly-owned subsidiary of NFP Corp, and affirmatively alleges that Defendant NFP-IL's principal place of business and its address for service of process are the same, being 500 West Madison Street, 32nd Floor, Chicago, Illinois 60661. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 and, on that basis, deny such allegations.

26.     *BPS was a wholly-owned subsidiary of NFP Corporate Services (IL), Inc.*

**Answer to Paragraph 26:** Defendants NFP-IL and BPS deny the allegations in Paragraph 26. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 and, on that basis, deny such allegations.

27.     *Unless otherwise noted, BPS and NFP Corporate Services, IL are referred to collectively herein as "NFP."*

**Answer to Paragraph 27:** Paragraph 27 contains information related to the structure of Plaintiff's Amended Complaint to which no response is required.

*28. NFP was appointed by the Board of Trustees and served as the Plan Administrator within the meaning of Plan Administrator under ERISA and also provided third-party administrative services.*

**Answer to Paragraph 28:** Defendant BPS admits that it provided ministerial third-party administrative services to the Trustees and Plan but denies all remaining allegations as they assert a legal conclusion. Defendant NFP-IL denies the allegations in Paragraph 28 as to it. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 and, on that basis, deny all such allegations in Paragraph 28.

*29. As detailed herein, NFP had and exercised discretionary authority and responsibility in its role as Plan Administrator and TPA.*

**Answer to Paragraph 29:** Defendants BPS and NFP-IL deny the allegations of Paragraph 31, but BPS affirmatively alleges that it provided services to the Plan pursuant to a 1997 Administrative Services Agreement, the contents of which speaks for itself. Further, Paragraph 29 states a legal conclusion to which no response is required. To the extent a response is required, all Defendants deny.

*30. In addition, although it was not registered as an investment adviser under the Investment Advisors Act of 1940 (the "Act"), NFP had the power to manage, acquire, and dispose of any assets of the Plan in that portion of the Plan portfolio which defendants Steve Curry and Jerry Korchak designated as "fixed income."*

**Answer to Paragraph 30:** Defendants BPS, NFP-IL, Korchak, and Curry deny the allegations in Paragraph 30, but Defendant BPS affirmatively alleges that it provided services to the Plan pursuant to a 1997 Administrative Services Agreement, the contents of which speaks for itself. Further, all Defendants deny the allegations as stating a legal conclusion.

31. *As investment manager for the Plan's fixed income portfolio, NFP and its representatives were responsible for selecting, managing, monitoring, and benchmarking the fixed income investment offerings of the Plan, and had discretionary authority to direct the investment of such funds.*

**Answer to Paragraph 31:** Defendants BPS and NFP-IL deny the allegations of Paragraph 31, but BPS affirmatively alleges that it provided services to the Plan pursuant to a 1997 Administrative Services Agreement, the contents of which speaks for itself. Further, all Defendants deny the allegations as stating a legal conclusion.

32. *Although it was not registered as an investment adviser under the Act, NFP performed as an investment advisor with respect to both the fixed income and equity assets in the Plan's portfolio.*

**Answer to Paragraph 32:** Defendants BPS and NFP-IL deny the allegations of Paragraph 32, but BPS affirmatively alleges that it provided services to the Plan pursuant to a 1997 Administrative Services Agreement, the contents of which speaks for itself. Further, all Defendants deny the allegations as stating a legal conclusion.

33. *As detailed herein, NFP rendered investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of the Plan, and has any authority or responsibility to do so.*

**Answer to Paragraph 33:** Defendants BPS and NFP-IL deny the allegations of Paragraph 33, but BPS affirmatively alleges that it provided services to the Plan pursuant to a 1997 Administrative Services Agreement, the contents of which speaks for itself. Further, all Defendants deny the allegations as stating a legal conclusion.

34. *NFP also was a registered insurance agency that sold annuities and other insurance products to the Plan.*

**Answer to Paragraph 34:** Defendant BPS admits that its business includes brokering insurance and consulting and denies the remaining allegations. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 34 and, on that basis, deny such allegations.

35. *As detailed herein, NFP exercised discretionary authority and control respecting management of the Plan and its assets.*

**Answer to Paragraph 35:** Defendants BPS and NFP-IL deny the allegations in Paragraph 35, but BPS affirmatively alleges that it provided services to the Plan pursuant to a 1997 Administrative Services Agreement, the contents of which speaks for itself. Further, all Defendants deny the allegations as stating a legal conclusion.

36. *Each of the preceding paragraphs provides an independent basis for NFP having the status as an ERISA fiduciary of the Plan.*

**Answer to Paragraph 36:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 36.

37. *The Plan was the only ERISA-governed retirement plan for which NFP provided investment advisory services.*

**Answer to Paragraph 37:** Defendant BPS admits that the Plan was the only individually designed defined contribution, multiemployer employee pension benefit plan to which BPS provided services. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 37 and, on that basis, deny all such allegations.

## The Kestra Defendants

38. *Defendant Kestra Investment Services, LLC, and its predecessors in interest including NFP Securities, Inc. and NFP Advisor Services, LLC ("Kestra IS"), is a limited liability company registered under the laws of Texas with its principal place of business is 5707 Southwest Parkway, Suite 2-400, Austin, Texas 78735-6221. Its registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.*

**Answer to Paragraph 38:** Defendant KIS denies that it is a limited liability company registered under the laws of Texas but admits the remaining allegations in Paragraph 38. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 38 and, on that basis, deny such allegations.

10

39. *From at least June, 2013 through June, 2016, Kestra IS acted in dual capacities as both registered investment advisor under the Act and registered broker-dealers.*

**Answer to Paragraph 39:** Defendant KIS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 39. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 39 and, on that basis, deny all such allegations.

40. *In addition to receiving an asset-based advisory fee as an investment advisor for the Plan, from at least June, 2013 through June, 2016, Kestra IS offered and sold securities for the Plan's accounts through Kestra IS through its registered representatives, defendants Jerry Korchak and Stephen Curry, among others.*

**Answer to Paragraph 40:** Defendant KIS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 40. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40 and, on that basis, deny all such allegations.

41. *On or around June 24, 2016, NFP Corp. (f/k/a National Financial Partners Corporation), parent company of Kestra Financial, Inc. And Kestra IS, separated its advisory and brokerage businesses, rebranding its brokerage business as a stand-alone broker-dealer, Kestra IS.*

**Answer to Paragraph 41:** Defendant KIS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 41. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41 and, on that basis, deny all such allegations.

42. *NFP Corp. transferred its investment advisory business to a newly-created affiliate successor entity, defendant Kestra Advisory Services, LLC.*

**Answer to Paragraph 42:** Defendant KIS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 42. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 42 and, on that basis, deny all such allegations.

11

43.     *Defendant Kestra Advisory Services, LLC ("Kestra AS") is a limited liability company registered under the laws of Texas with its principal place of business located at 5707 Southwest Parkway, Suite 2-400, Austin, Texas 78735-6221. Its registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.*

**Answer to Paragraph 43:** Defendant KAS admits the allegations in Paragraph 43. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 43 and, on that basis, deny such allegations.

44.     *Kesttra AS [sic] is a wholly-owned subsidiary of Kestra Financial, Inc.*

**Answer to Paragraph 44:** Defendant KAS admits the allegations in Paragraph 44. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 44 and, on that basis, deny all such allegations.

45.     *Kestra AS is a registered investment advisor under the Act.*

**Answer to Paragraph 45:** Defendant KAS admits the allegations in Paragraph 45. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45 and, on that basis, deny such allegations.

46.     *Kestra IS Kestra AS's affiliated broker-dealer.*

**Answer to Paragraph 46:** Defendants KIS and KAS admit that they are affiliated entities but deny the remaining allegations in Paragraph 46. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 46 and, on that basis, deny all such allegations.

47.     *From June, 2016 through December, 2017, Kestra AS purported to provide investment advisory services to the Plan and charged the Plan an advisory fee and other fees for such alleged services, which it caused the Plan to pay.*

**Answer to Paragraph 47:** KAS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 47. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth

in Paragraph 47 and, on that basis, deny all such allegations.

48.     *Kestra AS was an ERISA fiduciary respecting the Plan.*

**Answer to Paragraph 48:** Paragraph 48 states a legal conclusion that all Defendants generally deny.

49.     *Kesttra IS* [sic] *represents that it provides security brokerage services to 150 defined contribution retirement plans of over $25 million in assets under management. Of those 150, only three, including the NIAF Plan, were so-called "individually-designed" defined contribution plans.*

**Answer to Paragraph 49:** Defendant KIS admits that it provided security brokerage services to *approximately* 150 defined contribution retirement plans of over $25 million in assets under management between January 1, 2004 and May 1, 2018 (the applicable time frame defined in Plaintiff's interrogatories) and that three of those defined contribution retirement plans (including the NIAF plan) were individually designed plans. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49 and, on that basis, deny all such allegations.

50.     *Kesttra AS* [sic] *provided investment advisory services to approximately 350 defined contribution plans of $25 million or more in assets under management. Of those 350, only three, including the NIAF Plan, were so-called "individually-designed" defined contribution plans.*

**Answer to Paragraph 50:** Defendant KAS admits the allegations in Paragraph 50. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50 and, on that basis, deny all such allegations.

51.     *Kestra IS and Kestra AS are affiliated with NFP.*

**Answer to Paragraph 51:** Defendants KAS and KIS admit that they have affiliated entities but deny the remaining allegations in Paragraph 51. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51 and, on that basis, deny all such allegations.

### Defendants Jerry Korchak and Stephen Curry

52.     *Defendant Jerry G. Korchak ("Korchak") is an adult resident of the State of Illinois and resides in Rockford, Illinois 61107.*

**Answer to Paragraph 52:** Defendant Korchak admits the allegations in Paragraph 52. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 52 and, on that basis, deny such allegations.

53.     *From at least June, 2013 through April 9, 2018, Korchak was an employee of BPS.*

**Answer to Paragraph 53:** Defendants Korchak and BPS admit the allegations in Paragraph 53. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 53 and, on that basis, deny such allegations.

54.     *From at least June, 2013, Korchak was the Plan's Administrator within the meaning of ERISA.*

**Answer to Paragraph 54:** Paragraph 54 states a legal conclusion that all Defendants generally deny.

55.     *From at least June, 2013, Korchak was the Plan's investment advisor representative through NFP, Kestra IS, and/or Kestra AS (as of June 24, 2016).*

**Answer to Paragraph 55:** In response to Paragraph 55, Defendant Korchak denies the allegations contained in Paragraph 55, but affirmatively alleges that in his capacity as a registered representative of KIS or its predecessor, he provided securities brokerage services to the Plan, pursuant to Trustee direction, guidance, approval, and supervision, and beginning in approximately June 2016, also provided services to the Plan as an investment advisor representative of KAS. Defendant NFP-IL denies the allegations in Paragraph 55. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 55 and, on that basis, deny such allegations.

14

56.    From at least June, 2013, Korchak was a registered representation [sic] through Kestra IS and executed trades in various Plan accounts.

**Answer to Paragraph 56:** Defendant Korchak admits that, in his capacity as a registered representative of KIS or its predecessor, he provided securities brokerage services to the Plan, pursuant to Trustee direction and with Trustee knowledge and approval, and denies the remaining allegations. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 56 and, on that basis, deny such allegations.

57.    From at least June, 2013, Korchak sold insurance services and products to the Plan through NFP.

**Answer to Paragraph 57:** Defendants BPS, NFP-IL, and Korchak deny the allegations in Paragraph 57. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 57 and, on that basis, deny such allegations.

58.    Upon information and belief, Korchak had no employment or other written agreement with NFP, Kestra IS or Kestra AS, which defined the terms of his compensation relating to, among other clients, the Plan. Korchak was paid a percentage of the total revenue generated by the Plan, among other of his clients. After NFP's took its cut, upon information and belief, his compensation was at least 25% of Plan revenue and another 25% commission on any investment products he separately sold to Plan Participants.

**Answer to Paragraph 58:** Defendant Korchak's employment agreements speak for themselves. Paragraph 58 states legal conclusions, that all Defendants deny.

59.    Korchak was an ERISA fiduciary of the Plan.

**Answer to Paragraph 59:** Paragraph 59 states a legal conclusion that all Defendants generally deny.

60.    Defendant Stephen F. Curry ("Curry") is an adult resident of the state of Illinois and resides in Vernon Hills, Illinois 60061.

**Answer to Paragraph 60:** Defendant Curry admits the allegations in Paragraph 60. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 60 and, on that basis, deny such allegations.

61.    *From at least June, 2013, Curry was the Plan's Administrator within the meaning of ERISA.*

**Answer to Paragraph 61:** Paragraph 61 states a legal conclusion that all Defendants generally deny.

62.    *From at least June, 2013, Curry was the Plan's investment advisor representative through NFP, Kestra IS, and/or Kestra AS (as of June 24, 2016).*

**Answer to Paragraph 62:** Defendant Curry denies the allegations in Paragraph 62, and avers it states a legal conclusion. Defendant NFP-IL denies the allegations in Paragraph 62. The remaining Defendants deny the allegations as stating a legal conclusion and/or lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 62 and, on that basis, deny such allegations.

63.    *From at least June, 2013, Curry was a registered representation* [sic] *through Kestra IS and, upon information and belief, executed trades in various Plan accounts.*

**Answer to Paragraph 63:** Defendant Curry admits he is a registered representative of KIS and denies the remaining allegations. Defendant KIS admits that Defendant Curry is a registered representative of KIS. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 63 and, on that basis, deny such allegations.

64.    *From at least June, 2013, Curry sold insurance services and products to the Plan through NFP.*

**Answer to Paragraph 64:** Defendants Curry, BPS, and NFP-IL deny the allegations in Paragraph 64. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 64 and, on that basis, deny such allegations.

65.    *From at least July, 2013 until approximately October, 2014, NFP paid Curry, through his company, BPS Management Company, LLC, based on the total revenue generated by the Plan, among other of his clients.*

**Answer to Paragraph 65:** Defendant Curry affirmatively alleges that his agreements with

16

BPS and NFP (IL) speak for themselves and otherwise denies the remaining allegations. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 65 and, on that basis, deny such allegations.

66.     *In October, 2014, NFP bought out Curry and he entered into an employment agreement with NFP ("Curry's Employment Agreement"), pursuant to which Curry had the following duties and responsibilities to NFP: Retaining NFP IL and BPS's existing block of business; generating new business production of products and services sold by NFP and its affiliates; transitioning day-to-day management of the existing business of BPS and client relationships to NFP; and assisting in the management of BPS.*

**Answer to Paragraph 66:** To the extent the allegations in Paragraph 66 describe or refer to other documents and/or other sources, Defendants Curry, BPS, and NFP-IL state that such other documents and other sources speak for themselves. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 66 and, on that basis, deny such allegations.

67.     *Curry's Employment Agreement provided that Curry "shall devote full attention and time during normal business hours to the business and affairs of [NFP IL] and . . . use the Employee's best efforts to carry out such responsibilities faithfully and efficiently and to maximize the earnings, and otherwise advance the interests, of [NFP IL] and its affiliates."*

**Answer to Paragraph 67:** To the extent the allegations in Paragraph 66 describe or refer to other documents and/or other sources, Defendants Curry, BPS, and NFP-IL state that such other documents and other sources speak for themselves. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 67 and, on that basis, deny such allegations.

68.     *Curry's Employment Agreement prohibited him from engaging in business activities that would present a conflict of interest with his obligations to NFP.*

**Answer to Paragraph 68:** To the extent the allegations in Paragraph 68 describe or refer to other documents and/or other sources, Defendants Curry, BPS, and NFP-IL state that such other documents and other sources speak for themselves. The remaining Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 68 and, on that basis, deny such allegations.

69.     *After NFP's took its cut, at least 10% of the revenue generated by the Plan was applied to Curry's draw.*

**Answer to Paragraph 69**: Paragraph 69's allegations are vague and compound, and accordingly Defendant Curry denies them. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 69 and, on that basis, deny such allegations.

70.     *Curry was an officer of NFP.*

**Answer to Paragraph 70**: Defendant Curry and Defendant BPS admit that Curry was a Senior Director, and later a Senior Vice President, of Defendant BPS, and deny the remaining allegations in Paragraph 70. NFP-IL denies the allegations in Paragraph 70. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 70 and, on that basis, deny such allegations.

71.     *Curry was responsible for managing BPS and its employees including Korchak.*

**Answer to Paragraph 71**: Defendant Curry and Defendant BPS object to Paragraph 71 as being vague and stating a legal conclusion and therefore deny Paragraph 71. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 71 and, on that basis, deny such allegations.

72.     *Curry was an ERISA fiduciary of the Plan.*

**Answer to Paragraph 72**: Paragraph 72 states a legal conclusion that all Defendants generally deny.

73.     *Curry and Korchak may be referred to collectively herein as the Representatives."*

**Answer to Paragraph 73**: Paragraph 73 contains information related to the structure of

Plaintiff's Amended Complaint, to which no response is required; to the extent a response is deemed required, Defendants deny such allegations.

## JURISDICTION AND VENUE

74.     *Plaintiff brings this action pursuant to ERISA and under Sections 502(a)(2), 502(a)(3), and all other relevant sections of ERISA (29 U.S.C. § 1001 et seq.), which provide that an ERISA fiduciary may pursue a civil action on behalf of the Plan to remedy breaches of fiduciary duty as set forth in ERISA § 409, 29 U.S.C. § 1109, and to obtain other appropriate equitable relief.*

**Answer to Paragraph 74:** Paragraph 74 generally purports to describe the requirements or contents of a statutory provision within ERISA, which speaks for itself and asserts legal conclusions or Plaintiff's description of its claims, to which no response is required.

75.     *This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1132(e).*

**Answer to Paragraph 75:** Defendants do not contest jurisdiction or venue for purposes of resolving the matters alleged in Plaintiff's Complaint or in Defendants' Counterclaims as set forth below. Consequently, Defendants admit that (i) the district courts of the United States have exclusive jurisdiction of civil actions brought pursuant to 29 U.S.C. § 1132(a)(2)-(3), and (ii) 29 U.S.C. § 1132(e)(2) provides for venue in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. To the extent Paragraph 75 contains substantive allegations for which a response is required, Defendants deny such allegations.

76.     *All Defendants are subject to service of process issued from this Court and this Court has personal jurisdiction pursuant to 29 U.S.C. § 1132(e)(2).*

**Answer to Paragraph 76:** Defendants do not contest jurisdiction or venue for purposes of resolving the matters alleged in Plaintiff's Complaint or in Defendants' Counterclaims as set forth below. Consequently, Defendants admit that (i) the district courts of the United States have exclusive jurisdiction of civil actions brought pursuant to 29 U.S.C. § 1132(a)(2)-(3), and (ii) 29

U.S.C. § 1132(e)(2) provides for venue in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. To the extent Paragraph 76 contains substantive allegations for which a response is required, Defendants deny such allegations.

77.     *Venue with respect to this action lies in the Northern District of Illinois, pursuant 29 U.S.C. § 1132(e)(2) because (a) some or all of the breaches of fiduciary duty giving rise to this action occurred in this district, and (b) Defendants may be found in this district and have agents doing business in this district.*

**Answer to Paragraph 75:** Defendants do not contest jurisdiction or venue for purposes of resolving the matters alleged in Plaintiff's Complaint or in Defendants' Counterclaims as set forth below. Defendants admit that (i) the district courts of the United States have exclusive jurisdiction of civil actions brought pursuant to 29 U.S.C. § 1132(a)(2)-(3), and (ii) 29 U.S.C. § 1132(e)(2) provides for venue in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. To the extent Paragraph 77 contains substantive allegations for which a response is required, Defendants deny such allegations.

## FURTHER FACTUAL ALLEGATIONS

### The Plan's Documents and Operation

78.     *The Northern Illinois Annuity Fund and Plan (the "Plan") was created in June, 1981 pursuant to the Agreement and Declaration of Trust dated June 25, 1981 (as restated and amended from time to time thereafter) (the "Trust") and the Rules and Regulations of the Northern Illinois Annuity Plan dated June 25, 1981 (as restated and amended from time to time) ("Rules and Regulations") or collectively, "Plan Documents."*

**Answer to Paragraph 76:** Paragraph 78 contains legal conclusions to which no response is required. To the extent a response is deemed required, Defendants deny such conclusions and/or allegations. To the extent the allegations in Paragraph 78 describe Plaintiff's historical operations or organizational foundation, Defendants lack knowledge or information sufficient to form a belief as to their truth and, on that basis, deny all such allegations. To the extent the allegations in

Paragraph 78 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants deny all remaining allegations set forth in Paragraph 78.

79.    *The Plan's purpose is to provide union workers with a trust fund through which to accumulate money to protect themselves and their families in the event of death or disability during their working years, and to provide additional financial security in retirement. Various labor unions and employers entered into collective bargaining agreements that initially provided for the establishment of the Plan and currently mandate that employers contribute to the Plan.*

**Answer to Paragraph 77:** Paragraph 79 contains descriptions of Plaintiff's Plan's purpose. Defendants lack knowledge or information sufficient to form a belief as to their truth and, on that basis, deny all such allegations.

80.    *A meeting of the Plan's Board of Trustees is noticed and held on a quarterly basis.*

**Answer to Paragraph 78:** The allegations in Paragraph 80 describe Plaintiff's internal operations. Defendants lack knowledge or information sufficient to form a belief as to their truth and, on that basis, deny all such allegations.

81.    *The members of the Board of Trustees receive no compensation for their service to the Plan.*

**Answer to Paragraph 79:** The allegations in Paragraph 81 describe Plaintiff's internal operations. Defendants lack knowledge or information sufficient to form a belief as to their truth and, on that basis, deny all such allegations.

82.    *The Plan Participants do not participate in any way in the investment of Plan assets, which is carried out by investment managers that previously included BPS, Kestra IS, and Kestra AS.*

**Answer to Paragraph 80:** Defendants admit that the Plan's investments are not Participant-directed and that the Plan's Trustees have hired investment and other professionals to assist them in the investment and management of the Plan's assets. Defendants deny all remaining allegations set forth in Paragraph 82.

*83.    The amount of benefit for each Plan participant is the balance in his or her individual account at the time he or she qualifies for a distribution. Such amount is equal to the sum of all contributions made over the years of employment, adjusted to reflect the Participants' share of any investment earnings or losses of the Plan as a whole, less administration expenses incurred by the Plan.*

**Answer to Paragraph 81:** Paragraph 83 describes Plaintiff's internal operations and the contents of its operational and foundational documents. Defendants state that the documents and other sources speak for themselves, and Defendants lack knowledge or information sufficient to form a belief as to the truth of any remaining allegations so they deny such remaining allegations in Paragraph 83 on that basis.

*84.    The Plan's Investment Policy Statement ("IPS"), which was adopted by the Board and amended from time to time with Board authorization, set the investment objectives and performance standards upon which all investment decisions were to be made.*

**Answer to Paragraph 82:** To the extent the allegations in Paragraph 84 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. However, to the extent that Plaintiff's Plan adopted an Investment Policy Statement, Defendants admit that the Plan's Board of Trustees had sole authority and discretion to adopt or amend such Investment Policy Statement. Defendants deny all remaining allegations set forth in Paragraph 84.

*85.    Under the IPS, the Plan's investment policy was to maintain a diversified balanced portfolio to be managed at a reasonable expense by an investment manager approved by the Trustees.*

**Answer to Paragraph 83:** Paragraph 85 describes or refers to other documents and/or other sources; Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 85.

86. *The fund portfolio consisted of fixed-income investments and equity asset classes. The purpose of the fixed income allocation was to preserve capital and stability of the yield. The purpose of the equity allocation was long-term capital growth.*

**Answer to Paragraph 84:** Defendants admit that the Trustees, in their discretion, diversified their investment portfolio to include different types of investment assets and classes, including (but not necessarily limited to) fixed income and equity investments. Defendants are without knowledge to form a belief as to the remaining allegations and therefore deny them.

87. *The IPS set minimum and maximum fixed income and equities asset allocation requirements. Any changes to the asset allocation were required to be for the purpose of increasing the fund's returns and/or to reduce risk. Asset allocation and changes between fixed income and equity funds were required to be approved by the Trustees.*

**Answer to Paragraph 85:** Paragraph 87 describes or refers to other documents and/or other sources. Defendants state that such other documents and other sources speak for themselves. Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 87.

88. *As discussed herein, the IPS restricted the types of fixed income and equity investment products that could be purchase [sic] for the Plan to those identified therein.*

**Answer to Paragraph 86:** Paragraph 88 describes or refers to other documents and/or other sources. Defendants state that such other documents and other sources speak for themselves. Defendants deny all remaining allegations set forth in Paragraph 88.

89. *Pursuant to the IPS, non-marketable securities, commodity trading, short selling, option trading with the exception of covered calls, and private placements constituted restricted and prohibited transactions and assets.*

**Answer to Paragraph 87:** Paragraph 89 describes or refers to other documents and/or other sources. Defendants state that such other documents and other sources speak for themselves. Defendants deny all remaining allegations set forth in Paragraph 89.

## NFP Was Appointed and Functioned as an ERISA Plan Administrator

*90.      While the Board of Trustees was listed as the Administrator in the Trust, the Board delegated the role of Plan Administrator to NFP, Korchak, and Curry.*

**Answer to Paragraph 88:** Defendants BPS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 90. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90 and, on that basis, deny all such allegations.

*91.      NFP functioned at all times as the ERISA Plan Administrator responsible for maintaining and administering the Plan.*

**Answer to Paragraph 89:** Paragraph 91 generally asserts a legal conclusion. Defendant BPS and Defendant NFP-IL deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 91. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 91 and, on that basis, deny all such allegations.

*92.      NFP's obligations also included those typical of a third-party administrator commonly known as a "TPA."*

**Answer to Paragraph 90:** Defendant BPS admits that it performed ministerial functions on behalf of the Plan while serving as third-party administrator (also known as a "TPA"). BPS denies all other allegations in Paragraph 92. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 92 and, on that basis, deny all such allegations.

*93.      Pursuant to the Rules and Regulations, the Plan Administrator had the responsibility to, among other things: (1) determine and fix the amount in each Employer's Individual Account by figuring the amount in the Individual Account on the last valuation date, plus the investment yield, minus the pro-rated costs of administrative expenses, plus employer contributions, plus the amount of forfeiture; (2) determine the gross investment yield obtained by*

*the Plan during the fiscal year pursuant to formula; and (3) deduct "expenses for the administration of the Plan and other amounts for reserves or such other purposes the Trustees, in their sole discretion, shall decide." See June 2, 2009 Rules and Regulations of the Plan, § 3, p. 9.*

**Answer to Paragraph 91:** Paragraph 93 describes or refers to other documents and/or other sources. Defendants state that such other documents and other sources speak for themselves. Defendants deny any remaining legal conclusions, factual characterizations, or allegations set forth in Paragraph 93.

94.     *As Plan Administrator, NFP was responsible for compliance with the reporting and disclosure rules under ERISA as respects the Plan.*

**Answer to Paragraph 92:** BPS and NFP-IL deny the allegations in Paragraph 94. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 94 and, on that basis, deny all such allegations.

