IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN DALE *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NFP CORP. *et al.*,<br><br>Defendants. | No. 20-cv-02942<br><br>Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, the Board of Trustees of the Northern Illinois Annuity Fund and Plan, a pension plan, bring this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, on behalf of the Plan and its participants. (Dkt. 78 ¶¶ 1–3.) Plaintiffs allege that Defendants, the Plan's administrators and investment advisors, breached their fiduciary duties by structuring investments to generate excessive direct and indirect compensation for themselves; failing to disclose to Plaintiffs all compensation received from investment of Plan assets; providing false or inadequate reports on investment performance; providing inadequate or misleading investment advice; and investing Plan assets in imprudent and illiquid investments. (*Id.* ¶ 11.) Plaintiffs also bring claims under ERISA Section 406, 29 U.S.C. §§ 1106(a) and (b), alleging that Defendants caused the Plan to engage in prohibited transactions with "parties in interest." (*Id.* ¶¶ 519–49.) Plaintiffs also assert, in the alternative, that they are entitled to "other equitable

remedies" against Defendants under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3). Plaintiffs plead thirteen separate counts of breach of fiduciary duty. (Dkt. 78 ¶¶ 398–518.)

Defendants answered and filed three counterclaims against Plaintiffs: for indemnification (Count I); contribution (Count II); and attorney's fees (Count III). (Dkt. 142 at 160–70.) Plaintiffs now move to dismiss the counterclaims, contending that: (1) Defendants have incorrectly filed the counterclaims against the Individual Trustees as representatives of the Fund, resulting in Defendants seeking relief directly from the Fund; (2) Defendants have no statutory standing under ERISA to assert their claims; and (3) Defendants' contribution and indemnification claims do not assert plausible claims for relief. (Dkt. 143 at 1–2.)

For the reasons that follow, the Court holds that Defendants have no statutory basis to bring their asserted counterclaims. Plaintiffs' motion to dismiss Defendants' counterclaims (Dkt. 143) is therefore granted, and the counterclaims are dismissed with prejudice.

I. BACKGROUND

  A. The Plan and its Expenses

The Northern Illinois Annuity Fund and Plan (the "Plan") was created in 1981 to provide union workers with a fund to save money for disability, retirement, and death. (Dkt. 78 ¶ 79.) The Plan is a defined contribution, multiemployer employee pension benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(2), (34), and (37). (*Id.* ¶ 18.) Plan participants "maintain individual investment accounts, which are

funded by pretax contributions from employees' salaries and, where applicable, matching contributions from" the participants' unions and employers. *See Hughes v. Northwestern University*, 595 U.S. 170, 173 (2022). Participants' retirement benefits are equivalent to the "value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 574 (7th Cir. 2022) (quoting *Tibble v. Edison Int'l*, 525 U.S. 523, 525 (2015)).

The Plan's expenses consist of various fees paid for administrative and advisory services. For example, the Plan paid investment management fees, which "compensate a fund, such as a mutual fund or index fund, for designing and maintaining the fund's investment portfolio." *Id.* Investment management fees typically are calculated as a "percentage of the money a plan participant invests in a particular fund, which is known as an expense ratio." *Id.* Expense ratios tend to be higher for actively managed funds than passive funds such as those that track an index like the S&P 500. *Id.*

The Plan also paid administration (or recordkeeping) fees. These fees compensate the plan's administrator for "track[ing] balances of individual accounts, provid[ing] regular account statements, and offer[ing] informational and accessibility services to participants." *Id.* (quoting *Hughes*, 595 U.S. at 174). Administration fees are typically assessed as a "flat fee per participant or via an expense ratio." *Id.* A plan's administrator may occasionally also be paid via "revenue sharing," where a portion of the investment management fees collected through an expense ratio goes

