THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN DALE, FRANK HOVAR, JAMIE LAWSON, MICHAEL LEOPARDO, BRAD LONG, FORTUNATO SALAMONE, JOEL SJOSTROM, GLEN TURPOFF, CHRIS WOOD, AND JOSE ZAMARRIPA, as members of the Board of Trustees of the NORTHERN ILLINOIS ANNUITY FUND AND PLAN, on behalf of the Participants of the Northern Illinois Annuity Fund and Plan, <br><br>　　　　　　Plaintiff, <br>　vs. <br><br>BENEFIT PLANNING SERVICES, INC., et al, <br><br>　　　　　　Defendants. | Case No. 1:20-cv-2942 <br><br> Honorable John F. Kness <br><br> Magistrate Judge Jeffrey T. Gilbert |

**SUPPLEMENTAL DECLARATION OF JASON K. SMATHERS IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

Under penalty of perjury and pursuant to 28 U.S.C. § 1746, I, Jason K. Smathers, declare as follows:

1. I am one of the attorneys for the Plaintiffs in the above captioned matter, and I am admitted to practice before this Court. I submit this Supplemental Declaration in support of Plaintiffs' Reply in Support of Its Motion for Leave to File Its Second Amended Complaint.

2. I have been involved in this case and the exchange of discovery since its filing in 2020.

3. Through the exchange of discovery, both sides have exchanged copies of the documents held by the Plan multiple times..

4. This is likely because Tracy Gannon, a former BPS employee, maintained most of

the file held by the Plan during her time with BPS.

5. In fact, during earlier meet and confers with opposing counsel, when Plaintiff disputed whether the totality of plan-related documents had been received by BPS, Defendants' counsel noted that we likely had the same set of documents because they came from the same source—Ms. Gannon's laptop and files she turned over to future administrator, WPAS.

6. As such, many of the document requests referenced in Defendants' opposition brief have already been fulfilled—either through Plaintiff's requests or Defendants' requests.

7. For instance, as part of Defendants' First Set of Requests for Production of Documents, Defendants asked for "[a]ny and all documents that refer to, relate to, constitute, or memorialize information that you or the Trustees provided…to any Defendant regarding the matters subject to your Complaint." In response, Plaintiff provided "communications between current Trustees to any Defendant." A true and correct copy Plaintiff's Responses to Defendants' First Set of Requests for Production of Documents is attached as **Exhibit A.**

8. This was made contemporaneously with similar requests by Plaintiff to Defendants, and after initial communications relevant to the case were disclosed as part of a pilot discovery program operated by the Court. A true and accurate copy of Benefit Planning Services, Inc.'s Responses And Objections to Plaintiff's First Set of Requests for Production of Documents is attached as **Exhibit B.**

9. Near the cut-off for fact discovery, counsel for Defendants expressed their need to depose all current Trustees of the Plan who were present during the complaint period: Chris Wood, Fortunato Salamone, Jose Zamarippa, Brad Long, James Lawson, Kevin Dale and Michael Leopardo. A true and correct copy of the email from Ruth Marcott to Jason Smathers, et al., dated March 21, 2024, is attached here as **Exhibit C.**

10. Little more than two weeks later, as Plaintiff's prepared to schedule each Trustee for deposition, Defendants' counsel said they could "reduce" the number of remaining Trustees to be deposed to Leopardo, Salamone, and Zamarippa. A true and correct copy of the email from Ruth Marcott to Jason K. Smathers, et al, dated April 8, 2024, is attached here as **Exhibit D**.

11. Furthermore, both WPAS and Plaintiff produced copies of meeting packets and minutes from as early as the 1980s and as late as 2024 in response to subpoenas and requests for production.

12. The meeting packets and minutes produced following BPS' termination included information regarding (a) the Plan's asset allocation during that time frame and (b) the advice given by its investment advisers at Segal Marco at board meetings.

13. Plaintiff had to scour online databases to find the birthdates of more than 2,000 individual participants by cross-referencing existing social security numbers with records of participants through Westlaw's public records database.

14. However, this rehabilitation effort was, in fact, the second attempt made to verify participant birthdates.

15. Plaintiff began this process by rehabilitating a spreadsheet of birthdates provided by WPAS for participants that had contributed to the Fund between 2013 to 2017. This spreadsheet contained the names of participants, their fully unredacted social security numbers and their respective account balances for the period ending in late 2017.

16. After running participant social security numbers against a Westlaw public records database, it was able to confirm the birthdates of most of those participants. Having proven the ability to recover this data, Plaintiff notified Defendants of its intent to file the present motion in mid-January.

17. However, during the quality control process, it was discovered that the spreadsheet provided by WPAS to Plaintiff was incomplete, as it contained only participants who had paid into the Fund *after* the Fund switched from a money purchase ERISA Plan to a profit-sharing ERISA Plan.

18. WPAS informed Plaintiff that this was the participant account information it received from BPS upon the transition.

19. Instead of waiting weeks again for a more accurate spreadsheet from WPAS, Plaintiff utilized a participant account listing produced by WIPFLI for all participants as of May 31, 2013—which was based off of Tracy Gannon's participant account statements completed at the same time.

20. This May 31, 2013 spreadsheet was chosen both because it gave a baseline of the participant demographics at the start of the complaint period, and because similar spreadsheets and participant statements produced in discovery from near the end of the participant period were often redacted—partially or in full.

21. Given the lack of overlap between spreadsheets, and the lack of birthdate information in this WIPFLI produced spreadsheet, Plaintiff not only had to search for the missing birthdates in this data set but had to input the dates that *were* included Tracy Gannon's participant statements, as these were in separate PDFs, not a spreadsheet.

22. The process of matching this information and validating it approximately two extra months to complete.

Dated this 16th day of June, 2025.

*s/ Jason K. Smathers*
Jason K. Smathers