95.     *As Plan Administrator, NFP was represented at the quarterly Board of Trustees meetings. NFP's Gannon made an audio recording of the Board meetings and took notes. Based on the recordings and notes, Gannon prepared detailed meeting minutes for each board meeting and distributed them to the Board. The Board reviewed and approved the minutes at the following quarterly board meeting.*

**Answer to Paragraph 93:** Defendant BPS admits that in its ministerial role as third-party administrator, BPS employees attended quarterly meetings, prepared draft meeting minutes based on written or audio notes from the meeting, and distributed such draft minutes to the Trustees for review and approval. Defendant BPS denies all other legal conclusions, factual characterizations, and other allegations contained in Paragraph 95. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 95 and, on that basis, deny all such allegations.

96.     *On an annual basis, NFP was charged with preparing all necessary paperwork for the auditor for the Plan's annual audit and preparation of Form 5500s.*

**Answer to Paragraph 94:** Defendant BPS admits that in its ministerial role as third-party administrator it was asked to assist the Trustees in preparing certain documents related to Plan

reporting obligations, including portions of the Plan's IRS Form 5500. Defendant BPS denies all other legal conclusions, factual characterizations, and other allegations contained in Paragraph 96. Defendant NFP-IL denies the allegations in Paragraph 96 as to it. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 96 and, on that basis, deny all such allegations.

97.     *NFP through Korchak and Gannon provided information respecting the Plan to the auditor on a yearly basis for the audit and Form 5500s.*

**Answer to Paragraph 95:** Defendant BPS admits that in its ministerial role as third-party administrator, the Trustees requested that it assist the Trustees' audit and accounting professionals by providing certain Plan-related information required by them to complete their audit. Defendant BPS denies all other legal conclusions, factual characterizations, and other allegations contained in Paragraph 97. Defendant NFP-IL denies the allegations in Paragraph 96 as to it. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 97 and, on that basis, deny all such allegations.

98.     *Korchak regularly represented that he was the Plan Administrator. He signed confirmations as such to obtain information from other Plan services providers for the Plan's annual audit.*

**Answer to Paragraph 96:** Defendant Korchak admits that, at Trustee direction, he occasionally requested information on their behalf from other Plan service providers. He denies all other legal conclusions, factual characterizations, and other allegations contained in Paragraph 98. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 98 and, on that basis, deny all such allegations.

99.     *Korchak or Curry signed the Form 5500 as Plan Administrator along with the Plan Sponsor.*

**Answer to Paragraph 97:** Paragraph 99 generally references a statutory definition within

ERISA which speaks for itself. Defendant Korchak and Curry deny all other legal conclusions, factual characterizations, and other allegations contained in Paragraph 99. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 99 and, on that basis, deny all such allegations.

*100.    NFP was required to maintain and control all investment-related records for the Plan.*

**Answer to Paragraph 98:** Defendants BPS and NFP-IL admit that they retained copies of certain records concerning the Plan during the period in which they served the Plan but deny all remaining allegations. To the extent Paragraph 100 is stating a legal conclusion, all Defendants deny the legal conclusion. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 100 and, on that basis, deny all such allegations.

*101.    NFP had complete control of all information relating to the Plan.*

**Answer to Paragraph 99:** Defendants deny the allegations in Paragraph 101.

*102.    NFP determined what information was provided to the Trustees and what information was withheld.*

**Answer to Paragraph 100:** Defendants object to Paragraph 102 as being overly broad and vague and therefore generally deny Paragraph 102. However, Defendants admit that they routinely and consistently disclosed information to the Trustees, particularly upon the Trustees' request.

*103.    After a July 14, 1997 Administrative Services Agreement between BPS and the Plan terminated on December 31, 2001, there was never a written administrative service contract between BPS and the Plan.*

**Answer to Paragraph 101:** To the extent the allegations in Paragraph 103 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant BPS generally denies the remaining allegations contained in Paragraph 103. The remaining Defendants lack knowledge or information sufficient

to form a belief as to the truth of the remaining allegations contained in Paragraph 103 and, on that basis, deny all such allegations.

104.    *NFP never presented an administrative or investment advisory services agreement to the Board for its consideration or approval.*

**Answer to Paragraph 102:** Defendants BPS and NFP-IL generally deny the allegations contained in Paragraph 104. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 104 and, on that basis, deny all such allegations.

105.    *NFP, Korchak, and Curry represented to the Board that a written agreement was not necessary or required.*

**Answer to Paragraph 103:** Defendants BPS, NFP-IL, Korchak, and Curry generally deny the allegations contained in Paragraph 105. Defendants note that none of the named Defendants have ever provided legal advice to the Trustees, ever represented to the Trustees that they are qualified to provide legal advice or were ever hired by the Trustees to be legal counsel to the Plan, and, in fact, the Trustees continuously retained outside legal counsel to serve the Plan and provide legal advice during the time period set forth in the Amended Complaint. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 105 and, on that basis, deny all such allegations.

106.    *From at least June, 2013 until its termination, NFP charged the Plan a flat fee for administrative services based on the number of Plan participants.*

**Answer to Paragraph 104:** Defendant BPS admits that it charged the Plan a flat fee in exchange for its provision of ministerial administration services. BPS denies all other allegations in Paragraph 106. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 106 and, on that basis, deny all such allegations.

**Defendants' Excessive and Unreasonable Investment Advisor and Management Fees Charged to the Plan**

*107.    NFP and/or Kestra IS, through Curry and Korchak, regularly advised and made recommendation to the Trustees regarding performance of its existing investments, investment strategy, investment options, the market, and the overall portfolio.*

**Answer to Paragraph 105:** In response to Paragraph 107, Defendant Korchak affirmatively alleges that he provided security brokerage and other services to the Trustees related to the Plan's fixed income portfolio, pursuant to written agreements with the Plan and Trustee direction, guidance, approval, and supervision, but generally denies all remaining allegations contained in Paragraph 107. Defendant Curry affirmatively alleges that he would provide general information to the Trustees related to the Plan's total assets, received contributions, and overall investment performance, but generally denies the remaining allegations in Paragraph 107. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 107 and, on that basis, deny such allegations.

*108.    Since at least 2012, Curry, Korchak, and Bruce Hagshenas (until his death) worked together on the makeup of the Plan's investment portfolio.*

**Answer to Paragraph 106:** The phrase "worked together on the makeup of the Plan's investment portfolio" is so vague it is impossible to determine what Plaintiff are alleging in Paragraph 108, and therefore Defendants deny the allegations.

*109.    At all times, the Board of Trustees, the members of which were not investment experts but managers and laborers in the constriction trade, reasonably relied on the investment advice and management of NFP and/or Kestra IS.*

**Answer to Paragraph 107:** Paragraph 109 describes Plaintiff Trustee's background, qualifications, expertise, and state of mind. Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 109 and consequently deny same on that basis.

110.    In all instances involving the investment of Plan assets, the Trustees relied upon the NFP's and/or Kestra IS's selection, recommendations, and determinations.

**Answer to Paragraph 108:** To the extent Paragraph 110 describes Plaintiff Trustee's state of mind or rationales in performing their fiduciary duties as Plan Sponsor, Defendants lack knowledge or information sufficient to form a belief as to such allegations and deny same on that basis. Defendants deny all other remaining allegations in Paragraph 110.

111.    In addition to the administrative services fee, from at least June, 2013, NFP charged the Plan a quarterly asset-based investment advisory fee, which was calculated based on three-eighths of one percent (.375%) of the average "fixed income assets" under NFP's management (the "NFP Advisory Fee").

**Answer to Paragraph 109:** Defendant BPS admits that it charged an administrative services fee for its ministerial operational duties as third-party administrator and, with the Trustees' prior knowledge and approval, also charged a separate asset-based fee for its services related to the Plan's fixed-income portfolio. BPS denies all other allegations contained in Paragraph 111. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 111 and, on that basis, deny all such allegations.

112.    NFP, Curry, and/or Korchak, acting as both fixed income investment manager and Plan Administrator, provided the information as to the values of the fixed income portfolio. Based on such information, Gannon calculated the NFP Advisory Fee.

**Answer to Paragraph 110:** Defendant BPS admits that its employee, Tracy Gannon, performed a fee calculation each quarter based on asset data provided to her for that purpose, so that such fee could be disclosed to and approved by the Trustees each quarter. BPS denies all other allegations contained in Paragraph 112. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 112 and, on that basis, deny all such allegations.

*113.    Upon information and belief, the information provided by NFP, Curry, and/or Korchak to NFP as Plan Administrator to calculate the NFP Advisory Fee was not complete and thus the NFP Advisory Fee was based on inaccurate information.*

**Answer to Paragraph 111:** Defendants BPS and Korchak deny the allegations contained in Paragraph 113. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 113 and, on that basis, deny all such allegations.

*114.    During the relevant time, the Plan wrote manual checks to BPS to pay the investment advisory fee as instructed by NFP. Korchak and/or Curry processed the advisory fee in one of three ways: they ran the advisory fee through NFP; they ran the advisory fee through the Plan's through Kestra IS; and/or they took payment from the Plan for their own account with no portion of the revenue going to NFP or Kestra IS.*

**Answer to Paragraph 112:** The phrase "ran...through" is so vague it is impossible to determine what Plaintiff are alleging occurred in Paragraph 114. Because Defendants cannot determine the nature of Plaintiff's assertions in Paragraph 114, the "allegations" (such as they are) are denied. Nevertheless, Defendant BPS and Korchak admit that the Plan was invoiced for services received and the Plan paid such invoices as agreed. Defendants BPS and Korchak deny the remaining allegations in Paragraph 114. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 114 and, on that basis, deny all such allegations.

*115.    A complete accounting is necessary to figure out how these funds were processed, due to all Defendants' failures of prudent processes including a failure to maintain complete records of Plan investments, lack of contracts between the Plan and Defendants, failures to disclose agreements between and among Defendants, and the existence and failures to disclose to the Board the many conflicts of interest.*

**Answer to Paragraph 113:** Defendants generally deny Plaintiff's legal conclusions, asserted remedies, claims descriptions, factual characterizations, and all other allegations contained in Paragraph 115.

*116.    From approximately June 2013 through 2017, NFP caused to be charged to the Plan an NFP Advisory Fee in the total amount of at least $1,151,095.21.*

**Answer to Paragraph 114:** Defendants BPS and NFP-IL deny the allegations in Paragraph 116. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 116 and, on that basis, deny all such allegations.

*117.    As described further herein, First Trust Advisors, Inc. ("FTA") was the selected investment manager for the equity portion of the portfolio to which the Plan agreed to pay FTA .55 bps for its investment management of the equity portion of the portfolio as set forth in a 2009 contract with the Plan (the "FTA Contract").*

**Answer to Paragraph 115:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required and to the extent the allegations in Paragraph 117 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant BPS admits that the Trustees selected FTA to serve as an investment manager for its equity portfolio. Defendant BPS generally denies the remaining allegations contained in Paragraph 117. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 117 and, on that basis, deny all such allegations.

*118.    NFP, which negotiated the FTA contract, did not disclose the Trustee that NFP would receive any type of fee from FTA for any reason.*

**Answer to Paragraph 116:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent  an answer is required and to the extent the allegations in Paragraph 118 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant BPS denies the allegations in Paragraph 118. Defendants lack knowledge or information sufficient

to form a belief as to the truth of the said allegations, so Defendants deny the allegations in Paragraph 118.

119.    *On December 17, 2009, Curry (as Vice President of NFP, BPS) emailed FTA's Foley regarding the Plan's fees: "I know we discussed in prior conversations, but is there any way you can collect the whole 57 Bps and pay Benefit Planning Services the difference from what your charge is and the 57 Bps? We can get a letter signed by the board that we are doing this if your legal needs it. NIAF wants the fees being paid coming from First Trust and not directly out of the annuity fund." This alleged desire of the Trustees was not discussed by Curry with the Trustees.*

**Answer to Paragraph 117:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer may be required and to the extent the allegations in Paragraph 119 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant Curry admits that he sent a substantively similar email to Ed Foley at First Trust Advisors on this date but denies all remaining allegations. Defendant NFP-IL denies the allegations in Paragraph 119 as to it.  The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 119 and, on that basis, deny all such allegations.

120.    *From 2009 through about 2013, NFP failed to disclose to the Trustees that it was charging the Plan the NFP Advisory Fee an additional solicitor fee from FTA.*

**Answer to Paragraph 118:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants BPS and NFP-IL deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 120. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 120 and, on that basis, deny all such allegations.

121.    *Around 2013, NFP represented to the Trustees that the Plan was required to pay FTA .57 bps as a percentage of assets under FTA's management and pay NFP an equity recordkeeping fee calculated as follows: The equity portfolio value at the relevant time, multiplied*

33

*by ¼ of .57 basis points, less the alleged FTA equity fee, with the balance billed by NFP to the Plan. This fee is referred to as the ("NFP Equity Fee").*

**Answer to Paragraph 119:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS and NFP-IL generally deny the allegations in Paragraph 121 but admit that the Plan paid BPS an equity recordkeeping fee, the particulars of which were disclosed to and agreed by the Trustees. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 121 and, on that basis, deny all such allegations.

*122. Neither the FTA Contract nor any other agreement refers to an equity recordkeeping fee to be paid to NFP, yet NFP received additional compensation of 25 basis points in the FTA account through an undisclosed fee-splitting arrangement with FTA.*

**Answer to Paragraph 120:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required and to the extent the allegations in Paragraph 122 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants BPS and NFP-IL generally deny the allegations in Paragraph 122; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 122 and, on that basis, deny all such allegations.

*123. NFP did not fully disclose their portion of this fee, and to the extent the Trustee received some information about the fee, such information was incomplete, confusing, and insufficient to apprise the Trustees of nature and extent of the fee.*

**Answer to Paragraph 121:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, the "information" Plaintiff acknowledges receiving in Paragraph 123 are documents and other sources that speak for themselves. Defendants deny Plaintiff's legal conclusions, factual characterizations,

and all other allegations contained in Paragraph 123.

124.    *To the extent NFP provided any services to the Plan for this additional fee, FTA was already obligated to provide those services pursuant to the FTA Contract, causing the Plan to pay more than the 55 basis points set forth in the agreement.*

**Answer to Paragraph 122:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendant BPS denies the allegations in paragraph 124 and affirmatively alleges that the FTA fees and BPS recordkeeping fees were disclosed to the Trustees. To the extent the allegations in Paragraph 124 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant NFP-IL denies the allegations in Paragraph 124 as to it.  The remaining Defendants are without information to admit or deny the allegations in Paragraph 124 and therefore deny them.

125.    *By negotiating the foregoing arrangement for the Plan, NFP/Kestra IS arranged for the payment of excessive fees to a marginally qualified equity manager with minimal experience in investing pension fund assets, and secured a cut of the fees paid to FTA.*

**Answer to Paragraph 123:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants KIS, BPS and NFP-IL generally deny the allegations in Paragraph 125; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 125 and, on that basis, deny all such allegations.

126.    *The Plan could have obtained management of its equity portfolio by highly qualified managers with substantially lower fees and with better returns over time.*

**Answer to Paragraph 124:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 126.

127.    *NFP intentionally concealed and did not disclose that this additional fee was actually a solicitor fee and constituted indirect compensation to NFP that was required to be disclosed as such.*

**Answer to Paragraph 125:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants BPS and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 127. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 127 and, on that basis, deny all such allegations.

128.    *From approximately June 2013 through 2017, NFP caused to be charged to the Plan an FTA Advisory Fee in the total amount of approximately $199,351.02.*

**Answer to Paragraph 126:** Defendants BPS and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 128. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 128 and, on that basis, deny all such allegations.

129.    *From approximately June 2013 through 2017, the Plan also directly paid FTA an asset-based equity asset management fee in the total amount of at least $324,651.21 ("FTA Fee").*

**Answer to Paragraph 127:** Defendants BPS and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 128. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 128 and, on that basis, deny all such allegations.

<u>**Imprudent and Conflicted Conduct Relating to**</u>
<u>**Management of the Bond Portfolio**</u>

130.    *At the relevant times, a significant portion of the Plan's portfolio was invested in bonds.*

**Answer to Paragraph 128:** Defendants object to this allegation as being vague and overly broad and therefore deny the allegations in Paragraph 130, provided, however, that Defendant BPS

affirmatively alleges that the Plan's Trustees established the asset allocation of the investments of the Plan at all times.

131.    By at least December, 2008, unknown to the Trustees, Kestra IS contracted with AAM for certain fixed income securities trading services for Kestra IS's registered representatives, including Korchak and Curry.

**Answer to Paragraph 129**: Defendants KIS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 131. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 131 and, on that basis, deny all such allegations.

132.    For each bond transaction placed by Korchak or Curry with AAM, Kestra IS received compensation in the form of fees and commissions.

**Answer to Paragraph 130**: Defendants KIS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 132. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 132 and, on that basis, deny all such allegations.

133.    For each bond transaction placed with AAM, Kestra IS's registered representatives received compensation in the form of commissions. Gross Sales Concession ("GSC") referred to the RR's gross compensation earned on each bond investment, which was then applied in accordance with Kestra IS's guidelines.

**Answer to Paragraph 131**: Defendant KIS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 133. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 133 and, on that basis, deny all such allegations.

134. *Under the Kestra IS/AAM agreement, for transactions in Kestra IS's fee-based advisory accounts, the value of the GSC is equal to zero.*

**Answer to Paragraph 132:** Defendant KIS generally denies the allegations in Paragraph 134. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 134 and, on that basis, deny all such allegations.

135. *Although Kestra IS was required to provide AAM with a continually updated list of its fee-based advisory accounts, the Plan's account with Kestra IS was an asset based advisory account, but never was disclosed as such.*

**Answer to Paragraph 133:** Defendant KIS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 135. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 135 and, on that basis, deny all such allegations.

136. *Kestra IS and Korchak recommended this arrangement in which he exercised discretion in the execution of bond trades and, as a result, received commissions and other fees on such trades.*

**Answer to Paragraph 134:** Defendants KIS and Korchak generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 136. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 136 and, on that basis, deny all such allegations.

137. *Although it appears that Kestra IS was prohibited from realizing compensation (i.e., GSC) on the Plan's account under the contract with AAM, Kestra IS took at least a 1.0-2.5% markup on all bond trades executed by Korchak.*

**Answer to Paragraph 135:** Defendant KIS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 137. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 137 and, on that basis, deny all such allegations.

*138.    Korchak did not disclose these commissions in the form of mark-ups to the Trustees.*

**Answer to Paragraph 136:** Defendant Korchak denies the allegations contained in Paragraph 138. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138 and deny the allegations on that basis.

*139.    The NFP Advisory Fee was billed to the Plan regularly, without disclosure of any markups.*

**Answer to Paragraph 137:** Defendants deny the allegations contained in Paragraph 139.

*140.    There was no contract with the Plan allowing such markups.*

**Answer to Paragraph 138:** Defendants cannot discern what Plaintiff are alleging, as the word "contract" is vague and ambiguous. Consequently, Defendants deny the allegations contained in Paragraph 140.

*141.    The Board did not learn about the markups on bond trades until June, 2017, when, after the Trustees required prior approval for all bond trades, Korchak asked the Trustees for authority to purchase $4 million in bonds. Korchak told the Trustees that he would agree to eliminate his practice of adding "mark-ups" on the bond purchases in the amount of 1 to 2.5% in exchange for an increase in the asset based advisory fee for the fixed income investments. The Trustees were unaware, before Korchak's "proposal" to forego markups, of any such markups and rejected the offer. Korchak stated that the compensation described as markups was a practice that was part of their longstanding arrangement with the Plan.*

**Answer to Paragraph 139:** To the extent the allegations in Paragraph 141 relate to Plaintiff and/or third parties not involved in this litigation, including what such parties knew and when, Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations and deny same on that basis. To the extent the allegations in Paragraph 141 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Nevertheless, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 141.

142. *Any such price markup should have been disclosed and approved by the Trustees and would have been inconsistent with industry standard for investment management of ERISA funds. A typical ERISA bond manager will only charge the Plan an asset based investment management fee and provide written representations that no additional compensation is received, neither broker's commission nor commission markups.*

**Answer to Paragraph 140:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 142.

143. *Upon information and belief, Kestra IS, through Korchak, frequently bought and sold bonds to generate commission and fees in a course of conduct referred to as "churning." Upon information and belief, this activity caused the Plan to incur losses from the commissions and the "markups."*

**Answer to Paragraph 141:** Defendants KIS and Korchak generally deny Plaintiff's legal

conclusions, factual characterizations, and all other allegations contained in Paragraph 143. The

remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of

the remaining allegations contained in Paragraph 143 and, on that basis, deny all such allegations.

144. *Kestra IS, through Korchak. invested the Plan's assets in taxable municipal bonds where bid-ask spreads are less risky securities such as Treasuries and many high-quality corporate debt bonds. By 2017, Korchak had invested a large majority of the bond portfolio in taxable municipal bonds, including bonds that were difficult to value and cash, creating unnecessary risk and losses when, on the advice of a qualified registered investment advisor who succeeded Korchak and Curry, the portfolio had to be restructured to obtain an appropriate allocation of invested assets.*

**Answer to Paragraph 142:** The allegations in Paragraph 144 are vague and overly broad

and rely on undefined terms and quantities. Therefore, Defendants generally deny Plaintiff's legal

conclusions, factual characterizations, and all other allegations contained in Paragraph 144.

145. *In or around August 2015, the SEC issued guidance about its concerns with financial advisors selling structured products before maturity and the negative financial outcome for investors as a result. Curry and Korchak were identified as financial advisors of Kestra IS who were selling structured products prior to maturity. Upon information and belief, on the Plan's brokerage account with Kestra IS, Korchak executed at least 1,140 of these potentially problematic trades. Upon information and belief, Korchak's trading activities were in violation of his fiduciary duties to the Plan and resulted in losses to the Plan.*

**Answer to Paragraph 143:** Paragraph 145 references ERISA and SEC materials which

speak for themselves, and asserts legal conclusions and factual characterizations which would be subject to proof, including by expert testimony, and to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 145.

146.    *In December, 2016, the Trustees instructed Korchak to cease all discretionary bond purchases for the Plan's account and instead to make recommendations to the Trustees and obtain the Trustee's approval in advance of any proposed sales or purchases.*

**Answer to Paragraph 144:** To the extent the allegations in Paragraph 146 refer to a document, the document speaks for itself. Korchak generally denies the allegations contained in Paragraph 146. To the extent the allegations in Paragraph 146 relate to Defendant Korchak, the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

147.    *In instances when the Trustees instructed Korchak to execute bond trades after December, 2016, Korchak did not execute those trades.*

**Answer to Paragraph 145:** Defendant Korchak generally denies the allegations contained in Paragraph 147. To the extent the allegations in Paragraph 147 relate to Defendant Korchak, the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

148.    *From approximately December, 2016 through November, 2017, NFP, Kestra AS, and Korchak did not manage the bond portfolio, and the actions and inactions taken during that period were contrary to the expressed direction or actions of the Trustees.*

**Answer to Paragraph 146:** Defendants BPS, NFP-IL, KAS, and Korchak generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 148. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

149.    *Despite the fact that NFP, Kestra AS and Korchak provided little to no investment advice or management from December, 2016 through 2017, including implementing transactions*

41

*approved by the Trustees, Defendants collected the NFP Advisory Fee for that period.*

**Answer to Paragraph 147:** BPS, NFP-IL, KAS, and Korchak generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 149. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

### Kestra IS's Compensation for Trade Execution and Failure to Disclose Same

*150.     Kestra IS acted in dual capacities as investment advisor and broker-dealer for the Plan.*

**Answer to Paragraph 148:** Defendant KIS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 150; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*151.     From this conflict of interest position, on top of the NFP Advisory Fee and the FTA Fee, NFP and/or Kestra IS, through its Representatives, realized hundreds of thousands of dollars in commissions and transaction fees from securities transactions executed by Korchak and/or Curry as registered representatives.*

**Answer to Paragraph 149:** Defendants KIS, BPS, and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 151. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*152.     NFP and/or Kestra IS did not disclose all such commission and other fees.*

**Answer to Paragraph 150:** Defendants KIS, BPS, and NFP-IL deny the allegations contained in Paragraph 152. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*153.	NFP and/or Kestra IS did not offset the NFP Advisory Fee to take into account such commission and other fees.*

**Answer to Paragraph 151:** Defendants KIS, BPS, and NFP-IL deny the allegations contained in Paragraph 153. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*154.	Due to the lack transparency from Defendants, a complete accounting is required to determine what indirect compensation the Fund was paying to Kestra IS.*

**Answer to Paragraph 152:** Defendant KIS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 154; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*155.	Direct and indirect compensation information in the Plan's Form 5500s, audited financial statements, Defendants' sworn interrogatory answers, and other varied documentation provided the Fund Counsel after the fact contain inconsistent information as to the nature and amounts of the direct and indirect compensation received by Plan service providers on the back of the Plan and its Participants*

**Answer to Paragraph 153:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 155.

*156.	As Plan fiduciaries, Defendants were required to discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, and defraying reasonable expenses of administering the plan*

**Answer to Paragraph 154:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 156.

*157.	Defendants had a conflict of interest when providing fiduciary services to the Plan including recommending and selecting investment products and services from which they financially benefited through commissions and fees at the expense of the Plan participants.*

**Answer to Paragraph 155:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 157.

*158.     The Defendants failed to disclose to the Board the conflicted nature of the roles of Defendants and, as a result, the Trustees were unaware of the conflicts of interest plaguing the services they received.*

**Answer to Paragraph 156:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 158.

### Imprudent and Conflicted Conduct Concerning
### the MetLife Managed GIC Investment

*159.     On or around August 24, 2004, BPS's Bruce Hagshenas informed the Trustees that the Plan invested an estimated $4 million in a MetLife Managed GIC contract 25157 that paid Alliance Benefit Group, the named investment administrator, 0.68% or 68 bps of the investment.*

**Answer to Paragraph 157:** Per this Court's order in ECF No. 134, issues related to selection of the GIC have been dismissed, so no answer is required. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 159 and, on that basis, deny all such allegations.

*160.     Korchak was not registered with Kestra until September 1, 2004, but signed the documentation for MetLife GIC.*

**Answer to Paragraph 158:** Per this Court's order in ECF No. 134, issues related to selection of the GIC have been dismissed, so no answer is required. To the extent an answer is required, Defendant Korchak denies the allegations contained in Paragraph 160. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 160 and, on that basis, deny all such allegations.

*161.     Prior to making the investment, NFP and/or Kestra IS did not inform the Trustees that they would directly receive a quarterly "advisory fee" from Alliance Benefit Group ("ABG") through the life of the investment.*

**Answer to Paragraph 159:** Per this Court's order in ECF No. 134, issues related to selection of the GIC have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and Kestra IS deny the allegations contained in Paragraph 161. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth

of the remaining allegations contained in Paragraph 161 and, on that basis, deny all such allegations.

162.    *Prior to making the investment, no commission or fee schedule was disclosed.*

**Answer to Paragraph 160:** Per this Court's order in ECF No. 134, issues related to selection of the GIC have been dismissed, so no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 162.