3

to the administrator. *Id.* This portion of the fees, called 12b-1 fees, is charged to investors "to pay for distribution expenses and shareholder service expenses." *Lange v. Infinity Healthcare Physicians, S.C.*, 2021 WL 3022117, at *4 (W.D. Wis. July 16, 2021). Expense ratios and revenue-sharing payments generally "move in tandem: the higher a given share class's expense ratio, the more the fund pays the [administrator] in revenue sharing." *Albert*, 47 F.4th at 574 (quoting *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 909 (7th Cir. 2013)). A "share class" refers to the "groups of investors who invest in the same investment option." *Id.* A "retail" share class pays the same fees as the general public, while an "institutional" share class pays a discounted rate. *Id.*

The Plan also paid investment advisory fees. These fees compensate the plan's investment advisor for researching and recommending investment of the plan's assets and providing individualized advisory services to the plan's participants. *See id.* at 575–76, 582; *see also Scott v. Aon Hewitt Financial Advisors, LLC*, 2018 WL 1384300, at *1–2 (N.D. Ill. Mar. 19, 2018).

**B.     The Parties and Their Responsibilities**

The Plan's Board of Trustees oversees the Plan as fiduciary and is listed as the Plan Administrator in the governing Plan documents. (Dkt. 78 ¶¶ 19, 21, 90) The Board, however, delegated its responsibilities to NFP Corp ("NFP"). NFP, through its subsidiaries and employees Stephen Curry and Jerry Korchak (collectively, "Defendants"), acted as the Plan's administrator, third-party administrator ("TPA"), investment advisor, and broker-dealer. (*Id.* ¶¶ 24–25, 28, 38–42, 52–58, 90–91.)

NFP's subsidiary and Codefendant, Benefit Planning Services, Inc. ("BPS"), acted as Plan Administrator and TPA. (*Id.* ¶¶ 24–25, 28, 52–58, 90–91.) Codefendant Kestra Investment Services ("Kestra IS"), another NFP subsidiary, served as the Plan's investment advisor and broker dealer. (*Id.* ¶¶ 38–40.) On or around June 24, 2016, NFP separated Kestra's advisory and brokerage businesses, such that the newly created Kestra Advisory Services, LLC ("Kestra AS") served as the Plan's investment advisor while Kestra IS remained as the Plan's broker dealer. (*Id.* ¶¶ 40–42.)

Defendants were required to manage Plan assets consistent with the objectives and standards laid out in the Plan's Investment Policy Statement ("IPS"). (*Id.* ¶ 84.) The IPS specifies that the Plan was to maintain a "diversified balanced portfolio to be managed at a reasonable expense." (*Id.* ¶ 85.) The Plan's portfolio "consisted of fixed-income investments and equity asset classes." (*Id.* ¶ 86.) The IPS "set minimum and maximum fixed income and equities asset allocation requirements," and changes in the asset allocation between fixed income and equities were required to be approved by the Trustees (Plaintiffs here). (*Id.* ¶ 87.) The IPS prohibited transacting or investing through "non-marketable securities, commodity trading, short selling, option trading with the exception of covered calls, and private placements." (*Id.* ¶ 89.)

Defendants charged the Plan a flat fee for administrative services based on the number of Plan participants, and a quarterly investment advisory fee equal to "three-eighths of one percent (.375%) of the average 'fixed income assets' under NFP's management." (*Id.* ¶¶ 106, 111.) Defendants also negotiated the Plan's contract with nonparty First Trust Advisors, Inc. ("FTA") for investment management services for

5

the equity portion of the Plan's portfolio, under which the Plan agreed to pay FTA investment management fees equal to 57 basis points (0.57%) of equity assets under FTA's management. (*Id.* ¶¶ 117–19, 121.) FTA then paid Defendants a portion of this fee under a revenue-sharing agreement. (*See id.* ¶¶ 116–24.)