163.    *Fees associated with this investment included quarterly custody and asset-based fees, which were unreasonable and excessive, and the Plan was charged fees payable to ABG for custodial services that duplicated other custodial services provided to the Plan.*

**Answer to Paragraph 161:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 163. To the extent the allegations in Paragraph 163 relate to the services provided by a third party not involved in this litigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

164.    *NFP and/or Kestra IS did not reduce the NFP Advisory Fee to reflect the additional compensation from ABG.*

**Answer to Paragraph 162:** Defendants KIS, BPS, and NFP-IL deny the allegations contained in Paragraph 164. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

165.    *Over the life of the investment, upon information and belief, NFP, Kestra IS, and later Kestra AS failed to disclose material information about the MetLife GIC in a continuing breach of fiduciary duty.*

**Answer to Paragraph 163:** The allegations in Paragraph 165 are vague, overly broad and undefined. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 165.

166.    *Over the life of the investment, upon and information and belief, NFP, Kestra IS, and later Kestra AS failed to disclose all direct and indirect compensation related to the MetLife*

*GIC, in a continuing breach of fiduciary duty.*

**Answer to Paragraph 164:** Defendants KIS, KAS, BPS, and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 166. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

167.     *NFP, Kestra IS, and later Kestra did not provide the Trustees with all financial reports relating to the MetLife GIC investment.*

**Answer to Paragraph 165:** Defendants KIS, KAS, BPS, and NFP-IL generally deny the allegations contained in Paragraph 167. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

168.     *These Defendants failed to evaluate the performance and fees of Alliance Benefit Group as investment manager for this investment.*

**Answer to Paragraph 166:** Defendants KIS, KAS, BPS, and NFP-IL generally deny the allegations contained in Paragraph 168. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

169.     *In 2017, Korchak misrepresented to the Trustees that he was the "only" person that could request redemption of the MetLife GIC, when in fact the Plan Sponsor was authorized to immediately request a redemption. Korchak's misrepresentations delayed transfer of the control of this asset from to the Trustees. On information and belief, Kestra IS received fees during the period of delay in transferring control of the asset to the Trustees.*

**Answer to Paragraph 167:** Defendants Korchak and Kestra IS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 169; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*170.    Upon information and belief, the Plan suffered losses because the $4 million should have been allocated to diversified investments of the other Plan assets which produced higher returns.*

**Answer to Paragraph 168:** Paragraph 170 contains characterizations which describe Plaintiff's claims and alleged losses. These items would be subject to proof, including by expert testimony. Either no response is required or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 170.

### Imprudent, Conflicted, and Prohibited Conduct Relating to Purchase of PIMCO Class A Shares

*171.    Kestra IS, through Korchak, caused to be purchased shares of the PIMCO Total Return Fund in mutual fund share class, PIMCO Class A Shares ("PIMCO Class A Shares"), which would result in exorbitant commissions.*

**Answer to Paragraph 169:** Per this Court's order in ECF No. 134, issues related to PIMCO Class A Shares have been dismissed, so no answer is required.  To the extent an answer is required, Defendants KIS and Korchak generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 171. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*172.    The PIMCO Class A Shares are a high fee share class typically purchased by retail investors and are not appropriate for institutional investors such as the Plan with substantially larger amounts to invest.*

**Answer to Paragraph 170:** Per this Court's order in ECF No. 134, issues related to PIMCO Class A Shares have been dismissed, so no answer is required.  To the extent an answer is required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 172.

173.    *The PIMCO Class A share class charges both 12b-1 fees and sales loads.*

**Answer to Paragraph 171:** Per this Court's order in ECF No. 134, issues related to PIMCO Class A Shares have been dismissed, so no answer is required. To the extent an answer is required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 173.

174.    *Institutional shares were available but did not provide favorable 12b-1 fees for Kestra IS.*

**Answer to Paragraph 172:** Per this Court's order in ECF No. 134, issues related to PIMCO Class A Shares have been dismissed, so no answer is required. To the extent an answer is required, Defendant KIS generally denies the allegations contained in Paragraph 174. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

175.    *Kestra IS received 12b-1 fees and other fees from investment in the PIMCO Class A Shares.*

**Answer to Paragraph 173:** Per this Court's order in ECF No. 134, issues related to PIMCO Class A Shares have been dismissed, so no answer is required. To the extent an answer is required, Defendant KIS generally denies the allegations contained in Paragraph 175. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

176.    *Kestra IS failed to purchase, recommend, or hold for the Plan institutional share classes that did not charge 12b-1 fees, even though the Plan was eligible to hold institutional share classes.*

**Answer to Paragraph 174:** Per this Court's order in ECF No. 134, issues related to PIMCO Class A Shares have been dismissed, so no answer is required. To the extent an answer is required, Defendant KIS generally denies the allegations contained in Paragraph 176. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these

allegations and, on that basis, deny all such allegations.

177.     *Had the Plan held shares in the institutional share class of a mutual fund, the Plan would have earned higher returns because of the absence of a 12b-1 charge, and because Defendants would have taken no commissions or significantly lower commissions than they in fact did.*

**Answer to Paragraph 175:** Per this Court's order in ECF No. 134, issues related to PIMCO

Class A Shares have been dismissed, so no answer is required.  To the extent an answer is required,

Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other

allegations contained in Paragraph 177.

178.     *Investment in the PIMCO Class A Shares violated the Plan's IPS as the PIMCO Fund prospectus includes a disclosure that the PIMCO Class A Shares includes holdings in "below investment grade" fixed income investments.*

**Answer to Paragraph 176:** Per this Court's order in ECF No. 134, issues related to PIMCO

Class A Shares have been dismissed, so no answer is required.  To the extent an answer is required,

the allegations in Paragraph 178 describe or refer to other documents and/or other sources;

Defendants state that such other documents and other sources speak for themselves. To the extent

a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual

characterizations, and all other allegations contained in Paragraph 178.

179.     *PIMCO Class A Shares constituted an imprudent investment using assets of the Plan.*

**Answer to Paragraph 177:** Per this Court's order in ECF No. 134, issues related to PIMCO

Class A Shares have been dismissed, so no answer is required.  To the extent an answer is required,

Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other

allegations contained in Paragraph 179.

180.     *Upon information and belief, Kestra IS failed to disclose receipt of all fees and other compensation from the PIMCO Class A Shares.*

**Answer to Paragraph 178:** Per this Court's order in ECF No. 134, issues related to PIMCO

Class A Shares have been dismissed, so no answer is required. To the extent an answer is required, Defendant KIS generally denies the allegations contained in Paragraph 180. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*181. NFP and Kestra IS failed to disclose to the Trustees the conflict of interest that existed as a result of their receipt of 12b-1 fees, and their selection of the PIMCO Class A Shares that generated such fees.*

**Answer to Paragraph 179:** Per this Court's order in ECF No. 134, issues related to PIMCO Class A Shares have been dismissed, so no answer is required. To the extent an answer is required, Defendants KIS, BPS, and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 181; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*182. NFP and Kestra IS did not provide the Trustees with appropriate written financial reports relating to these investments and failed to disclose reasonable alternative investments.*

**Answer to Paragraph 180:** Per this Court's order in ECF No. 134, issues related to PIMCO Class A Shares have been dismissed, so no answer is required. To the extent an answer is required, Defendants KIS, BPS, and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 182. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*183. NFP and Kestra IS selected and retained these high fee investments to financially benefit themselves to the financial detriment of the Plan and its Participants. They had a conflict of interest in doing so, and the amount of such fees are assets owed to the Plan.*

**Answer to Paragraph 181:** Per this Court's order in ECF No. 134, issues related to PIMCO Class A Shares have been dismissed, so no answer is required. To the extent an answer is required,

Defendants KIS, BPS, and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 183; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*184.    Upon information and belief, the Plan suffered a loss in value because the assets used for these investments would have earned higher returns if placed on terms available to institutional investors.*

**Answer to Paragraph 182:** Per this Court's order in ECF No. 134, issues related to PIMCO Class A Shares have been dismissed, so no answer is required.  To the extent an answer is required, To the extent the allegations in Paragraph 184 describe Plaintiff's alleged losses, Defendants lack knowledge or information sufficient to form a belief as to their truth and, on that basis, deny all such allegations. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 184.

*185.    Kestra IS has been rebuked by the SEC related to the PIMCO Class A Shares, confirming the practice of investing in retail-class funds was not a "one-off" event or possible mistake but an embedded firm practice designed to take additional compensation from 12b-1 fees without disclosing the arrangements.*

**Answer to Paragraph 183:** Per this Court's order in ECF No. 134, issues related to PIMCO Class A Shares have been dismissed, so no answer is required.  To the extent an answer is required, Defendant KIS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 185, and the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

## Imprudent and Conflicted Recommendation of
## First Trust Advisors

*186.    NFP and/or Kestra IS, acting in a fiduciary capacity, recommended the Plan engage FTA to manage the equity portion of the portfolio.*

**Answer to Paragraph 184:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS admit that the Trustees hired First Trust Advisors, LLP as an investment manager after interviewing several managers and deny the remaining allegations contained in Paragraph 186. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

187.    *NFP and/or Kestra IS did not provide the Trustees with sufficient information about potential investment managers, including FTA, and did not provide the Trustees with a detailed summary, research, or comparison reports that included quantitative and qualitative analyses of the resources and past performance of qualified equity managers.*

**Answer to Paragraph 185:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 187, and the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

188.    *It would be typical for this kind of fund to invest in equity index fund that could cost between 9-12 basis points, but NFP did not recommend this type of strategy to the Trustees.*

**Answer to Paragraph 186:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 188, and the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*189. NFP and/or Kestra IS did not evaluate whether other equity investment managers with institutional client experience, adequate research capacity, and demonstrated excellent past performance could be engaged.*

**Answer to Paragraph 187:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 189, and the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*190. The failure of NFP and/or Kestra IS to conduct a search for qualified, top-performing equity managers and provide the results of the research to the Trustees so they could select a manager violated their responsibility to act on behalf of the Trustees with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent investment advisor familiar with such matters would use in advising a board of trustees.*

**Answer to Paragraph 188:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 190, and the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*191. FTA had extremely limited institutional retirement plan client experience and limited internal capabilities to evaluate equity managers, which was not disclosed to the Trustees.*

**Answer to Paragraph 189:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 191.

192.    *FTA paid Ibbotson Associates (n/k/a Morningstar, Inc.) a licensing fee of .07% out of its fee with respect to the assets invested in the FTA/Ibbotson Multi Discipline Portfolio. Ibbotson Associates provided asset allocation research and services.*

**Answer to Paragraph 190:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, The allegations in Paragraph 192 relate to monetary amounts paid by one third party to another third party, neither party of which is involved in this litigation. Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny the allegations in Paragraph 192. To the extent the allegations in Paragraph 192 describe or refer to other written fee agreements and/or other documentary sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 192.

193.    *FTA's stock selection decisions were not made based on its independent research and review of the management policies, capabilities and performance of the companies issuing stock and, on information and belief, FTA made no company visits before investing the Fund's money. On information and belief based on FTA's communications, FTA relied primarily on Morningstar Inc.'s research available to the public. FTA's limited experience and resources compared to most institutional investment advisors were not disclosed to the Trustees.*

**Answer to Paragraph 191:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, the allegations in Paragraph 193 relate to Plaintiff or third parties not involved in this litigation. Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny the allegations in Paragraph 193.

194.    *The Plan's portfolio represented approximately 48% of FTA's total assets under management in FTA's equity strategy, yet FTA's very limited experience in advising pension funds was not disclosed to the Trustees.*

**Answer to Paragraph 192:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, The allegations

54

in Paragraph 194 relate to Plaintiff or third parties not involved in this litigation. Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny the allegations in Paragraph 194.

195.    *FTA had 105 client relationships with an average account size of only $300,000. This lack of experience managing institutional assets, which was not disclosed to the Trustees, was known or should have been known to NFP and/or Kestra IS. It was imprudent of Defendants to cause the Plan to hire FTA as its investment advisor for the equity portfolio valued at $6.5 million at inception.*

**Answer to Paragraph 193:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, the allegations in Paragraph 195 relate to Plaintiff or third parties not involved in this litigation. Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny such allegations in Paragraph 195. Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 195; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

196.    *The Trustees relied upon the NFP and/or Kestra IS's advice and recommendations to engage FTA.*

**Answer to Paragraph 194:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants BPS, NFP-IL, and KIS lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged mental state, in Paragraph 196, and, on that basis, deny the allegations of Paragraph 196. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

197.    *NFP and/or Kestra IS knew when they recommended FTA that they would condition the engagement of FTA on a directed brokerage through Kestra IS and, as such, NFP and/or Kestra IS would benefit from commissions and other fees.*

**Answer to Paragraph 195:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 197. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

198.    *They did not disclose this to the Trustees. This compensation arrangement was inconsistent with the contractual arrangements with top-performing equity managers who would consider using brokers providing the best execution of trades and normally would not agree to directed brokerage of all trades.*

**Answer to Paragraph 196:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, the allegations in Paragraph 198 are vague and ambiguous. To the extent a response is required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 198.

199.    *NFP and/or Kestra IS did not disclose the conflicts of interest related to their selection of FTA and the arrangement with FTA under which they would be the directing brokers and would receive other indirect fees and commissions.*

**Answer to Paragraph 197:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 199. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

200.    *NFP and/or Kestra IS failed to inform the Trustees that use of a directed brokerage may negatively impact FTA's ability to secure best execution for the Plan's equity investments.*

**Answer to Paragraph 198:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 200. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

201.    *NFP and/or Kestra IS recommended that the Trustees engage FTA precisely so that they would realize these undisclosed financial benefits.*

**Answer to Paragraph 199:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 201. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

202.    *In reliance on NFP and/or Kestra IS, on December 15, 2008, the Trustees approved the engagement of FTA.*

**Answer to Paragraph 200:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's alleged mental state, in Paragraph 202, and on that basis deny such allegations; provided, however, Defendants BPS, NFP-IL, and KIS admit that the Trustees, in their discretion, hired FTA to serve the Plan. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

Defendants generally deny any remaining legal conclusions, factual characterizations, or allegations proffered by Plaintiff in Paragraph 202.

203.    *In January, 2009, after the Board had approved a contract with FTA, Curry and Korchak misrepresented to FTA's Ed Foley that to move forward with FTA as equity manager for the Plan, the Board required that Kestra IS be the designated broker.*

**Answer to Paragraph 201:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants Curry and Korchak deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 203; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

204.    *Later, according to Mr. Foley, he was informed that NFP needed to conduct due diligence of FTA in order for "any of their advisors to recommend separate account investment management;" that NFP had no connectivity to the National Financial or Fidelity Advisor Channel, a platform that would be most advantageous for NIAF and FTA, and with the lack of platform connectivity, NFP suggested the investment managers provide management to the Plan in the form of self-custody. FTA was not comfortable with that arrangement because it presented a conflict of interest and placed FTA in a scenario where it would have to pay the Kestra Advisors a solicitation fee.*

**Answer to Paragraph 202:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants BPS and NFP-IL deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 204; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

205.    *NFP's Hagshenas then contacted Lisa Kotler, a Vice President, Retirement Services, at NFP asking that she waive the due diligence requirement. Ms. Kotler responded that no due diligence was required because of "the structure of the deal," described as follows: (1) First Trust is charging its investment advisory fee directly to the Plan sponsor; and (2) the Plan*

*Sponsor is paying BPS its consulting fee. "Only if First Trust were paying a solicitor's fee to BPS would there be a need for the DD [due diligence] process.*

**Answer to Paragraph 203:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, to the extent the allegations in Paragraph 205 describe or refer to other documents, communications, or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants BPS and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 205; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*206.    On March 3, 2009, the Plan and FTA entered into a "Discretionary Investment Advisory Contract and Letter of Instruction" (the "FTA Contract"), pursuant to which FTA would provide investment management services in exchange for an annual investment management fee.*

**Answer to Paragraph 204:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required and to the extent the allegations in Paragraph 206 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. The remaining allegations in Paragraph 206 relate to Plaintiff and/or third parties not involved in this litigation and the existence and contents of legal agreements between the Plan and a third party to which Defendants are not a party. Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such remaining allegations in Paragraph 206.

*207.    The Kestra Advisors negotiated the FTA Contract.*

**Answer to Paragraph 205:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants

KAS, Curry, and Korchak deny the allegations in Paragraph 207; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

208.    *The initial FTA account value was $6,574,852 of Plan assets.*

**Answer to Paragraph 206:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations in Paragraph 208 on that basis.

209.    *Under the FTA Contract, the annual asset management fee paid by the Plan to FTA was based on the total value of Plan assets calculated at 0.55% of assets up to $5 million; 0.35% of assets between $5 and $10 million, and 0.30% of assets over $10 million.*

**Answer to Paragraph 207:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, the allegations in Paragraph 209 relate to monetary amounts paid by the Plan to a third party not involved in this litigation. Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny the allegations in Paragraph 209. To the extent the allegations in Paragraph 209 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants deny any remaining allegations in Paragraph 209.

210.    *Kestra IS was designated as the directed broker by Korchak.*

**Answer to Paragraph 208:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants KIS and Korchak deny the allegations in Paragraph 210. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 210 and, on that basis, deny such allegations.

*211. Korchak had online-access to the Plan's account held at FTA's custodian, Southwest Securities, Inc.*

**Answer to Paragraph 209:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendant Korchak denies the allegations in Paragraph 211. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 211 and, on that basis, deny such allegations.

*212. NFP and Kestra did not provide the Trustees with all financial reports relating to the investments held by FTA.*

**Answer to Paragraph 210:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, to the extent the allegations in Paragraph 212 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants BPS, NFP-IL, KAS, and KIS deny the remaining allegations in Paragraph 212; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*213. NFP and Kestra did not provide information to the Trustees on the actual performance of FTA as an equity manager compared to other equity managers.*

**Answer to Paragraph 211:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, KAS, and KIS deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 213; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*214. After the initial selection of FTA, NFP and Kestra did not compare FTA's performance with those of other equity investment managers so that the Trustees could decide whether to retain or replace FTA.*

**Answer to Paragraph 212:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, KAS, and KIS deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 214; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*215. FTA for 3 years underperformed its index by 280 basis points.*

**Answer to Paragraph 213:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, the allegations in Paragraph 215 are vague, overly broad and undefined. Because Defendants cannot determine the nature of Plaintiff's assertions in Paragraph 215, the "allegations" (such as they are) are denied.

*216. Kestra's failure to do so caused the Plan to continue to pay excessive fees and obtain substandard investment returns on its equity portfolio.*

**Answer to Paragraph 214:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, the allegations in Paragraph 216 are vague and overly broad. Defendants KAS and KIS deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 216; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*217. NFP, Kestra and the Representatives financially benefitted from the FTA contract to the detriment of the Plan and its Participants.*

**Answer to Paragraph 215:** Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required. To the extent an answer is required, Defendants

BPS, NFP-IL, KAS, and KIS deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 217; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

<u>**The Kestra Advisors' Further Manipulation
of the FTA Relationship to Generate Revenue**</u>

218.    *With Kestra IS in place as the designated broker for FTA, Curry, acting in his fiduciary capacity, told FTA that the Trustees wanted to add REITs to the possible classes of equity investments and increase the cash portion of the equity portfolio.*

<u>**Answer to Paragraph 216:**</u> Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, Defendants KIS and Curry deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 218, and Defendant Curry affirmatively alleges that the Trustees made all final decisions concerning the components of the Plan's investment portfolio. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

219.    *On June 11, 2009, Curry, acting in his fiduciary capacity, recommended to the Trustees that the IPS be revised to allow FTA to invest in vehicles other than stocks – such as REITs, commodities, or gold.*

<u>**Answer to Paragraph 217:**</u> Per this Court's order in ECF No. 134, issues related to FTA have been dismissed, so no answer is required.  To the extent an answer is required, to the extent the allegations in Paragraph 219 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. To the extent a response is deemed required, Defendant Curry denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 219 and affirmatively alleges that the Trustees requested and received recommendations from their professional investment

advisors related to potential investments of Plan assets or revisions to the Plan's investment policy. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*220. In reliance on the Kestra Advisors' recommendation, on September 10, 2009, the Board voted to amend the IPS to add REITs as an equity investment vehicle at the discretion of the equity manager, with total REIT investments not to exceed 5% of equity investments. In contrast to other categories of equity investments, REITs had no specific target allocation listed.*

**Answer to Paragraph 218:** To the extent the allegations in Paragraph 220 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant Curry denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 220, but admits that the Trustees made the ultimate investment decisions related to the Plan's investment portfolio, including modifications to the Plan's investment policy or allocation. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*221. Kestra IS through Korchak executed securities transactions relative to the REITs in the equity asset portfolio and realized commissions of at least $42,000 as a consequence.*

**Answer to Paragraph 219:** Defendant Korchak admits that he acted to implement the Trustees' investment policies, decisions, and allocations. Defendant Korchak denies the remaining allegations in Paragraph 221. Defendant Kestra IS denies the allegations in Paragraph 221. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

## Imprudent, Conflicted, and Prohibited Conduct
## Relating to the Alternative, Non-Marketable Investments

222.     *In late 2013, Korchak and Curry learned about the availability of certain alternative investment products with high commissions but which were risky, illiquid, and non-marketable.*

**Answer to Paragraph 220:** Defendants Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 222. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

223.     *According to December 12, 2013 Board meeting minutes, Korchak, Curry, and Bruce Hagshenas, acting in a fiduciary capacity, recommended that the Trustees approve an amendment to the IPS to expand the asset classes that the fixed income manager could invest in to include "alternative investment" asset classes: non-traded REIT's, Business Development Companies (BDC's), Fixed Income – Mutual Funds; Unit Trusts (UIT's), Exchange Traded Funds (ETFs), and fixed and adjusted rate preferred securities. The proposed amendment provided that no one of the new asset classes would exceed 5% of total plan assets and that all six asset types combined would not exceed 5% of the total plan assets.*

**Answer to Paragraph 221:** To the extent the allegations in Paragraph 223 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. To the extent a response is deemed required, Defendants BPS, Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 223. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

224.     *Korchak, Curry, and Bruce Hagshenas described the proposed alternative investments as high-quality and liquid.*

**Answer to Paragraph 222:** To the extent the allegations in Paragraph 224 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. To the extent a response is deemed required, Defendants BPS,

Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 224. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

225.    *The Trustees were not provided with details about such investments including their risk profile, the costs and fees associated with them, whether they would generate fees or commissions and, if so, the formula to calculate the same.*

**Answer to Paragraph 223:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 225.

226.    *Korchak, Curry, and Bruce Hagshenas did not disclose that the alternative investments were not listed on any securities exchange, that there was no secondary market for these investments, or that the Plan might not be able to resell their shares regardless of how the investments performed.*

**Answer to Paragraph 224:** Defendants BPS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 226. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

227.    *The alternative investments were non-marketable and thus prohibited under the IPS.*

**Answer to Paragraph 225:** To the extent the allegations in Paragraph 227 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 227.

228.    *Korchak, Curry, and Bruce Hagshenas did not provide the Trustees with a current prospectus or brochure or other written description of each of these types of investments and the fees and commissions associated with them.*

**Answer to Paragraph 226:** Defendants BPS, Korchak, and Curry generally deny

Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 228. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*229.    NFP, Kestra IS, and Curry, and Korchak failed to act with regard to alternative investments with the care, skill, prudence, and diligence under the circumstances then prevailing that an investment advisor familiar with such matters would use in advising trustees of a pension plan.*

**Answer to Paragraph 227:** Defendants BPS, NFP-IL, KIS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 228. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of these allegations so it denies all the allegations in Paragraph 229 on that basis.

*230.    Kestra IS received compensation from certain select providers of alternative investment products including: a percentage of new investments in such products; fixed fees to support and participate in Kestra Financial conferences and seminars; and other initial fees.*

**Answer to Paragraph 228:** Defendant KIS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 230. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*231.    Upon information and belief, either the proposed investments were being sold by such select providers or Kestra IS received compensation through third-party managers or service providers, in this instance, the Kestra Advisors.*

**Answer to Paragraph 229:** Defendants KIS and KAS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 231. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

232.    *These alternative investments could be purchased on a commission basis or at net asset value (NAV) through an advisory account for an ongoing advisory fee based on a percentage of the investment's value, according to Kestra IS.*

**Answer to Paragraph 230:** Defendant KIS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 232. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

233.    *These alternative investments were not fixed income investments as they had significantly different risk and return characteristics than fixed income investments.*

**Answer to Paragraph 231:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 233.

234.    *The alternative investments would have higher commissions and fees than traditional investments.*

**Answer to Paragraph 232:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 234.

235.    *Based on incomplete and misleading information, the Board approved the IPS amendment.*

**Answer to Paragraph 233:** To the extent the allegations in Paragraph 235 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 235.

236.    *The same day, acting as a fiduciary of the Plan, Korchak, in his dual capacity as registered representative and investment advisor representative, caused the Plan to purchase three alternative investments at $300,000 each for a total of $900,000.00, through Kestra IS.*

**Answer to Paragraph 234:** Defendant Korchak admits that he executed purchases of investments approved by the Trustees or pursuant to a strategy implemented by the Trustees and denies the remaining allegations. Defendant KIS generally denies Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 236. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

237.   *On or around December 12, 2013, the BPS Defendants caused the Plan to invest $300,000 in CION Investment Corporation ("CION Investment").*

**Answer to Paragraph 235:** Defendants BPS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 237. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

238.   *On or around December 12, 2013, the BPS Defendants caused the Plan to invest $300,000 in Cole Credit Corp. ("Cole Credit Investment").*

**Answer to Paragraph 236:** Defendants BPS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 238. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

239.   *On or around December 24, 2013, Defendants invested $300,000 of Plan assets in FS Investment Corp. ("FS Investment").*

**Answer to Paragraph 237:** Defendants BPS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 239. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

240.   *The CION, Cole Credit, and FS investments were non-marketable and highly illiquid. Each transaction constituted a prohibited transaction in violation of the IPS.*

**Answer to Paragraph 238:** To the extent the allegations in Paragraph 240 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 240.

241. *NFP, Kestra IS, and Korchak and Curry were required but failed to conduct an intensive and scrupulous investigation before making the decision to invest Plan assets in the CION, Cole Credit, and FS investments.*

**Answer to Paragraph 239:** Defendants BPS, NFP-IL, KIS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 241. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of these allegations so it denies all such allegations on that basis.

242. *NFP, Kestra IS, and Korchak and Curry knew that these were imprudent and risky investments that were not suitable for the Plan.*

**Answer to Paragraph 240:** Defendants BPS, NFP-IL, KIS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 242. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of these allegations so it denies all such allegations on that basis.

243. *NFP, Kestra IS, and Korchak and Curry were not acting solely in the interest of the Participants for the exclusive purpose of providing benefits to them.*

**Answer to Paragraph 241:** Defendants BPS, NFP-IL, KIS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 243. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of these allegations so it denies all such allegations on that basis.

244. *The Alternative Investments were illiquid and should have been valued at net asset value for purposes of calculating the advisory fee account. Defendants have failed to provide the Trustees with the disclosures required by law of the fees they obtained as a result of the advisory fee account.*

**Answer to Paragraph 242:** Defendants BPS, NFP-IL, KIS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 243. The remaining Defendant (KAS) lacks knowledge or information sufficient to form

70

a belief as to the truth of these allegations so it denies all such allegations on that basis.