In late 2017, the Trustees/Plaintiffs selected new investment service providers and terminated their relationship with Defendants. (Dkt. 78 ¶¶ 329, 335.) Plaintiffs then filed suit against Defendants on behalf of the Plan and its participants. Plaintiffs allege in their first amended complaint that Defendants breached their fiduciary duties while servicing the Plan. Defendants filed three counterclaims against Plaintiffs. (Dkt. 142.) Defendants seek indemnification (Count I), contribution (Count II), and attorney's fees (Count III) from Plaintiffs. (*Id.* at 168–70.) Plaintiffs now move to dismiss the counterclaims under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (Dkt. 143 at 2–3.)

## II. LEGAL STANDARD

A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject matter jurisdiction over a case. Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. For Dermatology & Skin Cancer Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). When considering a Rule 12(b)(1) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Id.* But the plaintiff bears the burden of proving that the jurisdictional requirements have been met. *Id.*

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). In evaluating a motion to dismiss, the Court must accept as true the Complaint's factual allegations and draw reasonable inferences in the Plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III. DISCUSSION

### A. Statutory Standing

Plaintiffs argue that the Court should dismiss Defendants' counterclaims because Defendants have no statutory standing under ERISA to assert their claims. (Dkt. 144 at 5–6.) Defendants counter that, as former fiduciaries, they have the statutory basis to bring these claims. (Dkt. 149 at 4–7.) Although the Court agrees with Plaintiffs, a brief digression is necessary to explore the distinction between constitutional and statutory standing and why that distinction matters here.

7

Constitutional standing refers to the requirement that parties suing in federal court establish that a "Case" or "Controversy" exists within the meaning of Article III of the United States Constitution. Constitutional standing requires: (1) that the plaintiff have suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct" of which the plaintiff complains; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). Standing is an element of subject-matter jurisdiction. *See Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1057 (7th Cir. 2018).

In contrast, "statutory standing" in fact is not a standing issue at all, but simply a question of whether the particular plaintiff "has a cause of action under the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). As the Supreme Court noted, the inquiry into statutory standing "does not belong" to the family of standing inquiries, *id.* at 127, because "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Id.* at 128 n.4 (internal quotation marks omitted); *see also Nw. Airlines, Inc. v. County of Kent*, 510 U.S. 355, 365 (1994) ("The question whether a federal statute creates a claim for relief is not jurisdictional."). As a result, when a litigant lacks statutory standing, that does not deprive the Court of subject matter jurisdiction. *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 645 (7th Cir. 2015).

8

Plaintiffs argue that Defendants lack standing—and that this Court therefore lacks subject matter jurisdiction—because they are not "fiduciaries" within the meaning of ERISA. (Dkt. 144 at 5–6.) But as explained above, that assertion does not implicate subject matter jurisdiction. Rather, it is an argument that Defendants do not have a cause of action under ERISA and therefore lack what was formerly known as statutory standing. Accordingly, the Court treats Plaintiffs' argument as an argument on the merits of their claims rather than one premised on a lack of subject matter jurisdiction.

ERISA provides for a limited class of persons who may bring actions under ERISA. To have the ability to bring a civil ERISA action, a plaintiff must fall within one of the following three enumerated subgroups: participant, beneficiary, or fiduciary. *See* 29 U.S.C. § 1132(a)(2)–(a)(3). A participant is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." 29 U.S.C. § 1002(7). A beneficiary is a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). A fiduciary is anyone who exercises discretionary authority or control respecting the management or administration of an employee benefit plan. *See* 29 U.S.C. § 1002(21)(A).[1] It is

---

[1] ERISA defines "fiduciary as:
Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority

9

undisputed that Defendants are neither participants nor beneficiaries of the Plan. Plaintiffs contend that, as former fiduciaries, Defendants are not entitled to bring contribution and indemnification claims under ERISA's definition of a fiduciary. (Dkt. 144 at 5–7.) The Court agrees.