245.   *The Defendant Advisors' and Kestra IS's motivation in buying these investments was to generate commissions and other fees for themselves. On January 16, 2014, Curry received a marketing email from Icon Investments, one of the entities that pays Kestra IS compensation in connection with its investment products, informing him that Kestra IS approved a non-traded BDC, CION Investment Corp., Curry forwarded the email to Korchak and wrote: "Do we have this one for NIAF?" Korchak quickly responded, "yes, just booked. 300k."*

**Answer to Paragraph 243:** To the extent the allegations in Paragraph 245 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 245.

246.   *Because the investments were characterized as fixed income assets at the recommendation of the Kestra Advisors they were paid the 37.5 basis points advisory fee on these investments. In addition, upon information and belief, Kestra IS receives commissions and other fees.*

**Answer to Paragraph 244:** Defendants KAS, KIS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 246. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

247.   *Upon information and belief, Defendants failed to disclose all of the compensation received in connection with these investments.*

**Answer to Paragraph 245:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 247.

248.   *Two out of the three alternative investments sustained negative returns.*

**Answer to Paragraph 246:** Plaintiff's allegations contain no information permitting identification of these alleged "negative returns" or the time period in which they occurred. Defendants therefore lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 248 and, on that basis, deny same.

249.    *Had the Plan's assets been invested like its other fund assets, which invested during the same period in real estate, bonds, and income mutual funds, upon information and belief, the Plan would have obtained higher returns on its assets for the benefit of the Participants.*

**Answer to Paragraph 247:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 249.

250.    *In addition, had the Plan assets been invested in other suitable asset classes, liquidity would have been available to the Plan when, on the advice of a qualified investment advisor who replaced Defendants, an appropriate asset allocation was approved and had to be funded. Where an investment produces declining investment value and limited liquidity, the amount and magnitude of the lost investment opportunity compounds.*

**Answer to Paragraph 248:** The allegations in Paragraph 250 are vague, hypothetical and argumentative. To the extent a response is required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 250.

251.    *By characterizing the alternative investments as fixed income investments and including their purported values and returns as part of the fixed income portfolio's performance, Defendants inflated the returns they claimed to have earned for the fixed income portfolio.*

**Answer to Paragraph 249:** The allegations in Paragraph 251 are vague, hypothetical and argumentative. To the extent a response is required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 251.

**Curry's Covert Direction Regarding RFP for Fiduciary Liability Insurance**

252.    *In 2014, BPS, Curry and Korchak represented to the Trustees that they secured multiple quotes for fiduciary liability insurance for the Plan. Korchak and Curry, both of whom were insurance agents through the Kestra/NFP-affiliated entity known as NFP Property & Casualty, Inc., did not obtain multiple quotes.*

**Answer to Paragraph 250:** Defendants BPS, Korchak, and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 252. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*253.    In connection with insurance business purchased for NFP Property & Casualty, Curry received 10% commission on all insurance written for the Plan.*

**Answer to Paragraph 251:** Defendant Curry generally denies the allegations contained in Paragraph 253. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*254.    According to an employee of NFP Property & Casualty, Inc., Curry told her to not obtain other quotes and recommended that the Plan renew the Chubb policy. Without alternative bids, Curry did not risk another insurance carrier offering a fiduciary liability policy that would be more beneficial to the Plan but would not pay him a commission on the insurance sale.*

**Answer to Paragraph 252:** To the extent the allegations in Paragraph 254 relate to the statements made by (or recollection of) a third party not involved in this litigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny the allegations. Defendant Curry denies the allegations contained in Paragraph 254. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations so they deny such remaining allegations on that basis.

### Imprudent and Conflicted Conduct Relating to
### the AAM Unit Investment Trust

*255.    In May, 2015, Curry and Korchak met with representatives of AAM regarding creating a Unit Investment Trust (UIT) for the Plan.*

**Answer to Paragraph 253:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants Curry and Korchak admit that they met with representatives of AAM in May, 2015 but deny the remaining allegations of Paragraph 255. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*256.    On June 11, 2015, NFP and Kestra IS, in their fiduciary capacity as advisors and fixed income investment managers, recommended to the Trustees that the Plan invest $8 million in a UIT created by AAM and agree to invest 20% to 30% of the total Plan assets in the UIT.*

*Korchak represented that he had done a study of Merrill Lynch's performance compared to the bond portfolio, and concluded that the approximately $8 million in the Merrill Lynch account should be invested in the UIT, which would ultimately make up 20% of the fixed income portfolio.*

**Answer to Paragraph 254:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 256. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

257.    *As they had in December, 2013, so that they could buy the non-marketable CION, FS, and Cole products, NFP and Kestra IS asked the Trustees to further increase the allocation to the alternative investment asset class from 5% to 20% of the Plan's total assets to accommodate the UIT.*

**Answer to Paragraph 255:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 257. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

258.    *When they recommended the UIT, it in fact did not exist and they had not even determined how the money would be invested through AAM. Since none existed, the Trustees were not given a prospectus or brochure that included the material information concerning the proposed investment including the risk profile or fees associated with the UIT.*

**Answer to Paragraph 256:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 258. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such

allegations on that basis.

259.    *Relying on NFP and Kestra IS, based on what they did not know was incomplete information, the Board voted to amend the IPS to allow 20% of total plan assets to be investment in alternative investments.*

**Answer to Paragraph 257:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, to the extent the allegations in Paragraph 259 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 259, but admit that the Trustees are primarily responsible for modifying and approving changes to the Plan's investment policy statement and that the Trustees voted to allow investments in alternatives. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

260.    *Before a UIT prospectus was even approved by the SEC, on June 22, 2015, Korchak attempted to transfer the funds in the Plan's Merrill Lynch account into the Plan's trust account at Kestra IS. His attempted transfer was rejected by Kestra IS, which told Korchak that a non-prototype plan with a third-party administrator would need to be created for the transfer. The Plan was a "non-prototype pension plan" but Korchak caused Merrill Lynch to liquidate the account in the amount of $5,979,841.84, which was deposited in a cash account.*

**Answer to Paragraph 258:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, Defendants Korchak and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 260. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

261.    In August, 2015, the proposed prospectus for the Plan's "bespoke" UIT raised concerns with the SEC due in part to what would be a significant concentration in the Plan's account and the potential impact on liquidity.

**Answer to Paragraph 259:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 261.

262.    While AAM's stated preference with respect to fees associated with the UIT was a SMA (the fee-based option), Korchak and Curry insisted, as they had in the past, on a commission-based fee structure.

**Answer to Paragraph 260:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 262. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

263.    NFP and Kestra IS knew that, in addition to the commissions on the UIT, they would earn an advisory fee as the UIT was included in the fixed income portion of the Plan's portfolio.

**Answer to Paragraph 261:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 263. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

264.    On September, 10, 2015, NFP IL's Jordan Pockross was investigating why BPS's revenue generation was down and was informed by Michelle Masters, "[The Plan] is expecting a sale this month that should be $100k in revenue (per Jerry [Korchak]), which would bring up to $733k for the year. If revert back to January to July average of %58k [sic] per month for remaining

*months, then at $754k. Steve [Curry] is also expecting to move $500k at 6% comm next month for $30k additional."*

**Answer to Paragraph 262:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required and to the extent the allegations in Paragraph 264 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants BPS and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 264. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

265.    *The same day, on September 10, 2015 at the Trustees' quarterly board meeting, Curry and Korchak, in their fiduciary capacity as an investment advisors and managers, recommended to the Trustees that the IPS be amended to allow up to 30% of total plan assets be invested in alternative investments. Curry represented that a UIT was created specifically for the Fund although private investors could invest; that it would run for two years; that the SEC had approved the prospectus; and that it would pay interest of 5%-5.5%.*

**Answer to Paragraph 263:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, to the extent the allegations in Paragraph 265 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 265. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

266.    *Korchak told the Trustees that he had already set aside necessary funds that were "waiting" to be invested in the UIT, which could not be accomplished until the Trustees amended their IPS to allow the move.*

**Answer to Paragraph 264:** Per this Court's order in ECF No. 134, issues related to UIT

have been dismissed, so no answer is required. To the extent an answer is required to the extent the allegations in Paragraph 266 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant Korchak otherwise denies Plaintiff's other allegations in Paragraph 266. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

267. Based on Curry and Korchak's recommendation and representations, the Trustees approved the UIT and increased the IPS alternative investment allocation to 20% of the Plan's assets.

**Answer to Paragraph 265:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 267. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

268. *In September and October, the Kestra Advisors caused to be invested approximately $8 million in the UIT with AAM.*

**Answer to Paragraph 266:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 268. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*269.    The commissions paid to Kestra IS were as follows:*

*9/25/15 - $2,000,010.39 – Commission - $25,005.96*

*9/28/2015 – $2,000,007.95 – Commission - $24,993.23.*

*10/9/15 –$ 2,000,001.33 – Commission – $24,995.09*

*10/16/15 – $2,000,010.52 - Commission - $24,996.34.*

**Answer to Paragraph 267:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, Defendant KIS generally denies the allegations contained in Paragraph 269, but admits that securities brokers typically charge commissions on securities transactions, which would include any securities transactions engaged in by a retirement plan such as NIAF. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*270.    On October 19, 2015, Masters provided an update to Pockross: "Jerry made the NIAF $100k sale and it will show in October" and we should "meet $783k revised budget target."*

**Answer to Paragraph 268:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, and to the extent the allegations in Paragraph 270 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants BPS and NFP-IL generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 270. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*271.    In February, 2017, after Korchak was restricted by the Trustees from trading bonds and under threat of NFP and Kestra AS termination as Plan service providers, Korchak was planning to roll over the UIT investment one last time in order to generate commissions but was*

*prevented from doing so. Upon information and belief, Korchak was planning to do so before maturity.*

**Answer to Paragraph 269:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, KAS, and Korchak generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 271, but admit that the Trustees had the power and authority to provide investment directions to its service providers concerning the Plan's assets and investments. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

272.  *The UIT included six investment classes including REITs and S&P 500 index funds.*

**Answer to Paragraph 270:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 272.

273.  *NFP and Kestra IS included the UIT as part of the fixed income portion of the Plan's portfolio, but this was a misrepresentation since its overall risk profile differs significantly from fixed income investment classes.*

**Answer to Paragraph 271:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Defendants BPS, NFP-IL, and KIS generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 273. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

274. *Material information concerning the risk profile of this investment was not disclosed to the Trustees.*

**Answer to Paragraph 272:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, Paragraph 274 is vague, ambiguous and uses undefined terms. To the extent a response is required, Defendants generally deny the allegations in Paragraph 274.

275. *The Plan paid AAM an annual asset management fee of 2.5% of the total value of assets in the account. The UIT included a 1.95% sales fee.*

**Answer to Paragraph 273:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, the allegations in Paragraph 275 relate to monetary amounts paid by the Plan to a third party not involved in this litigation. Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny the allegations in Paragraph 275.

276. *AAM paid Kestra IS annual fees equal to 1.5% of the total asset value. This fee-splitting arrangement shows that, in the absence of the conflicted and self-dealing conduct of the Kestra Advisors and Kestra IS, AAM would have accepted an annual management fee of 1.5%.*

**Answer to Paragraph 274:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required. To the extent an answer is required, to the extent the allegations in Paragraph 276 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. To the extent the allegations in Paragraph 276 relate to the fees that a third party not involved in this litigation "would have accepted," Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations. On these bases, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 276.

277.    *The Kestra Advisors did not disclose to the Trustees the fee-splitting arrangement with AAM.*

**Answer to Paragraph 275:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, Defendants KIS, KAS, Korchak, and Curry deny the allegations contained in Paragraph 277. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

278.    *The Trustees never approved a written agreement reflecting any arrangement between the Plan and AAM.*

**Answer to Paragraph 276:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, the allegations in Paragraph 278 relate to the existence of a legal relationship or documents between Plaintiff and third parties not involved in this litigation. Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny the allegations in Paragraph 278.

279.    *Upon information and belief, Kestra IS received other compensation from the UIT investment, which was not disclosed.*

**Answer to Paragraph 277:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, Defendant KIS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 279. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

280.    *NFP and Kestra IS did not provide the Trustees with regular reports from AAM as to the performance of the UIT investment.*

**Answer to Paragraph 278:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, Defendants

BPS, NFP-IL, and KIS deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 280. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

281.     *Fees for the UIT are higher than similar investments.*

**Answer to Paragraph 279:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 281.

282.     *Performance of the UIT was never reported net of fees.*

**Answer to Paragraph 280:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 282.

283.     *NFP failed to evaluate for the Trustees the performance of AAM as investment manager.*

**Answer to Paragraph 281:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, Defendants BPS and NFP-IL deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 283. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

*284.    While three of five tranches of these investments were liquidated after the termination of the Defendants, the remaining two have long-dated redemption dates, and the market value of these tranches declined significantly below the initial amount invested.*

**Answer to Paragraph 282:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 284.

*285.    All Defendants benefited from the UIT investment to the detriment of the Plan and its Participants.*

**Answer to Paragraph 283:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 285.

*286.    All Defendants failed to act with regard to the UIT investment with the care, skill, prudence, and diligence under the circumstances then prevailing that an investment advisor familiar with such matters would use in advising trustees of a pension plan.*

**Answer to Paragraph 284:** Per this Court's order in ECF No. 134, issues related to UIT have been dismissed, so no answer is required.  To the extent an answer is required, Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 286.

**Defendants' 2016 and 2017 Efforts to Maximize Revenue and Cover-up ERISA Violations**

*287. On March 10, 2016, Curry and Korchak informed the Trustees that, over the next 2 months, they would move $2 to $3 million of Plan assets out of the equity portion of the portfolio and invest in short term bonds. According to the Board minutes from that day, Curry stated that the Board's approval was not necessary for the transfer because Curry and Korchak had complete discretion over fund investments and Curry and Korchak were just giving the Trustees a "heads up" on how they planned to exercise it.*

**Answer to Paragraph 285:** To the extent the allegations in Paragraph 287 describe or refer to other documents and/or other sources, Defendants state that such other documents and

other sources speak for themselves. Defendants Korchak and Curry deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 287. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

288. *On March 14, 2016, Korchak and Curry directed FTA to move $2 million to the Plan's Kestra IS account. FTA informed Korchak that it would raise cash for the transfer: $500k on March 15; $500k on April 15; $500k on May 16; and $500k on June 15. On March 18, Korchak demanded that FTA transfer "$1,000,000 a.s.a.p."*

**Answer to Paragraph 286:** Defendants Korchak and Curry deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 288. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

289. *On April 19, 2016, Korchak caused to be withdrawn $902,650 from FTA and deposited with Kestra IS. Upon information and belief, Kestra IS received compensation for placing the funds with Kestra IS, which was not disclosed.*

**Answer to Paragraph 287:** Defendants Korchak and KIS deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 289. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

290. *As of April 30, 2016, Korchak and Curry had discretionary management and control over 70% of the approximately $78,000,000 in assets, or $54,600,000.*

**Answer to Paragraph 288:** Defendants Korchak and Curry deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 290. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

291. *Of note, on August 4, 2016, Kestra IS received a commission on the UIT investment of $17,352.58, a mark-up of 2.249%.*

**Answer to Paragraph 289:** Defendant KIS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 291. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

292. *On August 25, 2016, Kestra IS received a commission on corporate bond trades, representing a markup of 1.523% for a total of $17,250.00 and a fee of $2,472.50*

**Answer to Paragraph 290:** Defendant KIS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 292. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

**Trustees' Efforts to Address Defendants' Newly-Discovered ERISA Violations**

293. *The Trustees were informed in 2016 that no written contracts between the Plan and Defendants existed, that Defendants had failed to provide complete, adequate, and accurate reports on the performance of Plan investments, and that the Plan assets were invested in multiple accounts with multiple custodians and managers.*

**Answer to Paragraph 291:** To the extent the allegations in Paragraph 293 relate to Plaintiff's knowledge, solicited or received legal advice, or operations, Defendants lack knowledge or information sufficient to form a belief as to their truth and, on that basis, deny such allegations. Defendants generally deny Plaintiff's remaining legal conclusions, factual characterizations, and all other allegations contained in Paragraph 293.

294. *The Trustees took affirmative steps to address and remedy the problems created by the acts and omissions of Defendants as set forth herein. Among other things, the Trustees, through counsel:*

a. *Between September 4, 2016 and the beginning of December 2016 met with Defendants' representatives to try to determine what actions were being taken by them, requested creation of written contracts to disclose and clarify the Defendants' obligations, and requested written performance reports and disclosure of the identity and reports of the investment custodian being used by Defendants.*

b. *Approved requests for proposals to replace Defendants' administrator and select a new*

*TPA and custodian.*

    c. *Demanded that Defendants provide the Plan with a detailed investment report on current and past performance in a format commonly used by competent investment advisors.*

    d. *Determined to modify the investment contract with FTA to remove Defendants as the designated broker and require FTA to use best execution principles in selecting brokers.*

    e. *Commenced a process to determine which historical transactions and investments the Representatives had arranged that were not in the interests of Participants and may have violated ERISA.*

**Answer to Paragraph 292:** To the extent the allegations in Paragraph 294 relate to Plaintiff's actions and operations, Defendants lack knowledge or information sufficient to form a belief as to their truth and, on that basis, deny such allegations. Defendants generally deny Plaintiff's remaining legal conclusions, factual characterizations, and all other allegations contained in Paragraph 294.

295.    *The Trustees demanded in January 2017 that Defendants produce performance reports including "total fund yield" information for the Plan over the current Plan year and for the previous, three, five and ten year periods. None existed. "Total Fund Yield" information was then created by Defendants to respond to the request. Michelle Masters of BPS provided a report as of November 30, 2016 that was incomplete and inaccurate.*

**Answer to Paragraph 293:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 295.

**Korchak's Deceptive Conduct to Secure An Advisory Agreement**

296.    *On or about September 8, 2016, Korchak surreptitiously and without their knowledge of what had been signed, obtained the signatures of two Trustees on a document purporting to be the contract for investment services to the Plan by the Defendants (the "September 8 Kestra Document").*

**Answer to Paragraph 294:** To the extent the allegations in Paragraph 296 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant Korchak denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 296. The remaining

Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

297.    *The September 8 Kestra Document had not been presented to or approved by the Board, which Korchak knew would be required for a contract with the Board to be valid.*

**Answer to Paragraph 295:** To the extent the allegations in Paragraph 297 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant Korchak denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 297. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

298.    *The September 8 Kestra Document was not reviewed with the two Trustees whose signatures were obtained without their knowledge or consent.*

**Answer to Paragraph 296:** It is unclear what Plaintiff are even alleging here -- whether it is that Defendant Korchak forged Trustee signatures or whether Plaintiff Trustees regularly execute documents they do not read. Nevertheless, Defendant Korchak denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 298, whatever they are. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

299.    *The September 8 Kestra Document was not disclosed to the Plan's attorney from September through December when Curry, Korchak, and the Plan's attorney were negotiating over the terms to be included in a contract between the Board and Defendants.*

**Answer to Paragraph 297:** To the extent the allegations in Paragraph 299 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants Korchak and Curry deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 299. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of

these allegations so they deny all such allegations on that basis.

300. *In the Fall of 2016, NFP and Kestra AS required a written investment advisory agreement with the Plan before they could cash the Plan's quarterly advisory payment check payable to BPS in the amount of approximately $68,000.*

**Answer to Paragraph 298:** To the extent the allegations in Paragraph 300 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants BPS, NFP-IL, and KAS deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 300. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

301. *At this time and into 2017, Curry was getting pressure from NFP to meet revenue targets and NFP was asking about the status of revenue from the Plan.*

**Answer to Paragraph 299:** Defendants BPS, NFP-IL, and Curry deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 301. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

302. *On September 8, 2016, at a Board meeting, the Trustees were advised that, in fact, there were no written agreements with Curry and Korchak. The Plan's attorney then was authorized to meet with Curry and Korchak before the next regular Board meeting in December in order to commit to writing the arrangements with and authority of Korchak and Curry.*

**Answer to Paragraph 300:** To the extent the allegations in Paragraph 302 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. To the extent the allegations in Paragraph 302 relate to Plaintiff's operations (or the actions of its Attorneys), Defendants lack knowledge or information sufficient to form a belief as to their truth and, on that basis, deny such allegations. Defendants BPS, NFP-IL, Curry and Korchak deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 302. The remaining Defendants lack knowledge or

information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

303.    *According to the minutes of that meeting, Curry represented to the Trustees that two agreements were needed, one for asset management and one for administration. He also stated that the asset management fee would probably need to be changed to a flat fee arrangement. He did not present to the Trustees any draft agreement for consideration.*

**Answer to Paragraph 301:** To the extent the allegations in Paragraph 303 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant Curry denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 303. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

304.    *On or about September 8, Korchak, caused to be signed by only two Trustees the September 8 Kestra Document entitled "Financial Planning/Consulting Agreement" between Kestra AS and the Plan and dated September 8, 2016.*

**Answer to Paragraph 302:** To the extent the allegations in Paragraph 304 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant Korchak denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 303. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

305.    *The September 8 Kestra Document was drafted by the NFP Administrator Office of Supervisory Jurisdiction, c/o Thomas Lamb and emailed to Korchak on September 8. Upon information and belief, NFP Corp.'s and/or Kestra Financials' in-house attorneys assisted.*

**Answer to Paragraph 303:** To the extent the allegations in Paragraph 305 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants otherwise deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 305.

306.    At the September 8th Board meeting, Korchak said nothing about such an agreement or even that one was being prepared.

**Answer to Paragraph 304:** To the extent the allegations in Paragraph 306 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant Korchak denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 306. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

307.    The September 8 Kestra Document was drafted in a way and for the sole purpose of attempting to protect Defendants – after the fact -- from liability for their past securities and ERISA violations.

**Answer to Paragraph 305:** To the extent the allegations in Paragraph 307 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants otherwise deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 307.

308.    The September 8 Kestra Document was internally inconsistent and misrepresented the nature of the parties' past arrangement.

**Answer to Paragraph 306:** To the extent the allegations in Paragraph 308 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants otherwise deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 308.

309.    In direct conflict with the fact that Kestra Advisors had exercised discretion and control over the management and investment of Plan assets for decades, the Kestra Agreement provided that the Plan would pay a quarterly asset-based charge for assets under management of

*$60M at .375 %, for services on an alleged discretionary basis for "directly managing client investment portfolios, referring clients to other third party investment managers, and selection of investment managers."*

**Answer to Paragraph 307:** To the extent the allegations in Paragraph 309 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants otherwise deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 309.

*310.    The September 8 Kestra Document also provided that Kestra AS and Korchak "shall not have any discretion, trading or otherwise, with respect to any decisions made by or on behalf of the Client as Client will retain absolute discretion over all investment and implementation decisions."*

**Answer to Paragraph 308:** To the extent the allegations in Paragraph 310 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants otherwise deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 310.

*311.    The September 8 Kestra Document provided that the .375 % fee expressly excluded commissions generated by the Plan's investment securities, investment product or insurance recommendations by Client, but disclosed that Korchak could act in a dual capacity as a registered representative of Kestra AS affiliates or licensed insurance agent with NFP Insurance Services, Inc.*

**Answer to Paragraph 309:** To the extent the allegations in Paragraph 311 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants otherwise deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 311.

*312.    The September 8 Kestra Document further provided that the investment advisory representative and Kestra AS "may receive, or may have already received," compensation and/or commissions that [the Plan] may pay, and that the investment advisory representative or Kestra AS may receive.*

**Answer to Paragraph 310:** To the extent the allegations in Paragraph 312 describe or refer to other documents and/or other sources, Defendants state that such other documents and

other sources speak for themselves. Defendants otherwise deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 312.

313. Finally, the September 8 Kestra Document stated that the Plan "shall be responsible for additional fees, compensation, and/or commissions for any securities, insurance or other investment products that may be recommended as part of the services."

**Answer to Paragraph 311:** To the extent the allegations in Paragraph 313 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants otherwise deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 313.

314. Korchak did not disclose to the two Trustees that the document was a contract, the nature of the contract, or its terms and conditions. Korchak did not disclose to the two Trustees that it provided for payment to Kestra of an advisory fee of 37.5 bps for allegedly non-discretionary services even though, at all relevant times, the Kestra Advisors provided advisory services on a discretionary basis as ERISA fiduciaries.

**Answer to Paragraph 312:** To the extent the allegations in Paragraph 314 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant Korchak denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 314. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

315. After supposedly agreeing under the September 8 Kestra Document that he "shall not have any discretion, trading or otherwise," Korchak executed at least two trades on the Plan's account in December or January which generated commissions and other fees for Korchak and the Kestra Advisors.

**Answer to Paragraph 313:** To the extent the allegations in Paragraph 315 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant Korchak denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 315. The remaining

Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

316.   *Korchak and Cyndi Trollop of NFP IL sent the unauthorized September 8 Kestra Document to Kestra AS to be represented as Defendants' contract with the Board.*

**Answer to Paragraph 314:** To the extent the allegations in Paragraph 316 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants NFP-IL and Korchak deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 316. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations so they deny all such allegations on that basis.

317.   *In November, 2016, the Plan's counsel – who was not aware of the September 8 Kestra Document scheme - sent a draft "Investment Consulting Fiduciary Asset Management Agreement" to NFP Corp.'s in house legal counsel, David Horn, with whom he believed he was engaged in good faith negotiations. The terms of Plan counsel's draft memorialized the fiduciary nature of the relationship between the Plan and Kestra AS. In the November contract negotiations between the Plan's and Defendants, neither Horn, nor Korchak, nor Curry claimed that an agreement had been reached as of September 8 or presented the September 8 Kestra Document.*

**Answer to Paragraph 315:** To the extent the allegations in Paragraph 317 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. To the extent the allegations in Paragraph 317 relate to the knowledge of Plaintiff's lawyers, Defendants lack knowledge or information sufficient to form a belief as to their truth and, on that basis, deny such allegations. Defendants otherwise generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 317.

318.   *According to the Board meeting minutes from December 8, 2016, the Plan's counsel reported to the Trustees that he sent a proposed fiduciary advisor agreement to NFP's attorney. In response, Curry noted that it would take time to get them back because NFP is a big company. Korchak did not tell the Board about the September 8 Kestra Document.*

**Answer to Paragraph 316:** To the extent the allegations in Paragraph 318 describe or

refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. To the extent the allegations in Paragraph 318 relate to the actions of Plaintiff's lawyers, Defendants lack knowledge or information sufficient to form a belief as to their truth and, on that basis, deny such allegations. Defendants otherwise generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 318.

319. *At a special meeting of the Board on December 14, 2016, the Board approved that all future bond transactions must be disclosed in advance to the Board and approved by the Board; and Request For Proposals (RFPs) be made for Plan auditor, third party administrator, and investment advisor.*

**Answer to Paragraph 317:** To the extent the allegations in Paragraph 319 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 319.

320. *Bredt Norwood of Kestra Financial proposed an 3(38) investment management agreement to counsel for the Fund that identified Kestra AS a fiduciary with discretion over fund assets.*

**Answer to Paragraph 318:** To the extent the allegations in Paragraph 320 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 320.