Although Defendants attempt to countersue as fiduciaries, they do not meet the statutory definition. ERISA defines a fiduciary as a person who exercises discretionary authority or control respecting the management or administration of an employee benefit plan. *See* 29 U.S.C. § 1002(21)(A). Defendants are, concededly, former fiduciaries of the Plan and thus no longer exercise discretionary authority or render investment advice. (Dkt. 142 at 160–70.) Accordingly, Defendants have no statutory basis to sue under ERISA. *See, e.g.*, *Ossey v. Mardola*, No. 96 C 296, 1997 WL 223070, at *2 (N.D. Ill. Apr. 28, 1997) (former fiduciary could not sue under ERISA because he no longer satisfied statutory definition of "fiduciary"); *Roncone v. Ligurotis*, 1993 WL 321737, *2 (N.D. Ill. Aug. 20. 1993) (former fiduciary "no longer has standing under ERISA to seek judicial redress as a fiduciary"); *see also Trujillo v. Am. Bar Ass'n*, 706 F. App'x 868, 870 (7th Cir. 2017) (noting circuit split on whether Section 502(a)(3) authorizes suits by former fiduciaries and declining to decide the question but calling it a "fair reading" of the statute); *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir. 1991) ("Like Blackmar, Sovran is

---

or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

no longer a fiduciary of the plan and cannot be deemed one for purposes of asserting a claim under ERISA. Thus, we affirm the district court's rejection of standing for former fiduciaries under ERISA."); *Blackmar v. Lichtenstein,* 603 F.2d 1306, 1310 (8th Cir. 1979) (holding former fiduciary had no capacity to sue under ERISA); *Williams v. Provident Inv. Couns., Inc.*, 279 F. Supp. 2d 894, 905 (N.D. Ohio 2003) ("[A] former fiduciary has no right to sue on behalf of the plan to recover for the plan's losses."). These authorities, on balance, militate in favor of reading ERISA as authorizing suits only by current fiduciaries.

Defendants counter that they have standing to pursue trust law remedies, including contribution and indemnity. (Dkt. 149 at 6.) Relying on the Second Circuit's decision in *Chemung*, Defendants argue that claims for contribution and indemnity are not standalone actions under ERISA but rather merely procedural devices for "distributing liability." (*Id.*) Although ERISA provides separate rights to seek contribution and indemnification, *see Chesemore v. Fenkell*, 829 F.3d 803, 813 (7th Cir. 2016), those actions are still subject to the limitations of Section 1132(a).[2] Accordingly, as former fiduciaries, Defendants do not have a statutory basis to pursue

---

[2] Even if the Court were to set this issue aside, the counterclaims would still fail, as Defendants seek to impose individual liability against Plaintiffs—who bring this amended complaint in their collective institutional capacity on behalf of the Plan. Defendants' counterclaims are thus improperly pursued against Plaintiffs, *i.e.*, the Plan itself. This alone would warrant dismissal of the counterclaims. *Cf. Trustees Of The Auto. Mechanics Loc. No. 701 Pension And Welfare Funds v. Union Bank Of Cal., N.A.*, 630 F. Supp. 2d 951, 952 (N.D. Ill. 2009) ("[C]ounsel had mistakenly conceptualized its potential rights by bringing what counsel characterized as a Counterclaim rather than as a Third Party Complaint—after all, this action was brought by Trustees in their collective institutional capacity, while the so-called Counterclaim sought to impose individual liability on the Trustees because they had assertedly violated their own fiduciary obligations to the Pension and Welfare Funds.").

11

these claims against Plaintiffs, and the counterclaims, therefore, must be dismissed. Because any amendment would be futile, the dismissal is with prejudice. *See Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994).

## IV. CONCLUSION

Plaintiffs' motion (Dkt. 143) to dismiss Defendants' counterclaims (Dkt. 142) is granted.

SO ORDERED in No. 20-cv-02942.

Date: March 21, 2025

JOHN F. KNESS
United States District Judge