321. *In February, 2017, meeting in Chicago, the Plan's attorneys were informed for the first time by Defendants' outside counsel about the September 8 Kestra Document. He claimed that the Board could not terminate the services of the Defendants because of a contract in place; he produced the September 8 Kestra Document stating that it was a contract in effect that prevented the Trustees from terminating Defendants.*

**Answer to Paragraph 319:** To the extent the allegations in Paragraph 321 describe or refer to other documents and/or other sources, Defendants state that such other documents and

other sources speak for themselves. To the extent the allegations in Paragraph 321 relate to the knowledge timelines of Plaintiff's lawyers, Defendants lack knowledge or information sufficient to form a belief as to their truth and, on that basis, deny such allegations. Defendants otherwise generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 321.

322.    *When the Board authorized RFPs to go out for administration and advisory services, Defendants thought they could submit a proposal to be retained and scrambled to prepare a RFP response because there were no agreements. Information about the allocation of duties and responsibilities among Kestra AS, Kestra IS, NFP Corp, BPS, and Korchak and Curry had to be created from scratch and was modified, reviewed by counsel and compliance, and edited again.*

**Answer to Paragraph 320:** To the extent the allegations in Paragraph 322 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 322.

323.    *The same lack of information and the existence of contradictory information dogged Defendants' attempts with respect to the Trustees demand for a report on investment performance, including past performance. Defendants struggled to find out where all of the Plan's money was held. Defendants modified information regarding total performance of the Plan's assets. Ultimately, the information presented to the Trustees in January 2017 was incomplete and inaccurate.*

**Answer to Paragraph 321:** To the extent the allegations in Paragraph 323 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 323.

324.    *In February 2017, Defendants provided another report purporting to list the Plan's Total Fund Yield net of fees and through May 31, 2016 for the previous one, three, five and 10 years. Contrary to previous oral representations to the Trustees by Defendants in Plan meetings that the investments were performing well and exceeding appropriate benchmarks, the report disclosed below benchmark returns of -0.92% for one year, 3.02% for three years, 3.51% for five years and 3.27% for 10 years.*

**Answer to Paragraph 322:** To the extent the allegations in Paragraph 324 describe or

refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 324.

325. *The report showed the Plan failed to perform at or above an appropriate benchmark for the prior 10 years, which was contrary to what was conveyed to the Trustees throughout the ten years.*

**Answer to Paragraph 323:** To the extent the allegations in Paragraph 325 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 325.

326. *In addition, the report indicated the performance of FTA was 115, 159 and 551 basis points below the All Equity Benchmark in the past five-, three-, and one-year periods, respectively.*

**Answer to Paragraph 324:** To the extent the allegations in Paragraph 326 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 326.

327. *Defendants failed to provide the separate returns for the alternative investments and an appropriate benchmark that included the alternative investments.*

**Answer to Paragraph 325:** To the extent the allegations in Paragraph 327 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 327.

328. *In May, 2017, Defendants provided another document purporting to list the Plan's fiscal year returns through November 30, 2016, from one, three, five, and ten years. The seven-year performance information was blacked out, accompanied with a disclaimer about the under-*

*performance of Lehman bonds. The report also showed significant underperformance of the Plan's managers not previously disclosed to the Trustees.*

**Answer to Paragraph 326:** To the extent the allegations in Paragraph 328 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 328.

### Transition to New Services Providers

*329.     The Trustees agreed to hire a new investment advisor, new third-party administrator, and new custodian. Korchak, Curry, and Gannon were notified that the effective date for transfer of all responsibilities to the new service providers would be September 1, 2017.*

**Answer to Paragraph 327:** Defendants Korchak and Curry admit that they were notified on August 2, 2017 of the Trustees' intention to terminate BPS' third-party administration services and transition such services to WPAS, Inc. with a target transition date of September 1, 2017, and deny all remaining allegations. Some of the remaining allegations in Paragraph 329 concern Plaintiff's actions and/or relate to third parties not involved in this litigation. Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants generally deny Plaintiff's other legal conclusions, factual characterizations, and all other allegations contained in Paragraph 329.

*330.     The Plan, through the Trustees, made multiple written demands that Defendants cooperate and timely turn over the Plan's records, invested assets and other property to the new TPA and custodian.*

**Answer to Paragraph 328:** To the extent the allegations in Paragraph 330 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. The remaining allegations in Paragraph 330 relate to Plaintiff, and Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations so Defendants deny same.

331.     Defendants had a fiduciary responsibility to provide for an orderly transition to the new service providers, including avoiding unnecessary costs, confusion, and delays that would raise administrative costs and be harmful to Participants.

**Answer to Paragraph 329:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 331.

332.     Rather than cooperating with the transition request, Defendants significantly delayed and otherwise interfered in the transition of material documents, computer participant and contribution data, information concerning invested assets and other information, causing the Plan to incur significant costs and three months of delays beyond September 1, 2017 to accomplish most of the transition to the new service providers.

**Answer to Paragraph 330:** Some of Plaintiff's allegations in Paragraph 332 relate to Plaintiff and alleged costs incurred by same, and Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny the allegations. Defendants generally deny Plaintiff's other legal conclusions, factual characterizations, and all other allegations contained in Paragraph 332.

333.     From December, 2017 through July 2019, all Plan assets still had not been placed in control of the Trustees and their new Fund investment advisor.

**Answer to Paragraph 331:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 333.

334.     Defendants objected to providing participant data in usable electronic form, contending that the information and computer software was owned by Defendants.

**Answer to Paragraph 332:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 334.

335.     In July, 2017, four months after the notification to Defendants of their termination and of the September 1, 2017 transition date, Defendants had taken no steps to accomplish the transition. Instead, Defendants demanded a non-disclosure agreement and a HIPAA Business Associate Agreement as a condition of their implementing the transition. There was no basis for

*Defendants to condition the turnover of Plan information on entry into a NDA. Such an agreement would not be in the interests of Participants and would benefit solely the Defendants. In addition, HIPAA applies only to welfare plans, and Defendants' demands were inappropriate and designed to delay the transition, and cost the Plan legal fees and caused a delay of several weeks.*

**Answer to Paragraph 333:** Paragraph 335 contains allegations related to Plaintiff; Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny such allegations in Paragraph 335. Defendants generally deny Plaintiff's remaining legal conclusions, factual characterizations, and all other allegations contained in Paragraph 335.

336. *Because of Defendants' improper recordkeeping, organization, and management of electronic and other Plan records and materials, and Defendants' unreasonable delay tactics, the Plan was forced to delay the September transition date to December 1, 2017, pay additional administrative fees to Defendants, and incurred additional expenses to recover participant records and information concerning invested assets. The transition to the new service providers could not take place until December 1, 2017.*

**Answer to Paragraph 334:** Paragraph 336 contains allegations related to Plaintiff or third parties not involved in this litigation; Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny such allegations in Paragraph 336. Defendants generally deny Plaintiff's remaining legal conclusions, factual characterizations, and all other allegations contained in Paragraph 336.

337. *Because of the disarray of the participant and contribution data turned over by Defendants, the new administrator, WPAS, had to create a duplicate benefits administration database system, which required the Plan to incur additional expenses.*

**Answer to Paragraph 335:** The allegations in Paragraph 337 relate to Plaintiff and/or third parties not involved in this litigation. Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny the allegations in Paragraph 337.

## NFP and Kestra AS's Unearned and Excessive Advisory Fees in 2016 and 2017

*338.    NFP and/or Kestra AS benefitted from their own delays in transferring custody, management, and control of Plan assets to the Plan's new services providers.*

**Answer to Paragraph 336:** Defendants BPS, NFP-IL, and KAS generally deny Plaintiff's

legal conclusions, factual characterizations, and all other allegations contained in Paragraph 338.

The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth

of these allegations and, on that basis, deny all such allegations.

*339.    From November, 2016 through the first ten months of 2017, NFP and Kestra AS continued to charge the Plan an investment advisory fee of 37.5 bps on the fixed income investments and continued to receive other commission and fees.*

**Answer to Paragraph 337:** Defendants BPS, NFP-IL, and KAS generally deny Plaintiff's

legal conclusions, factual characterizations, and all other allegations contained in Paragraph 339.

The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth

of these allegations and, on that basis, deny all such allegations.

*340.    From November 1, 2016 through December 14, 2017, NFP charged the Plan a total of $400,311.52 in direct compensation.*

**Answer to Paragraph 338:** Defendants BPS and NFP-IL generally deny Plaintiff's legal

conclusions, factual characterizations, and all other allegations contained in Paragraph 340. The

remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of

these allegations and, on that basis, deny all such allegations.

*341.    NFP and Kestra AS provided no advisory or investment management services to the Plan during that period except to request permission to purchase $4,000,000 of new bonds in June, 2017 when the Trustees had already notified them of their termination and that they had been informed that a new investment advisor had been hired.*

**Answer to Paragraph 339:** Defendants BPS, NFP-IL, and KAS generally deny Plaintiff's

legal conclusions, factual characterizations, and all other allegations contained in Paragraph 341.

The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth

of these allegations and, on that basis, deny all such allegations.

342.    *From December, 2016 through November, 2017, Defendants failed to follow the Trustees' directions concerning the purchase and sales of bonds and failed to provide an accurate report on the performance of all of the assets when providing requested performance reports in February and March 2017.*

**Answer to Paragraph 340:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 342.

343.    *Defendants maintained control and, upon information and belief, the discretionary management authority over the Cole, CION, and FS Investments after the effective termination date of all Defendants on December 1, 2017.*

**Answer to Paragraph 341:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 343.

344.    *In October, 2017, Defendants demanded an additional $6,000 for its last month of administration of the Plan as a condition of the Plan receiving all of its participant and contribution data and access to administrator's computer. The Trustees had not yet received all of the equipment. and Plan data and had not formally approved payment of the additional $6,000 when BPS provided evidence that BPS directed such amount paid to itself without honoring its commitments concerning Plan data and equipment.*

**Answer to Paragraph 342:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 344.

345.    *The Trustees and, by extension, the Plan Participants did not, and do not, have complete and actual knowledge of the commissions, fees, and expenses that Defendants charged to the Plan because such information was not disclosed.*

**Answer to Paragraph 343:** The allegations in Paragraph 345 relate to the knowledge or

state of mind of Plaintiff and of third parties not involved in this litigation. Defendants lack

knowledge or information sufficient to form a belief as to the truth of the said allegations, so

Defendants deny the allegations in Paragraph 345.

346.    *As a result of the Defendants' failure and refusal to provide such information, the Trustees lacked the information necessary to understand and protect the Plan and/or to have complete knowledge of the Defendants' ERISA violations.*

**Answer to Paragraph 344:** The allegations in Paragraph 346 relate to Plaintiff's

knowledge and understanding and generally reference a statutory definition within ERISA which speaks for itself. Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny the allegations in Paragraph 346.

347.    *An accounting for profits is necessary.*

**Answer to Paragraph 345:** Paragraph 347 generally contains Plaintiff's prayer for its various remedies sought in this matter; since Plaintiff made no allegations, no response is required. However, to the extent a response is deemed required, Defendants deny such allegations.

**The Kestra Advisors' Lack of Prudent Process and Disclosure in Selection of Other Investment managers for the Plan Portfolio**

348.    *From time to time, NFP and Kestra IS, acting in their fiduciary capacity as investment advisors, engaged additional investment managers on a discretionary basis to manage the fixed income investments of the Plan.*

**Answer to Paragraph 346:** Defendants cannot determine what Plaintiff's time period is meant by "from time to time" (as such time period is undefined). Nevertheless, Defendants BPS, NFP-IL, and KIS deny the allegations contained in Paragraph 348. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

349.    *The other money managers included, but were not necessarily limited to, BlackRock Investment Management, LLC ("BIM"), Morgan Stanley SmithBarney LLC ("MSSB"), and Merrill Lynch ("ML").*

**Answer to Paragraph 347:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 349.

350.    *Upon information and belief, a prudent process was not employed by the Kestra Advisors in selecting other investment managers.*

**Answer to Paragraph 348:** Defendants KAS, Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 350. The remaining Defendants lack knowledge or information sufficient to form a

belief as to the truth of these allegations and, on that basis, deny all such allegations.

351.    *The Kestra Advisors provided little to no information to the Trustees about these money managers, the investment performance, or the fees or commissions paid to them.*

**Answer to Paragraph 349:** Defendants KAS, Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 351. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

352.    *The Kestra Advisors did not disclose to the Trustees the nature and extent of their arrangements with these other managers, or the compensation received for placing the Plan's assets with these managers.*

**Answer to Paragraph 350:** Defendants KAS, Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 352. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

353.    *Upon information and belief, there were no contracts between the Plan and these money managers.*

**Answer to Paragraph 351:** To the extent the allegations in Paragraph 353 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Nevertheless, the allegations in Paragraph 353 relate to the existence and contents of legal agreements between the Plan and a third party to which Defendants are not a party. Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such remaining allegations in Paragraph 353.

354.    *Upon information and belief, the Defendants received direct and/or indirect compensation from placing Plan assets with these money managers or providing brokerage services on these accounts, the extent of which is unknown at this time.*

**Answer to Paragraph 352:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 354.

## Failure to Provide ERISA Rule 408(b)(2) Disclosures

355.     Each Defendant was a covered service provider as defined under ERISA for the Plan.

**Answer to Paragraph 353:** Paragraph 355 states a legal conclusion which would be subject to proof and to which no response is required. To the extent a response is deemed required, Defendants generally deny the remaining allegations contained in Paragraph 355.

356.     Each Defendant was required to provide disclosures pursuant to 29 U.S.C. § 1108(b)(2) ("408(b)(2) Disclosures") beginning in 2012 and thereafter as fees changed materially on an annual basis, consistent with the rules and regulations governing such disclosures.

**Answer to Paragraph 354:** Paragraph 356 states a legal conclusion which would be subject to proof and to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 356.

*357.     Such written disclosure was required to disclose (a) a description of the services provided to the Plan, (b) whether the service provider is acting as a fiduciary, (c) a description of all direct compensation, (d) a description of all indirect compensation, (e) a description of compensation received by affiliates or subcontractors,(f) a description of payors and recipients of compensation, (g) a description of the arrangement between recipients of compensation, (h) description of commissions, sales loads, and other fees, and (i) a description of the mechanics of payment.*

**Answer to Paragraph 355:** Paragraph 357 states a legal conclusion which would be subject to proof and to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 357.

*358.     Such written disclosure was required to be provided (a) in advance of the arrangement/providing services, (b) within 60 days of any change to compensation, (c) at least annually if there are any changes to compensation, and (d) upon written request by other fiduciaries.*

**Answer to Paragraph 356:** Paragraph 358 states a legal conclusion which would be subject to proof and to which no response is required. To the extent a response is deemed required,

Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 358.

359. *Each Defendant failed to provide written 408(b)(2) Disclosures to the Plan.*

**Answer to Paragraph 357**: Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 359.

360. *Kestra IS provided a 2012 disclosure, but it was non-compliant, vague, and did not contain the requisite information required under ERISA section 408(b)(2).*

**Answer to Paragraph 358**: To the extent the allegations in Paragraph 360 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant KIS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 360; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

361. *Any disclosures made did not provide a complete and accurate accounting of all direct and indirect compensation paid Defendants.*

**Answer to Paragraph 359**: To the extent the allegations in Paragraph 361 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant KIS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 361; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

362. *As required under the Plan Documents, BPS as Plan Administrator was responsible for providing the Plan's accounting firm at least an annual disclosure of all direct and indirect compensation related to the Plan for the annual audit and Form 5500 filing. Korchak provided all information to the auditor, but his responses to the auditors were incomplete, failed to disclose all indirect compensation, and did not comply with Section 408(b)(2).*

**Answer to Paragraph 360**: Defendants BPS and Korchak affirmatively allege that they

106

provided the Plan's auditor with all requested compensation information so that such compensation could be disclosed on the Plan's 5500. Defendants BPS and Korchak deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 362. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

## Defendants' Lack of Procedural Prudence
## With Respect to the Plan

*363.    As ERISA fiduciaries, NFP as Plan Administrator and NFP, Kestra IS and Kestra AS advisors had an affirmative obligation to provide full and accurate information to the Trustees and the Plan's Participants regarding the Plan assets.*

**Answer to Paragraph 361:** Paragraph 363 states a legal conclusion for which no response is required. To the extent a response is required, Defendants BPS, NFP-IL, KIS, and KAS deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 363. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

*364.    The advisors did not provide the Trustees with a written statement on a monthly, quarterly, or even annual basis that collectively accounted for all assets of the Plan for the purposes of determining a total return and performance and fees of all managers.*

**Answer to Paragraph 362:** Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 364.

*365.    Kestra IS and Kestra AS did not provide the Trustees with information measuring risk for the overall portfolio or the risk profile for the alternatives to the bonds and equity investments of FTA.*

**Answer to Paragraph 363:** Defendants KIS and KAS deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 365. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

366.    *NFP BPS as Plan Administrator and the Kestra Advisors did not provide the Trustees with information concerning faltering investments such as REITs and the certain alternative investments detailed below.*

**Answer to Paragraph 364:** Paragraph 366 is vague, ambiguous and contains undefined terms. Therefore such "allegations" in Paragraph 366 are denied. To the extent the allegations in Paragraph 366 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants BPS, NFP-IL, Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 366. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

367.    *In the absence of a total return analysis, it was impossible for the Trustees to understand the impact of underperforming investments relative to a benchmark.*

**Answer to Paragraph 365:** Paragraph 367 is vague and ambiguous and assumes certain facts. Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 367.

368.    *BPS as Plan Administrator and the Kestra Advisors failed to obtain written contracts with all investment managers, failed to disclose the terms of investments to the Trustees including their compensation, failed to monitor investments adequately, and did not employ a watch list process for poorly performing managers.*

**Answer to Paragraph 366:** Defendants BPS, NFP-IL, Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 368. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

369.    *BPS as Plan Administrator and the Kestra Advisors failed to educate the Trustees concerning their investment options, and the risks and returns of existing investments or possibilities of altering the heavy allocation from 79% fixed income investments.*

**Answer to Paragraph 367:** Defendants BPS, NFP-IL, Korchak and Curry generally deny

Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 369. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

370. *As noted above, Korchak, in his fiduciary capacity as Plan Administrator, provided the Plan's auditor with incomplete information. By way of example only, when asked for the NFP Fiscal year statement that showed all trade activity for the year and a list of holdings, Korchak failed to provide it and gave the auditor only limited information. On multiple occasions, the auditor requested information from the BPS Defendants and Korchak did not understand the request. In 2014-2018, the auditor requested from Korchak detailed information about indirect and direct compensation for every service provider to the Plan. On more than one occasion, Korchak was unable to understand what was being requested and identify the information, and brought in Kestra IS, Kestra AS, and NFP IL to assist. These defendants were often unable to assist because the written documents requested did not exist including investments and service provider compensation information.*

**Answer to Paragraph 368:** To the extent the allegations in Paragraph 370 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendant NFP-IL, KIS, KAS, and Korchak generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 370. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

371. *From at least 2014 through 2017, Korchak did not provide the auditor with complete information about all indirect and direct compensation generated from Plan assets.*

**Answer to Paragraph 369:** Defendant Korchak generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 371. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

372. *The Plan Administrator failed to ensure that FTA's compensation was reported on the Plan's 2013 Form 5500.*

**Answer to Paragraph 370:** Defendant NFP-IL, KIS, KAS, and Korchak generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in

Paragraph 372. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

373. *In its capacity as the Plan's recordkeeper, BPS failed to properly maintain material information concerning the Plan and its Participants.*

**Answer to Paragraph 371:** Defendant BPS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 373. To the extent the allegations relate to BPS, the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 373 and, on that basis, deny same.

374. *BPS failed to follow industry standards in the organization and maintenance of Plan records.*

**Answer to Paragraph 372:** Defendant BPS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 374. To the extent the allegations relate to BPS, the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 374 and, on that basis, deny same.

375. *The database for the Plan records was improperly maintained.*

**Answer to Paragraph 373:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 375.

376. *The content of the Plan records was incomplete, incorrect, and otherwise deficient.*

**Answer to Paragraph 374:** Paragraph 376 is vague, overly broad and ambiguous and states a legal conclusion. To the extent a response is deemed required, Defendants deny the allegations contained in Paragraph 376.

*377.    BPS knew that numerous Participants could not be communicated with because of incomplete or erroneous records but charged the Plan with periodic communications to such Participants.*

**Answer to Paragraph 375:** Paragraph 376 is vague, overly broad and ambiguous. Defendant BPS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 377; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 377 and, on that basis, deny such allegations.

*378.    BPS failed to monitor Participants' records through "death audits" to ensure that deceased Participants were removed, and survivors received benefits to which they were entitled.*

**Answer to Paragraph 376:** Defendant BPS generally denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 378; the remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 378 and, on that basis, deny such allegations.

*379.    BPS failed to follow up with Employers to obtain current information about employees on whose behalf they were contributing.*

**Answer to Paragraph 377:** Defendant BPS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 379. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 379 and, on that basis, deny the allegations.

*380.    As a result of these failures, the number of Plan Participants was inaccurate, and the costs and fees paid to BPS were not predicated on accurate information.*

**Answer to Paragraph 378:** Defendant BPS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 380. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 380 and, on that basis, deny the allegations.

381.    As a result of these failures, certain Plan Participants did not receive statements or disclosures required by law, while deceased individuals were sent statements.

**Answer to Paragraph 379:** Defendant BPS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 381. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 381 and, on that basis, deny the allegations.

382.    BPS charged for certain recordkeeping and related fees calculated based on the number of total Participants in the Plan. The more Participants in the Plan, the more compensation BPS would charge the Plan. The administrative fees, including statement printing and mailing fees charged by BPS to the Plan, were not adjusted so that BPS was compensated based on inflated numbers of active Plan Participants.

**Answer to Paragraph 380:** Defendant BPS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 382. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 382 and, on that basis, deny the allegations.

383.    Another result of the negligent recordkeeping was that certain required minimum distribution to Participants over age 70½ were missed, resulting in Participants not receiving the benefits to which they were entitled and subjecting the Plan and Participants to liability for potential IRS penalties of 50% of the benefits.

**Answer to Paragraph 381:** Defendant BPS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 383. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 383 and, on that basis, deny the allegations.

384.    In 2017, the Plan engaged an auditor to review the status of Plan records. The auditor determined that at least 3,200 Plan participant records were corrupted, had inaccurate names, addresses, or were otherwise incomplete, or went missing while in the custody of BPS.

**Answer to Paragraph 382:** The allegations in Paragraph 384 relate to Plaintiff's actions and the conclusions of third parties not involved in this litigation. Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny

the allegations in Paragraph 384.

385.    *The Plan incurred fees to identify and correct the missing, incomplete, or inaccurate participant information and address other administrative deficiencies caused by BPS.*

**Answer to Paragraph 383:** Defendant BPS denies Plaintiff's legal conclusions, factual

characterizations, and all other allegations contained in Paragraph 385. The remaining Defendants

lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth

in Paragraph 38, and, on that basis, deny the allegations.

**Failures to**
**Train, Supervise and Monitor**

386.    *Kestra IS was required to monitor and supervise Korchak and Curry as registered representatives with respect their trading activity using Plan assets, to ensure compliance with their fiduciary duties and applicable state and federal securities rules and regulations, and to take affirmative action against them in the event of non-compliance.*

**Answer to Paragraph 384:** Defendant KIS denies Plaintiff's legal conclusions, factual

characterizations, and all other allegations contained in Paragraph 386. The remaining Defendants

lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth

in Paragraph 386 and, on that basis, deny the allegations.

387.    *NFP, Kestra IS, and Kestra AS were required to monitor and supervise Korchak and Curry as registered investment advisors with respect their trading activity using Plan assets, to ensure compliance with their fiduciary duties and applicable state and federal securities rules and regulations, and to take affirmative action against them in the event of non-compliance.*

**Answer to Paragraph 385:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 387, and BPS and NFP-

IL affirmatively allege that supervising compliance with securities regulations or licensure is

outside each entity's corporate purview.

*388. NFP, Kestra AS, Kestra IS, and Curry failed to monitor and supervise, however. It was in all of the Defendants financial interests to turn a blind eye to the tortious conduct of Korchak and to refrain from monitoring themselves, because such conduct drove revenue to Kestra AS, Kestra IS, and/or NFP, at the expense of Plan Participants.*

**Answer to Paragraph 386:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 388.

*389. Kestra AS, Kestra IS, and NFP lacked written compliance policies and procedures to prevent the ERISA violations.*

**Answer to Paragraph 387:** Defendants BPS, NFP-IL, KIS, and KAS deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 389. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 389 and, on that basis, deny such allegations.

*390. Kestra AS, Kestra IS, and NFP lacked adequate training for their representatives and employees.*

**Answer to Paragraph 388:** Defendants BPS, NFP-IL, KIS, and KAS deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 390. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 390 and, on that basis, deny such allegations.

*391. Kestra AS, Kestra IS, and NFP lacked experience and knowledge with respect to ERISA-governed retirement plans like the Plan here.*

**Answer to Paragraph 389:** Defendants BPS, NFP-IL, KIS, and KAS deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 391. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 391 and, on that basis, deny such allegations.

*392.     Kestra AS, Kestra IS, and NFP profited from providing inadequate support for administration and profited from keeping NFP and Korchak, and Curry in place, rather than seeking bids for competent administrative services providers.*

**Answer to Paragraph 390:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 392.

*393.     Kestra AS, Kestra IS, and NFP failed to evaluate the performance and cost of BPS because BPS and NFP, among other reasons, such evaluation and monitoring would involve evaluating and monitoring itself.*

**Answer to Paragraph 391:** Defendants BPS, NFP-IL, KIS, and KAS deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 393. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 393 and, on that basis, deny such allegations.

*394.     Kestra IS and Kestra AS failed to ensure that its representatives were competent to provide services to an ERISA retirement plan such as the Plan.*

**Answer to Paragraph 392:** Defendants KIS and KAS deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 394. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 394 and, on that basis, deny such allegations.

*395.     Kestra IS and Kestra AS failed to provide competent representatives.*

**Answer to Paragraph 393:** Defendants KIS and KAS deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 395. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 395 and, on that basis, deny such allegations.

396. *As a result of the failure to supervise and monitor, Korchak and Curry were unchecked and lacked any accountability. They were able to breach their fiduciary duties and caused the Plan to engage in prohibited transactions in violation of ERISA.*

**Answer to Paragraph 394:** Defendants KIS, KAS, Korchak, and Curry deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 396. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 396 and, on that basis, deny such allegations.

397. *Pursuant to 29 U.S.C. § 1332(a), the Trustees have served by certified mail a copy of the Complaint upon the Secretary of Labor located at 200 Constitution Avenue, NW Washington, D.C. 20210, and the Secretary of Treasury, located at 1500 Pennsylvania Avenue, NW Washington, D.C. 20220.*

**Answer to Paragraph 395:** Paragraph 397 generally references a statutory citation (ERISA) and describes Plaintiff's actions related to serving its Amended Complaint to which no response is required. To the extent a response is deemed required, Defendants admit such allegations.

## FIRST CLAIM FOR RELIEF FOR BREACH OF FIDUCIARY DUTY
## ERISA SECTION 502(a)(2)

398. *Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 396:** Paragraph 398 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

399. *29 U.S.C. § 1132(a)(2), provides that a plan fiduciary may bring an action for appropriate relief under 29 U.S.C. § 1109.*

**Answer to Paragraph 397:** Paragraph 399 generally purports to describe the requirements or contents of a statutory provision within ERISA which speaks for itself. No response is required.

116

*400.    Defendants were ERISA fiduciaries of the Plan.*

**Answer to Paragraph 398:** Paragraph 400 states a legal conclusion, which is subject to proof, including by expert testimony, and to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 400.

*401.    As to each of the acts and omissions detailed herein, Defendants were acting in a fiduciary capacity. Defendants provided regular, individualized investment advice pursuant to an arrangement with the Plan in exchange for a fee, and further exercised discretionary authority and control with respect to the disposition of assets including the advice, recommendation, and execution of investments of Plan assets.*

**Answer to Paragraph 399:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 401, but admit that Defendants were fiduciaries to the Plan if and only when they acted as "functional fiduciaries," e.g., if they exercised discretion with respect to the management or disposition of plan assets or provided investment advice to the Plan pursuant to a fee arrangement.

*402.    ERISA requires fiduciaries to act for the exclusive purpose of providing benefits to Participants and their beneficiaries, and defraying reasonable expenses of administering the plan, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. 29 U.S.C. § 1104(a)(1)(A) and (B).*

**Answer to Paragraph 400:** Paragraph 402 generally purports to describe the requirements or contents of a statutory provision within ERISA which speaks for itself. No response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations.

*403.    Pursuant to their fiduciary duty of prudence, Defendants were required to administer the Plan and advise and manage its investments as would a prudent person acting in a like capacity and familiar with such matters.*

**Answer to Paragraph 401:** Paragraph 403 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's

legal conclusions, factual characterizations, and all other allegations contained in Paragraph 403.

404.    *Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and solely in the interest of participants in the plan. See 29 U.S.C. § 1104(a)(1)(A). "[A] fiduciary of a defined contribution … plan created to provide retirement income for employees who is given discretion to select and maintain specific investment options for participants—must exercise prudence in selecting and retaining available investment options." DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 4180 (4th Cir. 2007).*

**Answer to Paragraph 402:** Paragraph 404 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 404.

405.    *Pursuant to their fiduciary duty of loyalty, Defendants were required to discharge their duties with respect to the Plan solely in the interest of the Participants and for the exclusive purpose of providing benefits to Participants and their beneficiaries, and defraying reasonable expenses of administering the plan.*

**Answer to Paragraph 403:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 405.

406.    *ERISA fiduciaries selecting plan investments and service providers "must also scrupulously adhere to a duty of loyalty, and make any decisions in a fiduciary capacity with 'an eye single to the interests of the participants and beneficiaries." Id. at 418-19. As the Supreme Court has held, ERISA's "duty of prudence involves a continuing duty to monitor investments and remove imprudent ones[.]" Tibble v. Edison Int'l, 135 S.Ct. 1823, 1829 (2015).*

**Answer to Paragraph 404:** Paragraph 406 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 406.

407.    *An investment policy statement or IPS is a governing plan document within the meaning of 29 U.S.C. § 1104(a)(1)(D). See 29 C.F.R. §2509.94-2 (1994), replaced by 29 C.F.R. §2509.08-2(2)(2008)("Statements of investment policy issued by a named fiduciary authorized to appoint investment managers would be part of the 'documents and instruments governing the plan' within the meaning of ERISA Sec. 404(a)(1)(D)."). "Fiduciaries who are responsible for plan investments governed by ERISA must comply with the plan's written statements of investment policy, insofar as those written statements are consistent with the provisions of ERISA." Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co., 259 F.3d 1036, 1042 (9th Cir. 2001). "[F]ailure to follow written statements of investment policy constitutes a breach of fiduciary duty." Id. (citing Dardaganis v. Grace Capital, Inc., 889 F.2d 1237, 1241–42 (2d Cir. 1989)). A*

*violation of investment guidelines is an independent breach of fiduciary duty, regardless of whether the action was otherwise prudent. See 29 U.S.C. §1104(a)(1)(D).*

**Answer to Paragraph 405:** Paragraph 407 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 407.

*408.    Pursuant to their fiduciary duties, Defendants acting as dual-registered IARs and RRs with respect to assets of the Plan, were required to fully disclose the existence, nature, and extent of such conflict of interest, the details of whether they were brokering a security as an RR or providing investment management and advice as an IAR, and the nature and the extent of any and all direct and indirect compensation.*

**Answer to Paragraph 406:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 408.

**COUNT I**
**BREACH OF FIDUCIARY DUTY RELATING TO INVESTMENT OF PLAN ASSETS**
**IN PIMCO CLASS A SHARES**

*409.    Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 407:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. Further, Paragraph 409 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants deny all allegations in this Paragraph.

*410.    NFP, Kestra IS, Curry, and Korchak, acting as investment advisors to the Plan with discretionary authority and control over fixed income Plan assets, and Kestra IS, acting as broker-dealer, and Korchak as registered representative, had fiduciary duties to act prudently and solely in the best interest of Plan Participants in dealing with Plan assets.*

**Answer to Paragraph 408:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count I.

411. *Each of these Defendants, acting in their respective and dual capacities, breached their fiduciary duties to do so by advising, recommending, and causing investment of Plan assets in high-fee PIMCO Class A Shares that were imprudent for the Plan as an institutional investors, when lower-cost share classes of the same funds for which the Plan was eligible were available.*

**Answer to Paragraph 409:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count I.

412. *Each of these Defendants, acting in their respective and dual capacities, breached their fiduciary duties to the Plan by selecting the PIMCO Class A Shares that generated 12b-1 fees and other fees and commissions through trade execution by Korchak through Kestra IS as broker-dealer, by holding such shares in an amount to maximize their receipt of fees, and by failing to purchase, recommend, or hold for the Plan institutional share classes that did not charge 12b-1 fees, even though the Plan was eligible to hold the institutional share classes.*

**Answer to Paragraph 410:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count I.

413. *NFP, Kestra IS, Curry, and Korchak, acting as investment advisors, breached their fiduciary duty to follow plan documents because investment in the PIMCO Class A Shares violated the Plan's IPS.*

**Answer to Paragraph 411:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count I.

414. *NFP, Kestra IS, Curry, and Korchak, acting as investment advisors, breached their fiduciary duties by failing to disclose the nature and extent of all fees and other compensation from the PIMCO Class A Shares, and failing to disclose the existence, nature and extent of the conflict of interest presented by their receipt of 12b-1 fees, their selection of the PIMCO Class A Shares that generated such fees, and failing to disclose that a slightly greater investment would generate no or less fees for the Defendants.*

**Answer to Paragraph 412:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count I.

415.    *NFP, Kestra IS, Curry, and Korchak, acting as investment advisors, also breached their fiduciary duties by failing to disclose the existence, nature and extent of the conflict of interest presented by Kestra IS's receipt of 12b-1 fees, their selection of the PIMCO Class A Shares that generated such fees, and failing to disclose that a slightly greater investment would generate no or less fees for Kestra IS.*

**Answer to Paragraph 413:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count I.

416.    *NFP, Kestra IS, Curry, and Korchak, acting as investment advisors, breached their fiduciary duties in connection with the PIMCO investment because they did not establish a process for determining whether the investment continued to be prudent and whether the fees were reasonable for the level of investment return, and they did not communicate their findings or the process to the Trustees.*

**Answer to Paragraph 414:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count I.

417.    *NFP, Kestra IS, Curry, and Korchak breached their fiduciary duties by failing to act in the best interests of the Plan and its Participants, instead acting in their own best interest.*

**Answer to Paragraph 415:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count I.

418.    *Each Defendant financially benefitted from this conduct because of the compensation structure described herein under which NFP, Kestra IS, and Curry and Korchak financially benefited, to the financial detriment of the Plan and its Participants.*

**Answer to Paragraph 416:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count I.

*419. The Plan and its Participants have suffered losses, including a possible loss in value, and been otherwise injured, as a result of the breaches of fiduciary duty by NFP, Kestra IS, Curry, and Korchak*

**Answer to Paragraph 417:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count I.

*420. Defendants are required to render an accounting of all such fees, the amount of which are assets owed to the Plan.*

**Answer to Paragraph 418:** Per this Court's order in ECF No. 134, this Count I has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count I.

## COUNT II
## BREACH OF FIDUCIARY DUTY RELATING TO INVESTMENT IN "ALTERNATIVE INVESTMENTS" USING PLAN ASSETS

*421. Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 419:** Paragraph 421 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

*422. NFP, Kestra IS, Curry, and Korchak, acting as investment advisors to the Plan with discretionary authority and control over fixed income Plan assets, and Kestra IS, acting as broker-dealer, and Korchak as registered representative, had fiduciary duties to act prudently and solely in the best interest of Plan Participants in dealing with Plan assets.*

**Answer to Paragraph 420:** Defendants NFP-IL, KIS, KAS, and Korchak deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 422. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 422 and, on that basis, deny such allegations.

*423.    NFP, Kestra IS, Curry, and Korchak breached their fiduciary duties to do so by advising, recommending, and causing investment of approximately $900,000 of Plan assets in the CION Investment, Cole Credit Investment, and FS Investment as described herein. These three investments were non-marketable investments prohibited under the Plan's IPS. They were imprudent for the Plan and not for the exclusive purpose of providing benefits to the Participants.*

**Answer to Paragraph 421:** Defendants BPS, NFP-IL, KIS, Korchak, and Curry deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 423. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 423 and, on that basis, denies such allegations.

*424.    NFP, Kestra IS, Curry, and Korchak's breaches in recommending these investments were further aggravated when they (a) failed to disclose any and all fees they received in connection with these investments, and (b) failed to monitor or recommend changes when these investments sustained negative returns.*

**Answer to Paragraph 422:** Defendants BPS, NFP-IL, KIS, Korchak, and Curry deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 424. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 424 and, on that basis, denies such allegations.

*425.    NFP, Kestra IS, Curry, and Korchak breached their fiduciary duties by failing to disclose the risk profile of these investments including that the Plan may not be able to resell their shares regardless of how the investment performed because they were not listed on any securities exchange; and that there was no secondary market for them. Including these investments in the fixed income portfolio was deceptive because the expected returns from these investments, above bond returns, would, upon information and belief, make the performance of the fixed income portfolio appear better than it was.*

**Answer to Paragraph 423:** Defendants BPS, NFP-IL, KIS, Korchak, and Curry deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 425. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 425 and, on that

basis, denies such allegations.

426.     *NFP, Kestra IS, Curry, and Korchak breached their fiduciary duties by failing to disclose the risk profile of these investments, specifically that the Plan may not be able to resell their shares regardless of how the investment performed because they were not listed on any securities exchange and there was no secondary market for them.*

**Answer to Paragraph 424:** Defendants BPS, NFP-IL, KIS, Korchak, and Curry deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 426. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 426 and, on that basis, denies such allegations.

427.     *NFP, Kestra IS, Curry, and Korchak breached their fiduciary duties by failing to disclose the existence, nature and extent of their conflict of interest by their receipt of compensation relating to these investments based on their selection of the very investments that generated such compensation.*

**Answer to Paragraph 425:** Defendants BPS, NFP-IL, KIS, Korchak, and Curry deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 427. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 427 and, on that basis, denies such allegations.

428.     *NFP, Kestra IS, Kestra AS, Curry, and Korchak received a financial benefit through undisclosed fees in connection with the CION Investment, Cole Credit Investment, and FS Investment, directly benefitting from these investments to the detriment of the Plan and its Participants.*

**Answer to Paragraph 426:** Defendants BPS, NFP-IL, KIS, Korchak, and Curry deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 428. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 428 and, on that basis, denies such allegations.

429. *The amount of any fees received by NFP, Kestra IS, Kestra AS, Curry, and Korchak are assets owed to the Plan.*

**Answer to Paragraph 427:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 429.

430. *The Plan and its Participants have suffered losses, including in the amount of lost principal and the amounts these investments could have earned if placed in diversified investments permitted under the IPS, and have been otherwise injured as a result of Defendants' breaches of fiduciary duty.*

**Answer to Paragraph 428:** Paragraph 430 contains characterizations which describe Plaintiff's claims and alleged losses. These items would be subject to proof, including by expert testimony. Either no response is required or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 430.

431. *NFP, Kestra IS, Kestra AS, Curry, and Korchak are required to render an accounting of all such indirect compensation, the amounts of which are assets owed to the Plan.*

**Answer to Paragraph 429:** Paragraph 431 generally contains Plaintiff's prayer for one or more remedies sought in this matter; since Plaintiff made no allegations, no response is required. However, to the extent a response is deemed required, Defendants deny such allegations.

### COUNT III
### BREACH OF FIDUCIARY DUTY RELATING TO
### MANAGEMENT OF FIXED INCOME INVESTMENTS

432. *Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 430:** Paragraph 432 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

433. *NFP, Kestra IS, Kestra AS, and the Representatives, acting as investment advisors to the Plan with discretionary authority and control over fixed income Plan assets, and Kestra IS and Korchak as broker-dealer, had fiduciary duties to act prudently and solely in the best interest of Plan Participants in dealing with Plan assets including managing the bond portfolio and executing trades in the bond portfolio.*

**Answer to Paragraph 431:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 433.

434. *NFP, Kestra IS, Kestra AS, and the Representatives, breached their fiduciary duties to do so by failing to disclose to the Plan all of the commissions and other fees received through brokering the bonds, including an undisclosed "mark-up" of 1.0-2.5% on bond trades.*

**Answer to Paragraph 432:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 434.

435. *Kestra IS and Korchak breached their fiduciary duties by (a) excessively trading bonds to generate more fees; (b) selling bonds before maturity resulting in a loss to the Plan; and (c) failing to follow bond trading instructions in 2016 and 2017.*

**Answer to Paragraph 433:** To the extent the allegations in Paragraph 435 describe or refer to other documents and/or other written communications, Defendants state that such other documents and other sources speak for themselves. Nevertheless, Defendants KIS and Korchak deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 435. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, deny all such allegations.

436. *These Defendants breached their fiduciary duties in connection with the bond trades because the generation of commissions on bond trades was not in the best interest of Plan Participants. NFP, Kestra IS, Kestra AS, and the Representatives' interest in generating commissions so that each could financially benefit from the increased fees compromised their ability to make investment decisions solely in the interests of Participants.*

**Answer to Paragraph 434:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 436.

437. *Kestra IS's practice of charging the Plan for commissions on bond trades was contrary to industry practice, which NFP, Kestra IS, Kestra AS, and the Representatives, acting as investment advisors, did not disclose to the Plan. The 37.5 basis points fee paid to qualified*

*bond managers to administer a bond portfolio typically encompasses any commissions or other trading costs incidentally owed by the Plan.*

**Answer to Paragraph 435:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 437.

*438.    Kestra IS breached its fiduciary duties in connection with the bond trades because it did not establish a process for determining whether regular and continuous bond trades were prudent for the Plan and in the best interest of Plan Participants.*

**Answer to Paragraph 436:** Defendant KIS denies Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 438. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 438 and, on that basis, deny such allegations.

*439.    Besides not establishing a proper process, NFP, Kestra IS, Kestra AS, and the Representatives did not establish the suitability and prudence of the investments or reasonableness of the associated fees. The Trustees were essentially left in the dark concerning the bond trades.*

**Answer to Paragraph 437:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 439.

*440.    NFP, Kestra IS, Kestra AS, and the Representatives breached their fiduciary duties by failing to disclose the existence, nature and extent of the conflict of interest presented by Kestra IS's and Korchak's receipt of mark-ups and other compensation relating to the bond trading, and their decisions on where, when and how to buy and sell the bonds that generated such fees.*

**Answer to Paragraph 438:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 440.

*441.    NFP, Kestra IS, Kestra AS, and the Representatives received or benefited from undisclosed commissions in connection with the aforementioned bond trades, and directly benefitted from these trades to the detriment of the Plan and Plan Participants.*

**Answer to Paragraph 439:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 441.

*442.    These Defendants had a clear, undisclosed conflict of interest trading these bonds, and the commissions and/or fees received are assets owed to the Plan.*

**Answer to Paragraph 440:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 442.

443.     *The Plan and its Participants have suffered losses and been otherwise injured as a result of NFP, Kestra IS, Kestra AS, and the Representatives' breaches of fiduciary duty.*

**Answer to Paragraph 441:** Paragraph 443 contains characterizations which describe Plaintiff's claims and alleged losses. These items would be subject to proof, including by expert testimony. Either no response is required or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 443.

444.     *NFP, Kestra IS, Kestra AS, and the Representatives are required to render an accounting of all such fees and markups, the amount of which are assets owed to the Plan.*

**Answer to Paragraph 442:** Paragraph 444 generally contains Plaintiff's prayer for one or more remedies sought in this matter; since Plaintiff made no allegations, no response is required. However, to the extent a response is deemed required, Defendants deny such allegations.

## COUNT IV
## BREACH OF FIDUCARY [*SIC*] DUTY RELATING TO
## METLIFE MANAGED GIC INVESTMENTS

445.     *Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 443:** Paragraph 445 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

446.     *NFP, Kestra IS, and the Representatives, acting as investment advisors to the Plan with discretionary authority and control over fixed income Plan assets, and Kestra IS and Korchak as broker-dealer, had fiduciary duties to act prudently and solely in the best interest of Plan Partic-*

*ipants in dealing with Plan assets including managing the fixed income portfolio including the Met Life GIC.*

**Answer to Paragraph 444:** Defendants BPS, NFP-IL, KIS, Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 446. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies all such allegations.

447. *NFP, Kestra IS, and the Representatives breached their fiduciary duties to do so by advising, recommending, and placing $4 million of Plan assets in a MetLife GIC designed to yield a negligent return on the investment and pay excessive compensation to these Defendants.*

**Answer to Paragraph 445:** Defendants BPS, NFP-IL, KIS, Korchak and Curry generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 447. The remaining Defendant (KAS) lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies all such allegations.

448. *NFP, Kestra IS, Kestra AS, and the Representatives also breached their fiduciary duties by failing to determine whether fees associated with this investment were unreasonable and whether fees charged by the alleged investment administrator were unnecessary because they were duplicative of other custodial fees paid by the Plan.*

**Answer to Paragraph 446:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 448.

449. *NFP, Kestra IS, Kestra AS, and the Representatives breached their fiduciary duties also by (a) failing to disclose all material information regarding this investment, including regular and timely financial and other performance reports, (b) failing to monitor or evaluate the performance of Alliance Benefit Group as an investment manager, and (c) failing to replace the investment based on poor performance.*

**Answer to Paragraph 447:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 449.

450. *NFP, Kestra IS, Kestra AS, and the Representatives failed to include the negligible returns on this investment when periodically reporting their own performance to the Trustees. On*

*information and belief, they did not include the returns on this investment when reporting on Plan investment returns in 2017.*

**Answer to Paragraph 448:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 450.

*451.    NFP, Kestra IS, Kestra AS, and the Representatives breached their fiduciary duties by failing to disclose the existence, nature and extent of the conflict of interest presented by their receipt of compensation from the MetLife GIC and their selection of the MetLife GIC that generated such compensation.*

**Answer to Paragraph 449:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 451.

*452.    NFP, Kestra IS, Kestra AS, and the Representatives received compensation in connection with the purchase of MetLife GIC investments, directly benefitting from this investment to the detriment of the Plan and Plan Participants. These Defendants had a clear, undisclosed conflict of interest in doing so, and the compensation received is an asset owed to the Plan.*

**Answer to Paragraph 450:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 452.

*453.    The Plan and its Participants have suffered losses and been otherwise injured as a result of NFP, Kestra IS, Kestra AS, and the Representatives' breach of fiduciary duty.*

**Answer to Paragraph 451:** Paragraph 453 contains characterizations which describe Plaintiff's claims and alleged losses. These items would be subject to proof, including by expert testimony. Either no response is required or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 453.

*454.    NFP, Kestra IS, Kestra AS, and the Representatives are also liable for the lost earnings resulting from acquiring this investment rather than investing the $4,000,000 in a diversified fixed income and equity portfolio, as required by the Plan's IPS.*

**Answer to Paragraph 452:** Paragraph 454 contains characterizations which describe Plaintiff's claims and alleged losses or requested remedies. These items would be subject to proof,

including by expert testimony. Either no response is required or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 454.

455. *NFP, Kestra IS, Kestra AS, and the Representatives are required to render an accounting of all such fees, the amount of which are assets owed to the Plan.*

**Answer to Paragraph 453:** Paragraph 455 generally contains Plaintiff's prayer for one or more remedies sought in this matter; since Plaintiff made no allegations, no response is required. However, to the extent a response is deemed required, Defendants deny such allegations.

## COUNT V
## BREACH OF FIDUCARY [*SIC*] DUTY RELATING TO UIT INVESTMENT

456. *Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 454:** Per this Court's order in ECF No. 134, this Count V has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count V.

457. *NFP, Kestra IS, Kestra AS, and the Representatives, acting as investment advisors to the Plan with discretionary authority and control over fixed income Plan assets, and Kestra IS and Korchak as broker-dealer, had fiduciary duties to act prudently and solely in the best interest of Plan Participants in dealing with Plan assets including managing the fixed income portfolio including the AAM/UIT investment.*

**Answer to Paragraph 455:** Per this Court's order in ECF No. 134, this Count V has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count V.

458. *NFP, Kestra IS, Kestra AS, and the Representatives breached their fiduciary duties to do so by advising, recommending, and placing an investment in the UIT because the investment was imprudent. It generated fees that higher than similar investments.*

**Answer to Paragraph 456:** Per this Court's order in ECF No. 134, this Count V has been

dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count V.

459. *NFP, Kestra IS, Kestra AS, and the Representatives caused the Plan to pay unreasonable management fees to AAM to obtain a one-half share of those management fees, thus receiving commission and other fees from AAM which, upon information and belief, were not disclosed to the Plan and its Participants.*

**Answer to Paragraph 457:** Per this Court's order in ECF No. 134, this Count V has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count V.

460. *Kestra IS and Korchak breached their fiduciary duty by, among other things, taking commissions on the UIT when no markups were allowed for the UIT.*

**Answer to Paragraph 458:** Per this Court's order in ECF No. 134, this Count V has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count V.

461. *NFP, Kestra IS, Kestra AS, and the Representatives breached their fiduciary duties in connection with the UIT investment because they did not establish or follow a process for determining whether the investment continued to be prudent and whether the fees were reasonable for the level of investment return. Consequently, they did not communicate their findings or the (lack of) process to the Trustees.*

**Answer to Paragraph 459:** Per this Court's order in ECF No. 134, this Count V has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count V.

462. *NFP, Kestra IS, Kestra AS, and the Representatives breached their fiduciary duties in connection with the UIT investment because they received compensation in connection with the purchase of UIT, directly benefitting from this investment to the detriment of the Plan and its Participants. These Defendants had a clear, undisclosed conflict of interest in doing so, and the amount of fees received are assets owed to the Plan.*

**Answer to Paragraph 460:** Per this Court's order in ECF No. 134, this Count V has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count V.

463.    *The Plan and its Participants have suffered losses and been otherwise injured as a result of Defendants' breaches of fiduciary duty.*

**Answer to Paragraph 461:** Per this Court's order in ECF No. 134, this Count V has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count V.

464.    *NFP, Kestra IS, Kestra AS, and the Representatives are required to render an accounting of all such fees, the amount of which are assets owed to the Plan.*

**Answer to Paragraph 462:** Per this Court's order in ECF No. 134, this Count V has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count V.

**COUNT VI**
**BREACH OF FIDUCARY [*SIC*] DUTY RELATING TO**
**FIRST TRUST ADVISOR AS ADDITIONAL MONEY MANAGER AND**
**FAILURE TO DISCLOSE FEES PAID BY FTA**

465.    *Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 463:** Per this Court's order in ECF No. 134, this Count VI has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VI.

466.    *NFP, Kestra IS, Kestra AS, and the Representatives, acting as investment advisors to the Plan with discretionary authority and control over management of the Plan, had a duty to but failed to act in accordance with their duties of prudence and loyalty in selecting other money managers to manage assets of the Plan.*

**Answer to Paragraph 464:** Per this Court's order in ECF No. 134, this Count VI has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VI.

467.    *NFP, Kestra IS, and the Representatives breached their fiduciary duties by advising, recommending, and effecting the hiring of FTA as an equity investment manager, without (a) providing information consistent with industry standards concerning multiple investment managers; (b) disclosing the lack of experience of FTA with multiemployer pension benefit plans,*

*and (c) disclosing the limited resources of FTA.*

**Answer to Paragraph 465:** Per this Court's order in ECF No. 134, this Count VI has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VI.

*468.      NFP, Kestra IS, and the Representatives also breached their fiduciary duties by (i) designating Kestra IS through Korchak as the directing brokers for all securities transactions; (ii) failing to disclose that the directed brokerage imposed on FTA was a conflict of interest; (iii) paying an excessive "equity management fee" to FTA and splitting that fee with NFP, Kestra IS, and Kestra AS, while failing to completely and accurately disclose such fee-splitting.*

**Answer to Paragraph 466:** Per this Court's order in ECF No. 134, this Count VI has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VI.

*469.      In addition, NFP in its fiduciary capacity as Plan Administrator failed to disclose such indirect compensation when it was requested annually on behalf of the Trustees by the accountant.*

**Answer to Paragraph 467:** Per this Court's order in ECF No. 134, this Count VI has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VI.

*470.      NFP, Kestra IS, Kestra AS, and the Representatives breached their fiduciary duties in connection with FTA because they did not establish a prudent process for determining whether the investments offered through FTA continued to be prudent and whether the fees were reasonable for the level of investment return and level of service. Consequently, they did not communicate their findings or the (lack of) process to the Trustees.*

**Answer to Paragraph 468:** Per this Court's order in ECF No. 134, this Count VI has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VI.

*471.      NFP, Kestra IS, Kestra AS, and the Representatives received compensation in connection with the hiring of FTA, directly benefitting from this selection to the detriment of the Plan and its Participants. These Defendants had a clear, undisclosed conflict of interest in doing so, and the amount of fees received are assets owed to the Plan.*

**Answer to Paragraph 469:** Per this Court's order in ECF No. 134, this Count VI has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VI.

472. *The Plan and its Participants have suffered losses and been otherwise injured as a result of NFP, Kestra IS, Kestra AS, and the Representatives' breaches of fiduciary duty.*

**Answer to Paragraph 470:** Per this Court's order in ECF No. 134, this Count VI has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VI.

473. *NFP, Kestra IS, Kestra AS, and the Representatives are required to render an accounting of all such fees and commissions, the amounts of which are assets owed to the Plan.*

**Answer to Paragraph 471:** Per this Court's order in ECF No. 134, this Count VI has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VI.

## COUNT VII
## BREACH OF FIDUCARY [*SIC*] DUTY RELATING TO
## SELECTION OF OTHER MONEY MANAGERS FOR PLAN ASSETS

474. *Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 472:** Per this Court's order in ECF No. 134, this Count VII has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VII.

475. *NFP, Kestra IS, and the Representatives, acting as investment advisors to the Plan with discretionary authority and control over management of the Plan, had a fiduciary duty to follow a prudent process in accordance with industry standards to recommend and select other investment managers for the Plan's portfolio, including BIM, MSSB, and ML and possibly others.*

**Answer to Paragraph 473:** Per this Court's order in ECF No. 134, this Count VII has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VII.

476.    *NFP, Kestra IS, and the Representatives breached their duties by failing to enter into agreements with other investment managers, causing the Plan to pay duplicate management fees, and failing to disclose these relationships to the Plan or the nature and extent of all compensation or fees realized by Defendants as a result of investing with these managers.*

**Answer to Paragraph 474:** Per this Court's order in ECF No. 134, this Count VII has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VII.

477.    *NFP, Kestra IS, and the Representatives received compensation in connection with these selections, directly benefitting from them to the detriment of the Plan and its Participants. NFP, Kestra IS, and the Representatives had a clear, undisclosed conflict of interest in doing so, and the amount of fees received are assets owed to the Plan.*

**Answer to Paragraph 475:** Per this Court's order in ECF No. 134, this Count VII has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VII.

478.    *The Plan and its Participants have suffered losses and been otherwise injured as a result of NFP, Kestra IS, and the Representatives' breaches of fiduciary duty.*

**Answer to Paragraph 476:** Per this Court's order in ECF No. 134, this Count VII has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VII.

479.    *NFP, Kestra IS, and the Representatives are required to render an accounting of all such fees, the amounts of which are assets owed to the Plan.*

**Answer to Paragraph 477:** Per this Court's order in ECF No. 134, this Count VII has been dismissed, so no answer is required. To the extent an answer is required, Defendants deny all allegations in this Paragraph related to Count VII.

## COUNT VIII
## BREACH OF FIDUCARY [*SIC*] DUTY FOR
## FAILURE TO DISCLOSE PURSUANT TO SECTION 408(b)(2) DISCLOSURES

*480.     Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 478:** Paragraph 480 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

*481.     As ERISA covered service providers, Defendants had a statutory and fiduciary duty to provide 408(b)(2) Disclosures to the Plan.*

**Answer to Paragraph 479:** Paragraph 481 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 481.

*482.     Defendants breached their duty by (a) failing to provide such disclosures, with the exception of a 2012 disclosure by NFP Securities which was non-compliant, and (b) failing to otherwise provide a complete and accurate accounting of all fees and commissions paid to Defendants.*

**Answer to Paragraph 480:** To the extent the allegations in Paragraph 482 describe or refer to other documents and/or other sources, Defendants state that such other documents and other sources speak for themselves. Defendants generally deny Plaintiff's other legal conclusions, factual characterizations, and all other allegations contained in Paragraph 482.

*483.     Defendants received compensation in connection with their performance as fiduciaries to the Plan, and directly benefitted from their non-disclosure to the detriment of the Plan. Defendants had a clear, undisclosed conflict of interest in doing so, and the amount of fees received are assets owed to the Plan.*

**Answer to Paragraph 481:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 483.

*484.     The Plan and its Participants have suffered losses and been otherwise injured as a*

*result of Defendants' breach of fiduciary duty.*

**Answer to Paragraph 482:** Paragraph 484 contains characterizations which describe Plaintiff's claims and alleged losses. These items would be subject to proof, including by expert testimony. Either no response is required or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 484.

**COUNT IX**
**BREACH OF FIDUCARY [*SIC*] DUTY FOR FAILURE TO IMPLEMENT AND FOLLOW PRUDENT PROCESSES WITH RESPECT TO THE PLAN**

485.    *Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 483:** Paragraph 485 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

486.    *NFP, Kestra IS, Kestra AS, and the Representatives, acting Plan Administrator (NFP) and as investment advisors to the Plan with discretionary authority and control over management of the Plan, had a fiduciary duty to implement or follow prudent processes, consistent with industry standards and with ERISA.*

**Answer to Paragraph 484:** Paragraph 486 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 486.

487.    *NFP, Kestra IS, Kestra AS, and the Representatives breached their fiduciary duty by, among other things, (a) failing to enter into written service agreements with the Plan; (b) failing to provide the Trustees with a total return analysis of all Plan assets on a monthly, quarterly, annual basis, and over market cycles such as three years, five years, and 10 years; (c) failing to provide detailed information and risk/return education about each investment significantly different from traditional equities and bonds in advance of acquiring alternative investments; (d) failing to monitor investments and to provide written information about*

*performance of ongoing investments; and (e) failing to provide written benchmarking and fee data to enable the Trustees to assess the reasonableness of fees.*

**Answer to Paragraph 485:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 487.

488. *NFP, Kestra IS, Kestra AS, and the Representatives financially benefited from these breaches to the detriment of the Plan and its Participants. Defendants had a clear, undisclosed conflict of interest in doing so, and the amount of all commissions/fees received are assets owed to the Plan.*

**Answer to Paragraph 486:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 488.

489. *The Plan and its Participants have suffered losses and been otherwise injured as a result of NFP, Kestra IS, Kestra AS, and the Representatives' breaches of fiduciary duty.*

**Answer to Paragraph 487:** Paragraph 489 contains characterizations which describe Plaintiff's claims and alleged losses. These items would be subject to proof, including by expert testimony. Either no response is required or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 489.

## COUNT X
## BREACH OF FIDUCIARY DUTY FOR FAILURE TO IMPLEMENT AND FOLLOW PRUDENT PROCESSES WITH RESPECT TO PLAN ADMINISTRATION AND RECORDKEEPING

490. *Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 488:** Paragraph 490 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

491. *NFP, Curry, and Korchak, as Plan Administrator and/or a functional fiduciary with respect to administration and recordkeeping for the Plan, had a fiduciary duty to implement and follow prudent processes, consistent with industry standards and with ERISA, in serving as administrator and record-keeper of the Plan and providing services to the Plan.*

**Answer to Paragraph 489:** Paragraph 491 generally references a statutory definition within ERISA which speaks for itself. Defendants BPS, NFP-IL, Korchak, and Curry deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 491. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 491 and, on that basis, deny such allegations.

492. *NFP, Curry, and Korchak breached their fiduciary duty by failing to properly organize, monitor, update, and maintain any and all records relating to the Plan and its Participants and by charging the Plan unreasonable, excessive, and unnecessary recordkeeping and related fees in light of these failures.*

**Answer to Paragraph 490:** Defendants BPS, NFP-IL, Korchak, and Curry deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 492. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 492 and, on that basis, deny such allegations.

493. *The Plan and its Participants have suffered losses, including fees to address the failings, and been otherwise injured as a result of NFP, Curry, and Korchak's breaches of fiduciary duty.*

**Answer to Paragraph 491:** Paragraph 493 contains characterizations which describe Plaintiff's claims and alleged losses. These items would be subject to proof, including by expert testimony. Either no response is required, or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 493.

494. *NFP, Curry, and Korchak's failures to update and enter into reasonable written service contracts since 1981 enabled Defendants to provide substandard support and services for administration and to retain greater profits from their relationship with the Plan. Their failure to provide adequate financial and technical support for day-to-day administration of the Plan resulted in the creation of incomplete and inaccurate participant records to the detriment of Participants over many years. More than half of the Participants did not have usable records of their addresses and did not receive notices, plan documents, 408 (b)(2) expense disclosures, and periodic benefit account reports to which they were entitled.*

**Answer to Paragraph 492:** To the extent the allegations in Paragraph 494 describe or refer to other documents and/or other sources, such other documents and other sources speak for themselves. To the extent the allegations in Paragraph 494 refer to Plaintiff or third parties not involved in this litigation, Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny the allegations in Paragraph 494. The remaining allegations in Paragraph 494 relate to Plaintiff's damages and remedies, and Defendants lack knowledge or information sufficient to form a belief as to the truth of the said allegations, so Defendants deny all remaining allegations on that basis.

495. *NFP's inadequate financial and technical support for the collection of employer contributions resulted in long delays in crediting Participants' accounts with the amount contributed by their employers and resulted in months of lost earnings on the amounts paid by contributing employers.*

**Answer to Paragraph 493:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 495.

496. *NFP, Curry, and Korchak are required to render an accounting of all such administrative fees for which appropriate written agreements did not exist and inadequate services were provided, the amounts of which are assets owed to the Plan.*

**Answer to Paragraph 494:** Defendants BPS, NFP-IL, Korchak, and Curry deny Plaintiff's legal conclusions, factual characterizations, claimed remedies, and all other allegations contained in Paragraph 496. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 496 and, on that basis, deny such allegations.

## COUNT XI
## BREACH OF FIDUCIARY DUTY TO SUPERVISE AND MONITOR

*497.   Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 495:** Paragraph 497 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

*498.   Under 29 U.S.C. § 1104(a), an individual with discretion to appoint an ERISA fiduciary has a fiduciary duty to select, retain and monitor those whom they appoint as would a reasonably prudent businessperson.*

**Answer to Paragraph 496:** Paragraph 498 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 498.

*499.   Corporate entities "may well have some duty to monitor" appointed plan administrators, even when the administrators are not close business associates. Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc., 805 F.2d 732, 736 (7th Cir. 1986).*

**Answer to Paragraph 497:** Paragraph 499 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 499.

*500.   As set forth in paragraphs 413-424, NFP, Kestra IS, and Kestra AS, in their respective roles as set forth herein, had a fiduciary duty to supervise and monitor NFP, Korchak, and Curry, including a duty to ensure that Korchak and Curry, while serving in professional and fiduciary positions, possessed the knowledge and experience needed to administer a Plan in a manner that professionals familiar with the operation of ERISA governed defined contribution employee benefit plans would act.*

**Answer to Paragraph 498:** Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 500.

*501.   NFP, Kestra IS, and Kestra AS had a fiduciary duty to avoid creating an administrative and investment arrangement in which the Representatives had conflicts of interest*

*that would affect the actions and advice provided to the Plan.*

**Answer to Paragraph 499:** Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 501.

502.  *NFP, Kestra IS, and Kestra AS breached their fiduciary duties by failing to supervise, monitor, and guide its Representatives as to all matters for which they were serving as fiduciaries of the Plan including, but not limited to, (a) investigating, advising on, recommending, and selecting prudent investments for the Plan, (b) avoiding conflicts of interests, (c) educating and informing the Plan regarding investments, (d) disclosing all direct and indirect compensation, (e) ensuring written agreements were in place, and (f) otherwise complying with ERISA.*

**Answer to Paragraph 500:** Paragraph 502 generally references ERISA, which speaks for itself, as do the other documents and/or other sources referenced in Paragraph 502. Nevertheless, Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 502.

503.  *NFP, Kestra IS, and Kestra AS breached their fiduciary duty by failing to ensure their Representatives were competent to provide services to an ERISA-governed defined contribution employee benefit plan.*

**Answer to Paragraph 501:** Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 503.

504.  *Kestra IS, as broker-dealer, breached its fiduciary duties by failing to ensure their Representatives were competent to provide brokerage services to an ERISA-governed defined contribution employee pension benefit plan.*

**Answer to Paragraph 502:** Defendant KIS denies Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 504. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 504 and, on that basis, deny such allegations.

505.  *These failures to supervise and monitor allowed the Representatives to breach their fiduciary duties as set forth herein.*

**Answer to Paragraph 503:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 505.

*506.     The Plan and its Participants have suffered losses and been otherwise injured as a result of NFP, Kestra IS, and Kestra AS's breaches of fiduciary duty.*

**Answer to Paragraph 504:** Paragraph 506 contains characterizations which describe Plaintiff's claims and alleged losses. These items would be subject to proof, including by expert testimony. Either no response is required or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 506.

*507.     NFP, Kestra IS, and Kestra AS are jointly and severally liable for the losses caused by the Representatives to the Plan.*

**Answer to Paragraph 505:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 507.

**COUNT XII**
**BREACH OF FIDUCIARY DUTY FOR**
**CHARGING PLAN UNREASONABLE AND EXCESSIVE FEES**

*508.     Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 506:** Paragraph 508 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

*509.     NFP, Kestra IS, Kestra AS, and the Representatives, in each of their fiduciary roles as described herein, had a fiduciary duty to charge only reasonable compensation for services provided to the Plan.*

**Answer to Paragraph 507:** Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 509.

*510.     NFP, Kestra IS, Kestra AS, and the Representatives, breached their fiduciary duty by charging the Plan not only the NFP Advisory Fee of 37.5 basis points for fixed income*

*investments and the NFP administrative fee, but also additional compensation from Plan assets including commissions and other fees, which compensation was unreasonable and excessive.*

**Answer to Paragraph 508:** Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 510.

*511.    NFP, Kestra AS, and the Representatives breached their fiduciary duty by continuing to charge the Plan an advisory fee of 37.5 bps and other fees from November 2016 through November 2017, during which time NFP, Kestra AS, and the Representatives provided no advisory or investment management services to the Plan, rendering any such fee unreasonable and excessive.*

**Answer to Paragraph 509:** Defendants BPS, NFP-IL, KAS, Korchak, and Curry deny Plaintiff's legal conclusions, factual characterizations, alleged losses, and all other allegations contained in Paragraph 511. The remaining Defendant (KIS) lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 511 and, on that basis, denies such allegations.

*512.    The Plan and its Participants have suffered losses and have been otherwise injured as a result of NFP, Kestra AS, and the Representatives breaches of fiduciary duty.*

**Answer to Paragraph 510:** Paragraph 512 contains characterizations which describe Plaintiff's claims and alleged losses. These items would be subject to proof, including by expert testimony. Either no response is required or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 512.

*513.    Defendants are required to render an accounting of all such fees collected during the last 12 months of their responsibility for the bond portfolio, the amounts of which are assets owed to the Plan.*

**Answer to Paragraph 511:** Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 513.

## COUNT XIII
## BREACH OF FIDUCIARY DUTY RELATING TO
## TRANSITION TO NEW SERVICE PROVIDERS

*514.    Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 512:** Paragraph 514 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

*515.    After their termination by the Plan, Defendants had a fiduciary duty to cooperate in a timely and reasonable fashion in the transition of Plan assets and Plan records to the Plan's new administrator, custodian, investment providers, and other service providers, and breached such duty by failing to so act.*

**Answer to Paragraph 513:** Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 515.

*516.    By failing to act in a timely manner and delaying the transfer of assets, equipment and information, Defendants continued to receive fees for the assets' administration and for the conflicted investments they made with Plan assets. Rather than transfer the assets, which the Trustees determined was in the best interest of the Plan, Defendants retained the assets and delayed the transfer so they could continue to earn fees for their own account, to the detriment of Plan Participants.*

**Answer to Paragraph 514:** Defendants deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 516.

*517.    The Plan and its Participants have suffered losses and have been otherwise injured as a result of Defendants' breaches of fiduciary duty.*

**Answer to Paragraph 515:** Paragraph 517 contains characterizations which describe Plaintiff's claims and alleged losses. These items would be subject to proof, including by expert testimony. Either no response is required or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations

contained in Paragraph 517.

518. *Defendants are required to render an accounting of all such administrative, brokerage and other fees collected after September 1, 2017 because of the delayed transition, the amounts of which are assets owed to the Plan.*

**Answer to Paragraph 516:** Defendants deny Plaintiff's legal conclusions, factual characterizations, claimed remedies, and all other allegations contained in Paragraph 518.

### SECOND CLAIM FOR RELIEF

### VIOLATION OF
### ERISA SECTION 406 - PROHIBITED TRANSACTIONS

519. *Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 517:** Paragraph 519 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

520. *Under 29 U.S.C. §§ 1106(a) and (b), fiduciaries are prohibited from causing plans to engaged in transactions with parties in interest and fiduciaries that are expressly prohibited and are considered "per se" violations because they entail a high potential for abuse and injury to a plan.*

**Answer to Paragraph 518:** Paragraph 520 purports to describe the contents of a statutory provision within ERISA which speaks for itself and to which no response is required. To the extent a response is deemed required, Defendants deny such allegations.

521. *With respect to transactions between a plan and party in interest, "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect— (A)sale or exchange, or leasing, of any property between the plan and a party in interest; (B)lending of money or other extension of credit between the plan and a party in interest; (C) furnishing of goods, services, or facilities between the plan and a party in interest; (D)transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title." 29 U.S.C. § 1106(a).*

**Answer to Paragraph 519:** Paragraph 521 purports to recite the contents of a statutory

provision within ERISA which speaks for itself and to which no response is required. To the extent

a response is deemed required, Defendants deny such allegations.

522.    *29 U.S.C. § 1002(14) defines a "party in interest" includes any fiduciary and any person providing services to such plan.*

**Answer to Paragraph 520:** Paragraph 522 purports to describe the contents of a statutory

provision within ERISA which speaks for itself and to which no response is required. To the extent

a response is deemed required, Defendants deny such allegations.

523.    *29 U.S.C. § 1106 (b), which lists per se ERISA violations, provides that a fiduciary with respect to a plan shall not "(1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3)receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b).*

**Answer to Paragraph 521:** Paragraph 523 purports to recite the contents of a statutory

provision within ERISA which speaks for itself and to which no response is required. To the extent

a response is deemed required, Defendants deny such allegations.

524.    *29 U.S.C. § 1108(b)(2) provides that the prohibitions provided in 29 U.S.C. § 1106(b) do not apply to payment for services from a covered plan to any party-in-interest including a fiduciary, provided (a) such service is necessary for the establishment or operation of the plan; (b) such service is furnished under a contract or arrangement that is reasonable; and (c) no more than reasonable compensation is paid for such service. 29 U.S.C. §§ 1106(b)(2).  If a covered service provider does not satisfy these conditions, the fees received are deemed unreasonable, and thus the service provider engages in a per se prohibited transaction.*

**Answer to Paragraph 522:** Paragraph 524 generally references a statutory citation which

speaks for itself and asserts legal conclusions to which no response is required. To the extent a

response is deemed required, Defendants deny the allegations in Paragraph 524.

525.    *As set forth herein, each Defendant acted as a fiduciary of the Plan, and is thus deemed an ERISA party in interest.*

**Answer to Paragraph 523:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 525.

526.     *Each Defendant provided services to the Plan and is thus deemed an ERISA party in interest.*

**Answer to Paragraph 524:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 526.

527.     *NFP, Kestra IS, Kestra AS, and the Representatives, as Plan Administrator, investment advisor and fixed income investment manager for the Plan, were involved in causing the Plan to invest the Plan's assets in the investments descried herein and use Kestra IS as broker-dealer and Korchak as registered representative.*

**Answer to Paragraph 525:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 527.

528.     *The Defendants were hopelessly conflicted providing administrative, advisory, and brokerage services to the Plan. In fact, until June, 2016, they were operating as a single entity under the corporate umbrella of NFP Corp. Thereafter, Kestra AS continued to use Kestra IS as its affiliated broker.*

**Answer to Paragraph 526:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 528.

529.     *By causing the Plan to invest the Plan's assets in these investments and use the service providers that were all affiliated, NFP, Kestra IS, Kestra AS and the Representatives, as fiduciary investment advisor and manager for the Plan's fixed income portfolio, caused the Plan to engage in transactions that they knew or should have known constituted the "furnishing of []services [] between the Plan and a party in interest," in violation of 29 U.S.C. §1106.*

**Answer to Paragraph 527:** Paragraph 529 generally purports to reference the contents of a statutory citation within ERISA which speaks for itself. Nevertheless, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 529.

530.     *As set forth herein, NFP, Kestra IS, Kestra AS and the Representatives caused the Plan to engage in a prohibited transaction by selecting and causing investments of almost $1 million of Plan assets in high-fee PIMCO Class A Shares that may have been prudent for retail, but not institutional investors. NFP, Kestra IS, Kestra AS and the Representatives did so even though lower-cost share classes of the same funds for which the Plan was eligible were available.*

**Answer to Paragraph 528:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 530.

531.    As set forth herein, NFP, Kestra IS, Kestra AS and the Representatives caused the Plan to engage in a prohibited transaction by selecting and causing investment of approximately $900,000 of Plan assets in the CION Investment, Cole Credit Investment, and FS Investment, which were prohibited under the Plan's IPS, imprudent, and sustained negative returns.

**Answer to Paragraph 529:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 531.

532.    As set forth herein, NFP, Kestra IS, Kestra AS and the Representatives caused the Plan to engage in a prohibited transaction by advising, recommending, and placing $4 million of Plan assets in a MetLife GIC. Fees associated with this investment were unreasonable and excessive, fees charged by the alleged investment administrator were duplicative; and were not disclosed to the Plan or its Participants.

**Answer to Paragraph 530:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 532.

533.    As set forth herein, NFP, Kestra IS, Kestra AS and the Representatives caused the Plan to engage in a prohibited transaction by advising, recommending, and causing investment of approximately $10 million of Plan assets in the AAM/UIT, which was an imprudent investment. This caused the Plan to pay duplicate management fees to AAM, which led to NFP, Kestra IS, Kestra AS and the Representatives compensation from AAM which were not disclosed to the Plan or its Participants. By placing such investments, the Defendants dealt with the assets of the Plan for their own interest and received consideration for their own personal account in connection with transactions involving the assets of the Plan.

**Answer to Paragraph 531:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 533.

534.    With respect to the above referenced investments, NFP, Kestra IS, Kestra AS and the Representatives caused the Plan to execute trades through Kestra IS and Korchak.

**Answer to Paragraph 532:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 534.

535.    NFP, Kestra IS, Kestra AS, and the Representatives failed to disclose all compensation including commissions and fees received in connection with these investments.

**Answer to Paragraph 533:** Defendants generally deny Plaintiff's legal conclusions,

factual characterizations, and all other allegations contained in Paragraph 535.

536.    By placing these investments and executing trades to generate commission and other fees through Kestra IS and Korchak, NFP, Kestra IS, Kestra AS and the Representatives dealt with the assets of the Plan for their own interest and received consideration for their own personal account in connection with transactions involving the assets of the Plan.

**Answer to Paragraph 534:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 536.

537.    As set forth herein, NFP, Kestra AS, and the Representatives, as investment advisor and manager of the fixed income portfolio, caused the Plan to engage in a prohibited transaction by charging an asset management fee for fixed income investments of 37.5 bps of assets under management for the last 12 months of their employment while providing no effective management of the portfolio. NFP, Kestra AS and the Representatives provided no service to the plan, which is enough to deem any fees unreasonable. By charging and receiving the fees in connection with the investment of Plan assets without providing needed services, NFP, Kestra AS and the Representatives dealt with the assets of the Plan for their own interest and received consideration for their own personal account.

**Answer to Paragraph 535:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 537.

538.    As set forth herein, NFP, Kestra AS, and the Representatives, as investment managers of the fixed income portfolio, caused the Plan to engage in prohibited transactions by exercising their discretion to continue to make bond trades and generate fees, through Kestra IS and Korchak, and by subsequently failing to disclose such fees. By charging the mark-up and commissions, not disclosing all fees, and continuing to make bond trades that were made to generate self-serving fees, the Defendants dealt with the assets of the Plan for their own interest and received consideration for their own personal account in connection with transactions involving the assets of the Plan.

**Answer to Paragraph 536:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 538.

539.    To the extent that any Defendant is found to be a non-fiduciaries, in participating in the prohibited transactions, each Defendant acted with actual or constructive knowledge, and is liable to the Plan.

**Answer to Paragraph 537:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 539.

540.    Any service fees, investment fees, and other compensation charged or received by Defendants from other service providers were per se "unreasonable" due to Defendants' failure to provide proper 408(b)(2) Disclosures. By receiving unreasonable fees, Defendants engaged in

*a transaction prohibited by 29 U.S.C. § 1106(a)(1)(c).*

**Answer to Paragraph 538:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 540.

*541.    The Plan and its Participants have suffered losses and have been otherwise injured as a result of Defendants causing the Plan to engage in ERISA prohibited transactions.*

**Answer to Paragraph 539:** Paragraph 541 contains characterizations which describe Plaintiff's claims and alleged losses. These items would be subject to proof, including by expert testimony. Either no response is required or the Defendants would lack knowledge or information sufficient to form a belief as to the truth of the said allegations. In either event, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 541.

*542.    Defendants are required to render an accounting of all such fees, the amounts of which are assets owed to the Plan.*

**Answer to Paragraph 540:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 542.

### THIRD CLAIM FOR RELIEF
### KNOWING PARTICIPATION IN BREACHES OF FIDUCIARY DUTIES AND PROHIBITED TRANSACTIONS
### (IN THE ALTERNATIVE)

*543.    Plaintiff incorporates and realleges the allegations contained in the above stated paragraphs as if fully set forth herein.*

**Answer to Paragraph 541:** Paragraph 543 is an incorporation of Plaintiff's prior allegations. Defendants have already responded to these allegations, so no further response is required. However, to the extent a response is deemed required, Defendants incorporate herein their prior responses to Plaintiff's allegations above.

*544.    U.S.C. § 1132(a)(3) provides a cause of action against a non-fiduciary "party in interest" who knowingly receives payments made in breach of a fiduciary's duty, and authorizes "appropriate equitable relief" such as restitution or disgorgement to recover ill-gotten proceeds*

*from the non-fiduciary.*

**Answer to Paragraph 542:** Paragraph 544 generally purports to describe the requirements or contents of a statutory provision within ERISA and federal cases, which all speak for themselves. Nevertheless, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 544.

545. *Anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under 29 U.S.C. § 1132(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." Harris Trust & Sav. Bank v. Soloman Smith Barney, Inc., 530 U.S. 238, 251 (2000).*

**Answer to Paragraph 543:** Paragraph 545 generally purports to describe the requirements or contents of a statutory provision within ERISA and federal cases, which all speak for themselves. Nevertheless, Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 545.

546. *With respect to the acts and omissions set forth herein, NFP, Kestra IS, Kestra AS, and the Representatives are, at the very least, all parties in interest to the Plan.*

**Answer to Paragraph 544:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 546.

547. *As described herein, NFP, Kestra IS, Kestra AS, and the Representatives have profited financially, in an amount to be proven at trial, from the breaches of fiduciary duty and prohibited transactions identified in the First and Second Claims for Relief.*

**Answer to Paragraph 545:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 547.

548. *Upon information and belief, NFP, Kestra IS, Kestra AS, and the Representatives remain in possession of such profits.*

**Answer to Paragraph 546:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 548.

549. *By knowingly participating in these breaches and violations and as parties in interest to the Plan, NFP, Kestra IS, Kestra AS, and the Representatives are subject to appropriate*

*equitable relief including disgorgement of any profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), a surcharge, having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.*

**Answer to Paragraph 547:** Defendants generally deny Plaintiff's legal conclusions, factual characterizations, and all other allegations contained in Paragraph 549.

## II.  **AFFIRMATIVE DEFENSES**

Defendants state the following defenses to Plaintiff's Complaint. Each Defendant asserts each defense below individually, and Defendants assert each defense collectively, as to all claims against Defendants. By setting forth these affirmative defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Nothing herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to the Plaintiff's allegations.

As separate and distinct affirmative defenses, Defendants allege as follows:

1.    Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.    Plaintiff's Complaint fails to state a claim under the "federal common law" developed under ERISA upon which relief may be granted.

3.    To the extent that Plaintiff's action is premised on any alleged misrepresentation, Plaintiff has failed to allege said misrepresentation with the requisite particularity.

4.    Plaintiff's Complaint fails to adequately articulate any cognizable investment losses or other damages to the Plan, either on an absolute basis or relative to similar, available investment alternatives.

5.    Plaintiff's Complaint fails to join a party or parties with liability for the acts alleged during the relevant time period, which are required to be joined pursuant to Rule 19, Fed. R. Civ. P., including (but not limited to) its legal counsel, relevant investment managers, fiduciary liability

insurance carrier, former Trustees, or other relevant parties.

6. Plaintiff's Complaint fails to join a party or parties with liability for the acts alleged during the relevant time period, which are permitted to be joined pursuant to Rule 20, Fed. R. Civ. P., including (but not limited to) its legal counsel, relevant investment managers, fiduciary liability insurance carrier, former Trustees, or other relevant parties.

7. Plaintiff's claims are barred, in whole or in part, because Defendants have no liability to Plaintiff.

8. Plaintiff's claims are barred, in whole or in part, because none of the Defendants are attorneys or licensed to practice law in any relevant jurisdiction and were not hired by the Plaintiff to provide legal advice and therefore were not responsible for providing (and could not reasonably be expected to provide) legal advice to Plaintiff regarding Plaintiff's legal obligations or for monitoring the Plaintiff's compliance therewith.

9. Plaintiff's claims are barred, in whole or in part, because the fees paid to Defendants were disclosed to and accepted by the Trustees.

10. Plaintiff's claims are barred, in whole or in part, because the fees paid to Defendants were reasonable.

11. Plaintiff's claims are barred, in whole or in part, because the fees paid to Defendants were permissible under an agreement between the parties, the relevant prohibited transaction exemptions set forth in ERISA, or other agreement or law.

12. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

13. Plaintiff's claims are barred, in whole or in part, due to the Plaintiff's ratification of, and consent to, the conduct of Defendants.

14. Plaintiff's claims are barred, in whole or in part, because any alleged injuries and

damages were not legally or proximately caused by any acts or omissions of Defendants and/or were caused, if at all, solely and proximately by the conduct of Plaintiff themselves or third parties, including, without limitation, the prior, intervening or superseding conduct of such Plaintiff or third parties.

15.     Plaintiff's claims are barred or mitigated, in whole or in part, due to the Trustees' failure to adequately monitor and administer the Plan as Plan Sponsor and Plan fiduciary, including monitoring of the service providers and plan professionals providing services to the Plan.

16.     Plaintiff's claims are barred, in whole or in part, or Plaintiff's potential recovery reduced, by the contributory and/or comparative negligence and/or breaches by the Plan's Trustees of their fiduciary duties of skill, diligence, loyalty, prudence, diversification or monitoring of hired service providers and/or the doctrines of assumption of risk and/or last clear chance.

17.     Plaintiff's claims are barred, in whole or in part, due to Plaintiff's equal or greater fault relative to the claims asserted.

18.     Plaintiff's claims are barred, in whole or in part, because Plaintiff's delegation of some or all authority over ERISA plan assets to Defendants was ineffective.

19.     Plaintiff's claims are barred, in whole or in part, because Plaintiff's delegation (or attempted delegation) of duties to service providers that lacked expertise in performing said duties was not prudent or reasonable.

20.     Plaintiff's claims are barred, in whole or in part, because Plaintiff expressly retained responsibility to administer the Plan in its foundational documents and in its Agreements with Defendants.

21.     Plaintiff's claims are barred, in whole or in part, because Defendants were acting in a purely non-discretionary and/or ministerial capacity, undertaking such actions at the direction

and discretion of Plaintiff Trustees.

22. Plaintiff's claims are barred, in whole or in part, because Defendants' actions with respect to investments were at the direction and discretion of Plaintiff Trustees, the party designated by the Trust Agreement as having "sole discretion" with respect to the Plan's investment actions.

23. Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to exercise reasonable care to mitigate any damages it may have suffered, and such failure to mitigate was the complete or partial cause of any damages Plaintiff may have suffered.

24. Plaintiff's claims are barred, in whole or in part, because Plaintiff's damages, if any, were caused by the acts, omissions, or failure to mitigate of third parties, over whom Defendants have or have had no control.

25. Plaintiff's claims are barred, in whole or in part, by estoppel, as Defendants relied in good faith, and to their detriment, on Plaintiff's actions and Defendants had no knowledge of Plaintiff's alleged complaints or means to discover same.

26. Plaintiff's claims are barred and/or reduced to the extent that the applicable ERISA statute of limitation expired prior to the institution of this action.

   a. 29 U.S.C. § 1113 provides that no ERISA breach of fiduciary duty action may be commenced after the earlier of (1) six years after the date of the last action which constituted a part of the breach or violation, or, in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

   b. On information and belief, Plaintiff had actual knowledge of the

circumstances set forth in its complaint on or before June 9, 2016. Because Plaintiff had actual knowledge of the circumstances set forth in the Complaint, the statute of limitations for Plaintiff's claims is thus three (3) years.

c. Plaintiff's Complaint was filed on May 18, 2020.

d. The challenged conduct allegedly occurred between August 2004 and June 9, 2016, *i.e.,* more than three years after the date Plaintiff acquired knowledge of the alleged breaches set forth in Plaintiff's complaint.

e. Plaintiff's Tolling Agreement, purportedly effective June 6, 2019, was not executed by two Counterdefendant Trustees as required under Article IV, Section 7 of the Plan's Trust Agreement or by the Chairman and Secretary of the Trust as required under Article XII, Section 6, and therefore cannot be relied on by Counterclaimants as "duly authorized [and] binding on the Trust and the Trustees."

f. Accordingly, some or all of Plaintiff's claims must be dismissed as same are time-barred.

27. Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of laches, which dictates that those who sleep on their rights, lose them. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). Specifically, laches will bar relief in the face of: (1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom. *Id.* (citing *Cannon v. Univ. of Health Sciences/Chi. Med. Sch.*, 710 F.2d 351, 359 (7th Cir. 1983)). Plaintiff demonstrated an unreasonable lack of diligence in bringing its claims. As set forth in support in Defendants' statute of limitations defense, *supra*, the challenged conduct

that underlies Plaintiff's claims occurred more than three years ago. Likewise, the specific facts Plaintiff cites in support of its claims were publicly available long ago. Yet, Plaintiff did not file its Complaint until May, 2020. This unreasonable lack of diligence in raising its claims bars it now.

28.     Plaintiff's claims are barred by the doctrine of unclean hands.

29.     Plaintiff's claims are barred, in whole or in part, by non-settling Defendants' right to set off any amounts paid to Plaintiff by any Defendants who have settled, or do settle, Plaintiff's claims against them in this action.

30.     Plaintiff's claims are barred, in whole or in part, by the doctrine of novation, as Plaintiff has failed to timely address or contest these alleged breaches of fiduciary duties, has accepted Defendants' actions through its course of performance, conduct, and acquiescence, and has replaced its previous agreements through novation with new agreements that incorporate the conduct alleged to have been in breach.

31.     Plaintiff's claims against Defendant NFP-IL are barred by failing to plead any allegations for liability against said Defendant and for failing to state any claim making it responsible for the acts of a related entity.

32.     Defendants, individually or collectively, reserve the right to seek leave from the Court to assert other relevant affirmative defenses, within the appropriate scheduling guidelines, if same become evident during discovery or any other proceeding in this action.

**WHEREFORE**, Defendants pray for judgment as follows:

A.     That Plaintiff shall take nothing by way of its Complaint;

B.     That judgment shall be entered in favor of Defendants and against Plaintiff, on each claim for relief alleged by Plaintiff;

C.      That the Complaint be dismissed with prejudice;

D.      That Defendants be awarded their attorneys' fees and costs, including attorneys' fees and costs under ERISA 29 U.S.C. § 1132(g)(1); and

E.      For such other and further relief as the Court deems just and proper.

## III.      **COUNTERCLAIMS**

Pursuant to the Federal Rules of Civil Procedure 8(a) and 13(a), Defendants-Counterclaimants Benefit Planning Services, Inc. ("BPS"), NFP Corporate Services (IL), Inc. ("NFP-IL"), Kestra Advisory Services, LLC ("KAS"), Kestra Investment Services, LLC ("KIS"), Jerry G. Korchak ("Korchak"), and Stephen F. Curry ("Curry") (collectively, "Counterclaimants"), state as follows for their counterclaim against the Board of Trustees of the Northern Illinois Annuity Fund and Plan, and jointly and severally against its Board members Kevin Dale, Frank Hovar, Jamie Lawson, Michael Leopardo, Brad Long, Fortunato Salamone, Joel Sjostrom, Glen Turpoff, Chris Wood, Jose Zamarripa (collectively, "Counterdefendants" or "Trustees"):

### SUMMARY OF COUNTERCLAIM

1.      Counterclaimants adopt and reassert all factual allegations made in their Responses to the numbered paragraphs in the Complaint as set forth in their Answer as if fully set forth herein.

2.      The time period of this Counterclaim relates to the time periods asserted in the Complaint.

3.      In the Complaint, Counterdefendants allege that Counterclaimants were ERISA fiduciaries of the *Northern Illinois Annuity Fund and Plan* ("the Plan") and are liable to the Plan under ERISA. In their Answer, Counterclaimants deny that they were or acted as the Plan Administrator (as defined in ERISA), assert that any fiduciary status with respect to the Plan (to the extent any Defendant actually acted as a fiduciary) was limited in time and by function, deny

they breached any fiduciary duty owed to the Plan, deny that they are liable in any way under ERISA or the Code to the Plan, and deny that the Plan or its participants suffered any harm or loss or were deprived of any monies to which they were entitled.

4.      This Counterclaim is an action for relief under ERISA § 502(a)(2)-(3), 29 U.S.C. § 1132(a)(2)-(3); ERISA § 405(a), 29 U.S.C. § 1105(a); ERISA § 409, 29 U.S.C. § 1109; ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and under the federal common law of indemnity and contribution. Under this authority, a fiduciary of an ERISA plan, such as the Trustees, may be held liable, jointly and severally, for any purported breach of fiduciary duty of other fiduciaries to the Plan, where the fiduciary bears responsibility or failed to provide proper oversight. If any of Counterclaimants are found liable to the Plan, Counterdefendant Trustees are also jointly, severally, and primarily liable to the Plan.

5.      If Counterclaimants prevail in their defense and/or this counterclaim, Counterclaimants are entitled to recover their attorney fees and costs from the Counterdefendants individually, jointly and severally under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

## JURISDICTION AND VENUE

6.      The district courts of the United States have exclusive jurisdiction of civil actions brought pursuant to 29 U.S.C. § 1132(a)(2)-(3) and supplemental jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367 because these claims are related to the claims alleged in Plaintiff's Complaint, arise out of a common nucleus of operative fact, and are part of the same case or controversy. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 and exclusive jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) because these claims relate to an ERISA dispute.

7.      Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2). Furthermore,

Counterdefendants have consented to personal jurisdiction by virtue of commencing this action.

### THE TRUSTEES WERE AT ALL TIMES NAMED FIDUCIARY AND PLAN ADMINISTRATOR OF THE PLAN

8.     The Plan is a defined contribution, multiemployer pension plan that provides retirement benefits within the meaning of ERISA Section 3(37), 29 U.S.C. § 1002(37).

9.     The Plan's foundational documents include, but are not limited to, its Restated Agreement and Declaration of Trust (effective June 13, 1996) ("Trust Agreement"), its Summary Plan Description (effective May 1, 2012) ("SPD"), and its Fifth Amendment and Restatement of the Rules and Regulations of the Northern Illinois Annuity Plan (effective June 1, 2014) ("Rules and Regulations") (collectively, "Plan Documents").

10.     The Plan's Counterdefendant Trustees are appointed by sponsoring labor unions and an employer association to serve on the jointly administered Board of Trustees, as described in Section 302(c)(5) of the Labor Management Relations Act, 1947 (*a.k.a.* the "Taft-Hartley Act"), 29 U.S.C. § 186(c)(5). The Taft-Hartley Act requires, among other things, that the employees and employers be equally represented in the administration of the Plan.

11.     The Plan's Board of Trustees is the Plan Sponsor as defined in ERISA Section 3(16)(B), 29 U.S.C. § 1002(16)(B).

12.     The Plan's Board of Trustees is the Plan's named fiduciary, as defined in ERISA Section 402(a), 29 U.S.C. § 1102(a). Each individual Counterdefendant Trustee is, therefore, a named fiduciary of the Plan.

13.     The Board of Trustees is the Plan's Administrator, as defined in ERISA Section 3(16)(B), 29 U.S.C. § 1002(16), both because it is the Plan Sponsor and because it is specifically identified as the Plan Administrator in one or more of the Plan Documents.

14.     The Board of Trustees, as a fiduciary to the Plan, is a party in interest to the Plan

as defined in ERISA Section 3(14)(A), 29 U.S.C. § 1002(14)(A).

15.     The Plan's Trust Agreement defines the powers of the Counterdefendant Trustees and the nature of the benefits to be provided under the Plan. Among other things, and subject to certain limitations, the Trust Agreement expressly grants its serving Trustees the power to (i) hire, employ, and retain such legal counsel, investment counsel, administrative, accounting, actuarial, clerical and other assistants or employees as in their discretion they may find necessary or appropriate, (ii) enter into any and all contracts and agreements, (iii) invest and reinvest the Plan's assets in any type of legally permissible investment, (iv) take any and all action with respect to holding, buying, selling, or maintaining such investments as they, in their sole discretion, deem appropriate, and (v) authorize two Trustees or any joint group of Trustees to jointly execute any notice or other instrument in writing, upon which all persons and entities can rely upon as authorized and binding on the Plan. For purposes of (v) above, the Chairman and Secretary of the Trustees have standing authority to jointly execute documents on behalf of the Board of Trustees.

16.     In their capacities as Named Fiduciary and Plan Administrator of the Plan, the Counterdefendant Board of Trustees exercised discretionary authority and responsibility in the administration and management of the Plan and exercised discretionary authority and control respecting disposition of its assets.

**THE TRUSTEES HAD THE POWER AND DUTY TO MONITOR AND SUPERVISE COUNTERCLAIMANTS.**

17.     Each Counterdefendant Trustee must act in accordance with the fiduciary duties set forth in ERISA, including the duty to act prudently, loyally, in accordance with plan documentation and with an eye to investment diversification within the Plan's investment goals.

18.     Each Counterdefendant Trustee has a duty to monitor and supervise the Plan's service providers, investment managers and investment advisors.

19.     Each Counterdefendant Trustee elected to implement and maintain a diversified portfolio with an asset allocation weighted heavily in favor of fixed income assets, a strategy intended and designed to preserve capital and minimize the risk of large losses in the Plan's investment portfolio.

20.     The Counterdefendant Trustees reviewed and approved Plan expenses and the fees charged to and paid by the Plan at each Trustee meeting, including administrative, recordkeeping and other fees paid to the Plan's service providers.

21.     The Counterdefendant Trustees reviewed and approved the Plan's audited financial statements and annual IRS Form 5500 filings (including all schedules and attachments thereto).

22.     The Plan's financial audited statements and 5500 annual reports list all amounts the Plan paid to BPS and its related entities during the time BPS and its related entities provided services to the Plan.

23.     Investments, including the Plan's fixed income investments, were discussed at every Trustee meeting. BPS personnel made presentations on the fixed income investments and their returns. The Trustees had a full opportunity to review the presentations and ask any and all questions of BPS personnel related to the presentations.

24.     Certain Plan investments involved presentations and information from third parties other than BPS. The Trustees reviewed the information, had an opportunity to question the investment manager(s) or advisor(s), and determine if each such investment was reasonable.

25.     The Trustees conducted Requests for Proposal ("RFP") and interviews for various service provider positions over the years, including for its accounting firm, equity investment advisor and legal counsel. The RFP meetings included applications from multiple candidates, review of their information and interviews. The Trustees made their selection after conducting the

RFP process.

26.    Year after year, the Trustees continued to retain BPS, its employees and its subsequent related entities. The Trustees did not seek to update its written contract with BPS, other than as noted in meeting minutes or acceptance of performance.

27.    Over the years, the Trustees expressed their approval and satisfaction with BPS and its employees.

28.    Over the years, the Trustees expressed their satisfaction that BPS's costs and expenses were reasonable, particularly in comparison to similarly situated plans in the area.

29.    The Trustees were particularly satisfied with BPS when the Plan's investment losses during the 2008 recession were kept lower than experienced by similarly situated plans and that the Plan was able to recover all losses within approximately 15 months after the initial loss period.

30.    It was within the discretion of the Trustees to conduct an RFP with vendors who provided the services that BPS provided, but the Trustees chose not to do so until 2016. It was within the discretion of the Trustees to sever their relationship with BPS and the other Counterclaimants at any time. They chose not to do so until 2017.

31.    When the Plan transitioned its services to a different Third-Party Administrator from BPS, the Plan directly hired one of BPS's former employees to assist with the transition of services. That employee and the Plan's official files and computer information related to the Plan moved to the Union office and were under the full operation and control of the Trustees.

32.    The Plan's financial documents and information were kept at the BPS offices and location until BPS's services were terminated. The BPS offices are a short distance from the Union office and the offices of the management trustees. The Trustees had full access to BPS and the

information it retained on behalf of the Plan, if they had chosen to review it.

33.     The Trustees continued to have full access to all financial information related to the Plan after BPS and the other Counterclaimants' services were terminated and when such information was moved over to the Union office.

34.     The Trustees had access to the Plan's independent financial auditor records, work papers and other information, if the Trustees had chosen to review such underlying information.

## IF TRUSTEES FAILED IN THEIR DUTY TO MONITOR AND SUPERVISE COUNTERCLAIMANTS, THEY ARE LIABLE FOR ANY LOSS TO THE PLAN AS A CO-FIDUCIARY

35.     The Trustees now assert in their Complaint that the Defendants are fiduciaries or parties in interest who owe damages to the Plan.

36.     If there were any damages to the Plan, such damages were the result of Counterdefendant Trustees' carelessness, inaction, failure to monitor, failure to act prudently and other breaches of fiduciary duty.

37.     Under ERISA Section 409(a), 29 U.S.C. § 1109(a), Plan fiduciaries are personally liable to the Plan for the breaches of their ERISA responsibilities, obligations, and duties, must make good to the Plan any losses resulting from each such breach and restore to the Plan any profits of such fiduciary which have been made through use of assets of the Plan by the fiduciary.

38.     Under ERISA Section 405(a), 29 U.S.C. § 1105(a), a fiduciary may be held personally, jointly and severally liable for the acts of another fiduciary. Accordingly, if it is determined that BPS or any of the other named Defendants are fiduciaries who breached their fiduciary duty and owe damages to the Plan, such Defendants are entitled to contribution and indemnity from the Counterdefendant Trustees, jointly and severally, where any such damage is due to Counterdefendant Trustees' carelessness, inaction, culpability or other breaches of fiduciary duty.

39. The Trustees have continued their carelessness, inaction, and culpability to date; since the date of BPS's termination, the Plan's administration expenses have skyrocketed.

40. Since at least June 1, 2009, the Trustees have employed a third-party administrator, investment managers, accountants/auditors, consultants, and legal counsel.

41. The Plan reports in Schedule H of its annual IRS Form 5500 filings the amounts it has paid for administration expenses during the Plan Year (June 1 through May 31).

42. Defendants were terminated during the 2017 Plan Year (*i.e.,* between June 1, 2017 and May 31, 2018). Excluding the partial termination year, the Plan reported in the prior four full Plan Years (*i.e.,* the 2013-2016 Plan Years) that it paid an average of $416,450 per year in total Plan administrative expenses.

   a. 2013 PY 5500: $333,841 Schedule H, Line 2(i)(5)

   b. 2014 PY 5500: $393,888 Schedule H, Line 2(i)(5)

   c. 2015 PY 5500: $424,160 Schedule H, Line 2(i)(5)

   d. 2016 PY 5500: $513,912 Schedule H, Line 2(i)(5)

43. Excluding the partial termination year, the Plan has reported in the four full Plan Years after Defendants' termination (*i.e.,* the 2018-2021 Plan Years) that it paid an average of $708,885 per year in total Plan administrative expenses – an increase of 70.22%:

   a. 2018 PY 5500: $459,089 Schedule H, Line 2(i)(5)

   b. 2019 PY 5500: $848,602 Schedule H, Line 2(i)(5)

   c. 2020 PY 5500: $748,986 Schedule H, Line 2(i)(5)

   d. 2021 PY 5500: $778,863 Schedule H, Line 2(i)(5)

44. The Trustees' pursuit of litigation against Counterclaimants for alleged excessive fees, while increasing the Plan's administrative expenses by approximately 70%, illustrates the

Trustees' breach of fiduciary duty supporting co-fiduciary liability under ERISA § 405(a), 29 U.S.C. § 1105(a).

45.     Counterclaimants have served by certified mail a copy of this Answer and Counterclaim upon the Secretary of Labor located at 200 Constitution Avenue, NW Washington, D.C. 20210, and the Secretary of Treasury, located at 1500 Pennsylvania Avenue, NW Washington, D.C. 20220, as described in ERISA Section 502(h), 29 U.S.C. § 1132(h).

## COUNT I: INDEMNIFICATION REQUIRED DUE TO TRUSTEES' BREACH OF FIDUCIARY DUTY

46.     Counterclaimants adopt Paragraphs 1 through 45 of this Counterclaim as if fully set forth herein and plead this claim for indemnity.

47.     Counterdefendant Trustees assert in their Complaint that the Defendants are fiduciaries or parties in interest who owe damages to the Plan.

48.     In the event Defendants are found liable to the Plan for losses as alleged in Plaintiff's Complaint herein, such liability would be entirely derivative, resulting not from any fiduciary breach by Defendants, but from the fiduciary breaches of the Counterdefendant Trustees and each of them, consisting of the above acts, among others.

49.     Had the Counterdefendant Trustees not breached their fiduciary duties to the Plan, the damages the Plan allegedly incurred as asserted in the Complaint would have been negligible, if any, or significantly reduced.

50.     Consequently, if Counterdefendant Trustees or the Plan are entitled to any recovery as Plaintiff against Defendants, it will be based upon one or more of the above acts by the Counterdefendant Trustees that proximately caused the Plan its alleged damages.

51.     Counterclaimants are therefore entitled to recover from the Counterdefendant Trustees, by way of the federal common law of indemnity recognized in the Seventh Circuit, all

amounts for which Counterclaimants are liable to the Plan and reimbursement for any damages awards or payments made to the Plan in excess of Counterclaimant's proportional share of the alleged damages, if any. *See Chesemore v. Fenkell*, 829 F.3d 803, 811-12 (7th Cir. 2016), and ERISA § 405(a), 29 U.S.C. § 1105(a).

## COUNT II: CONTRIBUTION REQUIRED DUE TO TRUSTEES' BREACH OF FIDUCIARY DUTY

52.     Counterclaimants adopt Paragraphs 1 through 51 of this Counterclaim as if fully set forth herein and plead this claim for contribution in the alternative to their claim for indemnity.

53.     If Counterclaimants (jointly or severally) are found to have violated ERISA, as alleged in the Complaint, their conduct was not a cause or a substantial cause of any harm or loss to the Plan and/or its participants, nor a cause or substantial cause of the Plan and/or its participants being deprived of any assets to which they were entitled, nor a cause of any diminishment of Plan assets. The Plan and its participants paid no more than the amounts that the Trustees agreed to and that were fully and accurately disclosed and received every service to which they were entitled.

54.     If Counterclaimants (jointly or severally) are found to have violated ERISA, as alleged in the Complaint, then Counterdefendant Trustees are also at fault to the extent the Plan or its participants suffered any harm or losses or were deprived of any assets to which they were entitled, since the Counterdefendant Trustees breached their fiduciary obligations to the Plan, including but not limited to those set forth in ERISA Section 404(a).

55.     By engaging in breaches of their fiduciary obligations to the Plaintiff Funds, the Counterdefendant Trustees' acts were at least partially responsible for causing the damages that the Plaintiff Funds allegedly suffered and are seeking from the Counterclaimants.

56.     Counterdefendants benefited from the services provided by Counterclaimants.

57.     Counterdefendants should not be permitted to benefit by deflecting ERISA liability

for their own conduct on to Counterclaimants.

58.     Counterclaimants are entitled to recover from the Counterdefendant Trustees, by way of the federal common law of contribution recognized in the Seventh Circuit, an amount equal to the proportionate share of Plaintiff damages, if any, that were caused by the acts of the Counterdefendant Trustees, as well as reimbursement for any damages awards or payments made to the Plan in excess of Counterclaimant's proportional share of the alleged damages, if any. *See Chesemore v. Fenkell*, 829 F.3d 803, 811-12 (7th Cir. 2016) ), and ERISA § 405(a), 29 U.S.C. § 1105(a).

## COUNT III: ATTORNEYS' FEES AND COSTS UNDER ERISA SECTION 502(g)(1)

59.     Counterclaimants adopt Paragraphs 1 through 58 of this Counterclaim as if fully set forth herein.

60.     Counterdefendants have caused Counterclaimants to incur attorneys' fees and costs to defend themselves and to assert their counterclaims.

61.     Upon information and belief, Counterclaimants will be the prevailing party in their defense of the matter and/or in pursuit of this Counterclaim.

62.     By reason of the foregoing, Counterclaimants are also entitled to recover from Counterdefendants and each of them such reasonable attorneys' fees, court costs, and other litigation expenses necessarily incurred in the underlying action pursuant to ERISA section 502(g)(1). The amount of such expenses continues to accrue. *See Johnson, Trustee of the Op. Egrs. Local #49 Health and Welfare Fund, et al. v. Charps Welding & Fabricating, Inc., et al.,* 950 F. 3d 510, 525-26 (8th Cir. 2020)(defendant awarded attorneys' fees pursuant to ERISA section 502(g)(1) against trustees of multiemployer plan, jointly and severally).

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants pray that if judgment is entered in favor of the Plaintiff

and against the Defendants on the Plaintiff's Complaint, that judgment be entered against these Counterdefendant Trustees by way of indemnity or contribution, in an amount equal to the proportionate share of the damages that the Counterdefendant Trustees are found to have caused to the Plaintiff Funds, if any, plus all costs and attorney's fees incurred by Counterclaimants.

Dated: March 31, 2023

**RESPECTFULLY SUBMITTED,**

**KUTAK ROCK LLP**

_s/Ruth S. Marcott_____
Charles G.F. MacKelvie (IL #1722670
KUTAK ROCK LLP
One South Wacker Drive, Suite 3910
Chicago, IL 60606
Ph. (312) 602-4100
Fx. (312) 602-4101
Charles.MacKelvie@KutakRock.com

Ruth S. Marcott (*Pro Hac Vice*)
KUTAK ROCK LLP
60 South Sixth Street, Suite 3400
Minneapolis, MN 55402-4018
Ph. (612) 334-5000
Fx. (612) 334-5050
Ruth.Marcott@kutakrock.com

Melissa A. Bozeman (*Pro Hac Vice*)
KUTAK ROCK LLP
1760 Market Street, Suite 1100
Philadelphia, PA 19103
Ph. (215) 299-4384
Fx. (215) 981-0719
Melissa.Bozeman@KutakRock.com

John J. Westerhaus (*Pro Hac Vice*)
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE 68102
Ph. (402) 231-8830
Fx. (402) 346-1148
John.Westerhaus@KutakRock.com

Oliver Griffin (*Pro Hac Vice*)
KUTAK ROCK LLP
1801 California Street, Suite 3000
Denver, CO 80202
Ph. (303) 297-2400
Fx. (303) 292-7799
Oliver.Griffin@KutakRock.com

***Attorneys for Defendants***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 31, 2023, I filed the foregoing with the United States District Court for the Northern District of Illinois using the e-filing system, which will send notice to all counsel and parties of record.

/s/ John J. Westerhaus
John J. Westerhaus